**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF HOLLYWOOD POLICE OFFICERS RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HENRY SCHEIN, INC., COVETRUS, INC., BENJAMIN SHAW, and CHRISTINE T. KOMOLA,<br><br>Defendants. | ) Case No.: 2:19-cv-05530 (FB)(RLM)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION BY CITY OF HOLLYWOOD POLICE OFFICERS' RETIREMENT SYSTEM AND PEMBROKE PINES PENSION FUND FOR FIREFIGHTERS AND POLICE OFFICERS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF <u>COUNSEL, AND IN OPPOSITION TO THE COMPETING MOTION</u>**

Proposed Lead Plaintiff City of Hollywood Police Officers' Retirement System ("Hollywood Police") and Pembroke Pines Pension Fund for Firefighters and Police Officers ("Pembroke Pines," and, together with Hollywood Police, the "Pension Funds") respectfully submit this memorandum (1) in further support of their motion to appoint the Pension Funds as Lead Plaintiff for the Class and to approve their selection of Saxena White P.A. to serve as Lead Counsel for the Class; and (2) in opposition to the sole competing motion.

## I.    **INTRODUCTION**

The two pending motions for appointment as Lead Plaintiff ask the Court to apply a clear statutory framework to determine which movant is the "most adequate plaintiff" to lead the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B). The Pension Funds meet each of the statutory requirements, have the largest financial interest of the movants, and should be appointed Lead Plaintiff.

The Pension Funds are two sophisticated and experienced institutional investors that collectively manage nearly $1 billion in assets, share a longstanding professional relationship that includes a history of successfully prosecuting securities class action litigation, and – most importantly for the pending motions – clearly possess the largest financial interest in this litigation. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Indeed, the Pension Funds' losses of more than $582,000 on their Class Period investments in the common stock of Defendant Covetrus, Inc. ("Covetrus") is more than ***36%*** greater than the loss claimed by the only competing movant, an individual investor named Claude Sheer ("Sheer").[1]

---

[1] Given the critical importance of financial loss to the Lead Plaintiff inquiry, the Pension Funds believe that Sheer filed his Lead Plaintiff motion only because he was unaware of the Pension Funds' significantly greater loss and was mistaken regarding the actual deadline for the motion. As explained in the Pension Funds' opening brief (ECF No. 16), the 60-day statutory notice period expired on November 29, 2019 – a legal holiday in this District – so by operation of law

As set forth in the chart below, the Pension Funds have demonstrated the largest financial interest under *each and every* factor regularly used by courts in this Circuit and throughout the nation to measure financial interest: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended; and (4) the approximate losses suffered. *See Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 395 (S.D.N.Y. 2014); *Lax v. First Merch. Acceptance Corp.*, 1997 WL 461036, at \*5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (Boyle, M.J.).

| Movant | Shares Purchased | Net shares Purchased | Net Funds Expended | Loss |
|---|---|---|---|---|
| The Pension Funds | 32,294 | 32,294 | $975,408 | $582,009 |
| Sheer | 27,231 | 15,731 | $616,887 | $427,677 |

Moreover, Pembroke Pines *alone* has a substantially larger loss than Sheer, and prevails over Sheer on *all* of the other factors as well. *See infra* at 4.

The Pension Funds have further demonstrated that they amply meet Rule 23's adequacy and typicality requirements, and will vigorously protect the interests of the Class. The Pension Funds have supported their Lead Plaintiff motion with a Joint Declaration affirming both their willingness to serve in a representative capacity on behalf of all Class members and their commitment to actively supervise the prosecution of this litigation. *See* ECF No. 17-4 (the "Joint Declaration"). The Pension Funds have also supplied the Court with evidence of their long-standing, pre-existing relationship, which includes serving as co-Lead Plaintiff in other complex securities fraud class litigation.

---

the deadline for Lead Plaintiff motions was the next court day, *i.e.*, December 2, 2019. *See* Fed. R. Civ. P. 6; Local Civil Rule 6.4. Sheer, however, filed his motion prematurely on November 29, 2019, and was thus unaware of the Pension Funds' larger losses.

Indeed, as institutional investors with a significant financial stake in the litigation, the Pension Funds are precisely the type of Lead Plaintiff envisioned by Congress in its enactment of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 421 (S.D.N.Y. 2003) (explaining that the PSLRA's "lead plaintiff provisions are designed to promote the selection at an early stage of the litigation of an institutional investor with the largest financial stake in the action so that that party can control the course of the litigation").

By contrast, the only other movant, Sheer, is an individual investor who possesses a significantly smaller financial interest than the Pension Funds.

In sum, because the Pension Funds have the largest financial interest in the litigation, have made a *prima facie* showing of their typicality and adequacy, and are precisely the sort of institutional investors that Congress envisioned leading such actions, they are the most adequate plaintiff. As a result, the Court should appoint the Pension Funds as Lead Plaintiff, approve their selection of Lead Counsel, and deny Sheer's competing motion.

## II.    ARGUMENT

### A.    The Pension Funds Have The Largest Financial Interest

Under the PSLRA, the "most adequate plaintiff" to serve as lead plaintiff is the movant with the "largest financial interest in the relief sought by the class" and who otherwise satisfies the requirements for a class representative under Rule 23. 15 U.S.C § 78u-4(a)(3)(B)(iii).

Here, the Pension Funds unquestionably have the largest financial interest in the litigation. While the PSLRA does not prescribe a specific method for calculating a movant's financial interest, courts in this District, the Second Circuit, and nationwide typically analyze the four "*Lax-Olsten*" factors in making this determination. *See Lax*, 1997 WL 461036, at *5;

3

*Olsten*, 3 F. Supp. 2d at 295. The Pension Funds' financial interest is far greater than Sheer's financial interest under each of these factors, as demonstrated in the chart set forth above. Significantly, the Pension Funds' combined losses of $582,009 are more than 36% greater than the $427,677 loss claimed by Sheer. The Pension Funds also purchased substantially more Covetrus shares than Sheer (on both a total and net basis) and expended substantially more net funds than Sheer. Thus, the Pension Funds easily defeat Sheer under each of the four *Lax-Olsten* factors and there can be no dispute that the Pension Funds have the largest financial interest among all competing movants in the litigation.

Moreover, Pembroke Pines alone has the largest financial interest of any individual movant that has sought appointment as lead plaintiff. *See In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 426 (E.D.N.Y. 2018) (Bulsara, M.J.) (appointing a group of two investors where one of the members' loss alone was larger than another movant's loss); *see also Canson v. WebMD Health Corp.*, 2011 WL 5331712, at *3 (S.D.N.Y. Nov. 7, 2011) (similar). Specifically, Pembroke Pines' loss of $508,124 is nearly *20%* greater than Sheer's claimed loss of $427,677. Furthermore, Pembroke Pines purchased over 500 more Covetrus shares than Sheer, over 12,000 more net shares than Sheer, and expended nearly $225,000 more in net funds than Sheer, as set forth below:

| Movant | Shares Purchased | Net shares Purchased | Net Funds Expended | Loss |
|---|---|---|---|---|
| Pembroke Pines | 27,744 | 27,744 | $841,827 | $508,124 |
| Sheer | 27,231 | 15,731 | $616,887 | $427,677 |

**B.     The Pension Funds Satisfy The Adequacy And Typicality Requirements**

A Lead Plaintiff movant must make a "preliminary" showing that it satisfies the typicality and adequacy requirements of Rule 23. *See Clark v. Barrick Gold Corp.*, 2013 WL

4

5300698, at *2 (S.D.N.Y. Sept. 20, 2013).  As set forth in the Pension Funds' opening brief, the Pension Funds have amply demonstrated that they meet these requirements.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); ECF No. 16 at 6-8; *Bristol Cty. Ret. Sys. v. Telefonaktiebolaget LM Ericsson*, 2018 WL 3546182, at *2 (S.D.N.Y. July 24, 2018) (noting that at this stage, courts have required only a *prima facie* showing of typicality and adequacy).

Like all members of the Class, the Pension Funds purchased Covetrus common stock during the Class Period and suffered damages as a result of Defendants' misrepresentations, satisfying the typicality requirement of Rule 23(a)(3).

The Pension Funds also amply meet Rule 23(a)(4)'s adequacy requirement.  The Pension Funds' pre-existing relationship and success jointly litigating securities class litigation (see further below) demonstrate their ability to supervise counsel, coordinate and communicate during the course of the litigation, and protect the interests of the Class.  As institutional investors with substantial financial interest in the litigation, the Pension Funds have the resources, experience, and incentive to vigorously represent the Class and prosecute this action against Defendants.  As further evidence of the Pension Funds' adequacy, the Pension Funds timely moved for appointment as Lead Plaintiff, and Hollywood Police filed the initial complaint in this action on behalf of the Class.

Indeed, the Pension Funds are precisely the type of movant that courts in this District have routinely appointed as lead plaintiff: a pair of sophisticated institutional investors with sufficient resources that have provided evidence establishing their ability to work together to protect the interests of the Class and adequately supervise Lead Counsel.  In addition to their sworn certifications (ECF No. 17-2), the Pension Funds have submitted a detailed Joint Declaration, which includes a description of each of its members and explains how the group

5

was formed, how the Pension Funds would function collectively, and the mechanism by which the group's members will communicate with each other and their counsel. *See* Joint Declaration ¶¶4, 6, 11-14; *see also Ford v. VOXX Int'l Corp.*, 2015 WL 4393798, at *4 (E.D.N.Y. July 16, 2015) (Seybert, J.) (appointing a group of institutional investors as lead plaintiff as their "joint declaration leaves no doubt that these entities will work together to adequately represent the interests of the class"); *Cullinan v. Cemtrex, Inc.*, 287 F. Supp. 3d 277, 285-87 (E.D.N.Y. 2018) (Bianco, J.) (appointing lead plaintiff group that submitted joint declaration demonstrating its cohesion and plan to work together to oversee the litigation).

As the Joint Declaration makes clear, the Pension Funds are committed to monitoring and prosecuting this case for the Class's benefit. The Pension Funds believe that by pooling their significant experience and resources they will be able to maximize the Class's recovery through this action. Joint Declaration ¶¶2, 13. Before filing their motion, the Pension Funds already met telephonically to discuss their shared objectives and the processes for managing the litigation cohesively and efficiently. *Id.* ¶¶15-16. Moreover, the Pension Funds are located just a few miles from each other in Broward County, Florida, and have a pre-existing cooperative relationship.[2]

---

[2] Both of the Pension Funds are Southeast Florida-based pension funds and part of a uniform, highly regulated group of governmental retirement systems subject to a uniform standard of fiduciary duty (Fla. Stat. § 112.656 (2018)), a uniform system of funding (Fla. Stat. § 112.63 (2018)), and a uniform system for the adoption and management of their investment portfolios (Fla. Stat. §§ 112.661; 215.47; and 518.11 (2018)). Both are members of the Florida Public Pension Trustees Association ("FPPTA") where pension fund membership is limited to Florida-based pension funds, and regularly attend conferences sponsored by the FPPTA. *See City of Brockton Ret. Sys. v. The Shaw Grp., Inc.*, 2007 WL 2845125, at *5 (S.D.N.Y. Sept. 26, 2007) (appointing two public pension funds that "have a significant pre-existing relationship as a result of their common role in the State of Massachusetts" as members of the state's association for its public retirement systems).

Indeed, the Pension Funds already have a successful history prosecuting securities class litigation together.   Since 2017, the Pension Funds have served as court-appointed Lead Plaintiffs in *In re HD Supply Holdings, Inc. Securities Litigation*, No. 1:17-cv-02587 (N.D. Ga.), where Saxena White is serving as Lead Counsel.  *See* Joint Declaration ¶8.  The Pension Funds' pre-existing relationship further demonstrates that they will be able to function cohesively in the prosecution of this action.[3]

## C.    The Pension Funds Are The Prototypical Lead Plaintiff Under The PSLRA

The Pension Funds are precisely the type of investors that Congress envisioned serving as Lead Plaintiffs under the PSLRA.  *See In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 446 (S.D.N.Y. 2013) (noting "the statutory preference for institutional lead plaintiffs").  As noted by Congress, the PSLRA was enacted "to increase the likelihood that institutional investors will serve as lead plaintiffs," in part because "institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake" and "assist courts by improving the quality of representation in securities class actions."  H.R. Conf. Rep. No. 104-369, at 34 (1995) (Conf. Rep.), *reprinted in* 1995 U.S.C.C.A.N. 730, 733.

---

[3] *See City of Birmingham Firemen's and Policemen's Supplemental Pension Sys. v. Credit Suisse Grp. AG*, 2018 WL 1382406, at *2-3 (S.D.N.Y. Mar. 19, 2018) (appointing a group of institutional investors where some of the members had "previously served together as lead plaintiff in a PSLRA class action"); *Lang v. Tower Group Int'l, Ltd.*, 2014 WL 12779212, at *3 (S.D.N.Y. June 17, 2014) (appointing a group of three institutional investors where "two members of the Public Pension Funds have previously served together as lead plaintiff"); *WebMD Health*, 2011 WL 5331712, at *3 (appointing a pair of institutional investors from Wayne County because they "have a pre-existing relationship and have stated their intention to work together on behalf of the class"); *Varghese v. China Shenghuo Pharma. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (noting factors the court considers in evaluating proposed lead plaintiff groups, including "the existence of a pre-litigation relationship between group members").

As the Supreme Court has noted, the lead plaintiff provision of the PSLRA is "aimed to increase the likelihood that institutional investors – parties more likely to balance the interests of the class with the long-term interests of the company – would serve as lead plaintiffs." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007); *see also In re Adelphia Communs. Corp. Sec. & Derivative Litig.*, 2005 WL 2126157, at *2 (S.D.N.Y. Sept. 1, 2005) (noting that due to "congressional intent, courts consistently appoint pension and retirement funds as lead plaintiffs pursuant to the PSLRA"); *China Mobile*, 68 F. Supp. 3d at 396 (recognizing that "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs").

Moreover, the PSLRA expressly contemplates the selection of a "group of persons" as the "most adequate plaintiff," *see* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and courts in the Second Circuit regularly appoint institutional investor lead plaintiff groups like the Pension Funds. *See, e.g.*, *Tower Group*, 2014 WL 12779212, at *3-4 (appointing group of pension funds as lead plaintiff); *Barrick Gold*, 2013 WL 5300698, at *2-3 (appointing a group of two institutional investors); *Olsen v. New York Cmty. Bancorp, Inc.*, 233 F.R.D. 101, 107 (E.D.N.Y. 2005) (Hurley, J.) (appointing a group of institutional investors after noting "the PSLRA's preference for institutional investors"); *Juliar v. Sunopta Inc.*, 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (appointing two pension funds as lead plaintiff recognizing "presumption inherent in Congress' enactment of the PSLRA that institutional investors serve as better lead plaintiffs").

Movant Sheer, by contrast, is not an institutional investor and thus is not the sort of lead plaintiff preferred by Congress and the PSLRA.

8

**D.        The Pension Funds' Selection Of Lead Counsel Should Be Approved**

Finally, the Court should approve the Pension Funds' selection of Saxena White as Lead Counsel for the Class.  As set forth in the Pension Funds' moving brief, the PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to Court approval.  *See* ECF No. 16, at 11-12; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Saxena White has significant experience and a track record of success litigating securities class actions.  For example, Saxena White achieved significant victories as lead or co-lead counsel in numerous securities fraud cases in the Second Circuit, including the $28 million recovery in *Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp., Inc.*, No. 1:16-cv-2400 (AT)(SN) (S.D.N.Y.), and the $27 million recovery in *In re Sadia S.A. Sec. Litig.*, No. 08-cv-09528-SAS (S.D.N.Y.).

**III.    CONCLUSION**

For all of the foregoing reasons, and for the reasons set forth in their opening memorandum, the Pension Funds respectfully request that the Court enter an order: (1) appointing them as Lead Plaintiff; (2) appointing Saxena White P.A. as Lead Counsel; (3) denying Sheer's motion; and (4) granting such other and further relief as the Court may deem just and proper.

Dated: December 13, 2019                    Respectfully submitted,

                                            **SAXENA WHITE P.A.**

                                            By: */s/ Steven B. Singer*
                                            Steven B. Singer
                                            10 Bank Street
                                            White Plains, NY 10606
                                            Tel: (914) 437-8551
                                            Fax: (888) 216-2220
                                            Email:  ssinger@saxenawhite.com

9

Joseph E. White, III
Lester R. Hooker
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
jwhite@saxenawhite.com
lhooker@saxenawhite.com

David R. Kaplan
Brandon Marsh
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com
bmarsh@saxenawhite.com

*Counsel for Proposed Lead Plaintiff City of
Hollywood Police Officers' Retirement System and
Pembroke Pines Pension Fund for Firefighters and
Police Officers, and Proposed Lead Counsel for the
Class*

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 13, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

/s/ Steven B. Singer
Steven B. Singer

11