UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CITY OF HOLLYWOOD POLICE OFFICERS
RETIREMENT SYSTEM, Individually and on
Behalf of All Others Similarly Situated,

                                    **Plaintiff,**           **MEMORANDUM
AND ORDER**

          **-against-**                             **19-cv-5530 (FB)**

HENRY SCHEIN, INC., COVETRUS, INC.,
BENJAMIN SHAW, and CHRISTINE T.
KOMOLA,

                                  **Defendants.**
----------------------------------------------------------------x

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

Currently pending before this Court are competing motions for the appointment of lead plaintiff and approval of lead counsel, filed by the following movants: (1) Claude Sheer ("Sheer"), see Sheer Motion (Nov. 29, 2019) ("Sheer Mot."), Electronic Case Filing ("ECF") Docket Entry ("DE") #12; and (2) City of Hollywood Police Officers' Retirement System ("plaintiff" or "Hollywood Police") and the Pembroke Pines Pension Fund for Firefighters and Police Officers (Dec. 2, 2019) ("Pembroke Pines") (collectively, the "Pension Funds"), see Notice of Motion and Motion by Hollywood Police and Pembroke Pines ("Pension Funds' Mot."), DE #15. On December 2 and December 3, 2019, the Honorable Frederic Block entered orders referring movants' competing motions to the undersigned magistrate judge. See 12/2/2019 Order Referring Motion (Dec. 2, 2019); 12/3/2019 Order Referring Motion (Dec. 3, 2019). For the reasons that follow, this Court grants the Pension Funds' motion for appointment of lead plaintiff and approval of lead counsel, rendering moot the competing motion filed by

Sheer.  The Pension Funds are hereby appointed as lead plaintiff and their choice of counsel, Saxena White P.A. ("Saxena White"), is hereby appointed as lead counsel.

## BACKGROUND

On September 30, 2019, Hollywood Police commenced this matter by filing a class action complaint against Henry Schein, Inc. ("Henry Schein"), Covetrus, Inc. ("Covetrus"), Benjamin Shaw ("Shaw"), and Christine T. Komola ("Komola") (collectively, "defendants"). See Complaint (Sept. 30, 2019) ("Compl.") ¶¶ 19-22, DE #1.  The Complaint sets forth claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, asserted on behalf of putative class members who purchased or otherwise acquired Covetrus common stock between February 8, 2019 and August 12, 2019 (the "Class Period").  See Compl. ¶¶ 9, 12.  On November 29, 2019, Sheer moved for appointment as lead plaintiff and approval of lead counsel, and on December 2, 2019, the Pension Funds filed their competing motion.  See generally Sheer Mot; Pension Funds' Mot.  The Pension Funds then submitted a memorandum (1) in further support of their motion, and (2) in opposition to Sheer's competing motion.  See Pension Funds' Memorandum of Law in Further Support of Motion and in Opposition to Competing Motion (Dec. 13, 2019) ("Pension Funds' Supp."), DE #21.

**DISCUSSION**[1]

## I.    Appointment of Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in a Securities Exchange Act case.  The PSLRA's legislative history reveals that Congress enacted the law in response to class action abuses, as plaintiffs' lawyers would otherwise "race to the courthouse" to receive the lead plaintiff designation.  See In re Olsten Corp. Secs. Litig., 3 F.Supp.2d 286, 294 (E.D.N.Y. 1998) ("By enacting the PSLRA, Congress intended to 'increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel.'") (quoting H.R. Rep. No. 104-369 at 32 (1995)).

Procedurally, the law directs the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members" (generally known as the "most adequate plaintiff").  15 U.S.C. § 78u-4(a)(3)(B)(i).  Courts follow a two-step process to determine the most adequate plaintiff.  See Altayyar v. Etsy, Inc., No. 15-CV-02785 (ARR) (RER), 2015 WL

---

[1]  As a preliminary matter, this Court concludes that an order appointing lead plaintiff and approving lead counsel qualifies as a nondispositive matter under Rule 72(a) of the Federal Rules of Civil Procedure, allowing this Court to issue a written order (i.e., a Memorandum and Order) rather than a recommended disposition (i.e., a Report and Recommendation).  See Fed. R. Civ. P. 72(a).  Multiple courts, including in this District, have concluded that motions to appoint lead plaintiffs and approve lead counsel are nondispositive.  See, e.g., In re Comverse Tech., Inc. Derivative Litig., No. 06-CV-1849 (NGG)(RER), 2006 WL 3511375, at *2 (E.D.N.Y. Dec. 5, 2006) (deciding that "[t]he parties' nondispositive motions to . . . appoint a lead plaintiff and lead counsel were thus properly addressed by [Magistrate] Judge Reyes"); Roofers' Pension Fund v. Papa, Civil Action No. 16-2805, 2017 WL 1536222, at *3 (D.N.J. Apr. 27, 2017) (finding that the Magistrate's Order regarding the appointment of a class action lead plaintiff and counsel was nondispositive per Fed. R. Civ. P. 72(a)); see generally In re: Synergy Pharms. Inc. Secs. Litig., 18 Civ. 873 (AMD) (VMS), 2019 WL 6150713 (E.D.N.Y. Nov. 20, 2019) (magistrate judge disposes of similar motions); In re Sequans Commc'ns S.A. Secs. Litig., 289 F.Supp.3d 416, 419 (E.D.N.Y. 2018) (noting that the district court judge "asked this [magistrate judge] to decide the motions" for appointment of lead plaintiff).

13742418, at *1 (E.D.N.Y. Oct. 22, 2015).  In the first stage of the inquiry, the PSLRA provides a "presumption" that the most adequate plaintiff is the person or group of persons who or that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;

> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once the court determines that there exists a presumptively adequate lead plaintiff, it must move to the second stage of the inquiry, and determine whether that presumption is sufficiently "rebutted."  See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Specifically, other class members may rebut a party's presumptive lead status "only upon proof by a purported member of the plaintiff class that the presumptively most adequate plaintiff –

> (aa) will not fairly and adequately protect the interests of the class; or

> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

Id.

### A.  Notice Requirement and the Filing of Timely Motions

The PSLRA requires that, as an initial matter, the plaintiff who files the first action publish notice to the class within twenty (20) days of filing the action, in a widely circulated business-oriented publication or wire service, advising members:

> (I)     of the pendency of the action, the claims asserted therein, and the purported class period; and

4

(II)      that, not later than 60 days after the date on which the notice is published, any

member of the proposed class may move the court to serve as lead plaintiff of the

purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

On September 30, 2019, the same day that plaintiff filed its Complaint, Saxena White, counsel for plaintiff, published a notice in *Globe Newswire* announcing that a securities class action had been filed against the aforementioned defendants.  See Ex. A to Declaration of Steven B. Singer ("Singer Decl."), DE #17-1; see also Ex. D. to Declaration of Jeremy Lieberman ("Lieberman Decl."), DE #14-4.  The press release advised those who "wish[ed] to apply to be lead plaintiff" to file the appropriate motion no later than November 29, 2019.  See id.  No moving party has challenged the adequacy of the September 30, 2019 notice, and the filing of a press release through *Globe Newswire* is an appropriate means of satisfying the PSLRA's notice requirement.  See, e.g., Plaut v. Goldman Sachs Grp., Inc., 18-CV-12084 (VSB), 2019 WL 4512774, at *3 (S.D.N.Y. Sept. 19, 2019).

Based upon the September 30, 2019 publication date, the 60-day period in which members of the proposed class could move to serve as lead plaintiff of the purported class expired on December 2, 2019.[2]  Accordingly, both of the movants' motions were timely filed

---

[2] The Pension Funds contend that, notwithstanding the November 29th deadline set forth in their published notice, their motion filed on Monday, December 2, was nevertheless timely because "[t]his District recognizes Friday, November 29, 2019 as a legal holiday . . . [so] the deadline to seek appointment as Lead Plaintiff is December 2, 2019."  Memorandum of Law in Support of Hollywood Police and Pembroke Pines (Dec. 2, 2019) ("Pension Funds' Mem.") at 5 n.3, DE #16; Pension Funds' Supp. at 1-2 n.1.  The Court agrees with their conclusion but not with their reasoning.  Rule 6(a)(1) of the Federal Rules of Civil Procedure (the "FRCP") addresses the computation of time for motion papers.  The Rule provides that "if the last day [of the period] is a . . . legal holiday, the period continues to run until the end of the next day that is not a . . . legal holiday."  Fed. R. Civ. P. 6(a)(1)(C).  Although this courthouse was closed on Friday, November 29, 2019, the day following Thanksgiving, the courthouse closure does not qualify as a legal holiday under the FRCP, see Fed. R. Civ. P. 6(a)(6) (listing a limited number of legal holidays), nor would the District's closure of the courthouse supersede the application of the Federal Rules.  Nevertheless, Rule 6(a)(3) further states that "if the clerk's office is inaccessible," then

with this Court, as they were filed on or before December 2, 2019.  See Sheer Mot.; Pension Funds' Mot.

As there is no objection to the September 30, 2019 notice,[3] and because both movants complied with the PSLRA's 60-day deadline to move to serve as lead plaintiff of the purported class, the Court must now turn to the remaining elements of the initial presumption: which of the two movants has the largest financial interest in the relief sought, see 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), and whether the movant with the largest financial interest satisfies the

---

"on the last day for filing under Rule 6(a)(1), . . . the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday."  Fed. R. Civ. P. 6(a)(3)(A).  Because the Clerk's Office was closed on November 29, 2019, the filing deadline was extended to Monday, December 2, 2019, even though the Pension Funds could have filed their motion electronically over ECF by November 29, as did Sheer.  Accordingly, the Court need not decide whether it has discretion to review an untimely motion under the PSLRA.  See generally In re NYSE Specialists Secs. Litig., 240 F.R.D. 128, 142-43 & n.18 (S.D.N.Y. 2007).

Of additional concern, however, is that on November 19, 2019, the parties filed, and Judge Block adopted, a "Stipulation and [Proposed] Order," stating that "applications for appointment as Lead Plaintiff must be filed by November 29, 2019."  Stipulation and [Proposed] Order (Nov. 19, 2019), DE #9; see Scheduling Order (Nov. 19, 2019) at 1, DE #10.  Counsel for the Pension Funds does not state whether it learned that the courthouse would be closed after submitting the joint stipulation; at a minimum, upon learning that the Clerk's Office would be closed, counsel should have requested that the Court modify its Scheduling Order to reflect the December 2, 2019 deadline.  This Court deems the Order so modified.

[3] "Although no party has objected to the adequacy of the notice here, in deciding a motion for the appointment of lead plaintiff under the PSLRA, courts have an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA."  Rauch v. Vale S.A., 378 F.Supp.3d 198, 206 (E.D.N.Y. 2019) (citation and internal quotation marks omitted).  The only issue identified by this Court in the September 30, 2019 notice concerns the deadline for moving to apply to be lead plaintiff.  As previously discussed, the deadline set forth in the notice is "November 29, 2019," whereas the Pension Funds now argue that December 2, 2019 is the operative due date.  This discrepancy is somewhat perplexing because counsel for the Pension Funds drafted the notice in this case.  See Singer Decl., Ex. A; see also Lieberman Decl., Ex. D.  Regardless, the Court considers this deficiency immaterial: although the notice included the November 29, 2019 deadline, prospective movants were nonetheless given 60 days from the date of the notice to file their motion papers.  Furthermore, it does not appear that counsel for the Pension Funds used the additional time to bolster their client's application to exceed the estimated loss of the only other movant, Sheer.  As discussed below, see infra Part I.B., Pembroke Pines has larger estimated losses ($508,124) than Sheer ($427,677), even without the inclusion of Hollywood Police's losses ($73,885).  Accordingly, this Court, in its discretion, finds that the notice comports with the objectives of the PSLRA.

requirements of Rule 23 of the Federal Rules of Civil Procedure, see 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

### B. Largest Financial Interest

The PSLRA requires a court to "adopt a presumption that the most adequate plaintiff . . . has the largest financial interest in the relief sought by the class[.]"  15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(bb).  However, the PSLRA does not offer any statutory guidance for determining which plaintiff has the largest financial interest.  See Takara Trust v. Molex Inc., 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses.").  The Second Circuit has adopted the four "*Olsten* factors" to determine which plaintiff has the largest financial interest: "(1) the [total] number of shares purchased during the class period; (2) the [total] number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *In re* Olsten Corp., 3 F.Supp.2d at 295 (citing Lax v. First Merch. Acceptance Corp., No. 97 C 2715, 1997 WL 461036, at *5 (Aug. 11, 1997)).  Most crucial to the Court's determination is the fourth factor – the approximate financial loss suffered.  See Baughman v. Pall Corp., 250 F.R.D. 121, 125 (E.D.N.Y. 2008).

The two sets of movants, in their papers submitted to this Court, primarily focus on the fourth *Olsten* factor – the approximate losses suffered during the Class Period.  See Memorandum of Law in Support of Motion of Claude Sheer for Appointment as Lead Plaintiff and Approval of Lead Counsel (Nov. 29, 2019) ("Sheer Mem.") at 5-6, DE #13; Pension Funds' Mem. at 6.  "[T]he losses suffered [are] an appropriate proxy for the movants' overall financial

interest in the litigation." *In re* Blue Apron Holdings, Inc. Secs. Litig., 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *3 (E.D.N.Y. Dec. 15, 2017).

Based on the record before the Court, the Pensions Funds qualify as the plaintiff with the largest financial interest. The Pension Funds are alleged to have suffered losses totaling $582,009 during the class period (using the last-in-first-out, or "LIFO" methodology).[4] See Singer Decl., Ex. C, DE #17-3 (charts of the Pension Funds' estimated losses during the Class Period), and Ex. D (Joint Declaration of David Williams and James Fisher asserting the Pension Funds' losses during the Class Period) ("Pension Funds' Joint Decl.") ¶ 10, DE #17-4; see also Pension Funds' Mem. at 6. By contrast, the other movant, Sheer, suffered losses totaling $427,677.[5] See Lieberman Decl., Ex. A (chart of Sheer's estimated losses during the Class Period); see also Sheer Mem. at 6.[6]

In calculating the Pension Funds' estimated losses during the Class Period, the Pension Funds' papers specify that the LIFO losses belonging to Pembroke Pines total $508,124, while the LIFO losses belonging to Hollywood Police amount to $73,885. See Singer Decl., Ex. C. The text of the PSLRA and case law regarding the same permit the aggregation of losses for the purposes of determining the movant with the greatest financial interest in the litigation. The

---

[4] Courts in both the Second Circuit and nationwide prefer to use a LIFO calculation when assessing losses, rather than a first-in-first out ("FIFO") methodology. See Bo Young Cha v. Kinross Gold Corp., No. 12 Civ. 1203(PAE), 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012).

[5] Unlike the Pension Funds movant, Sheer does not state whether his estimated losses are based upon the LIFO methodology or the FIFO methodology.

[6] The three additional *Olsten* factors also favor the Pension Funds. According to the movants' papers, the Pension Funds bought a total of 32,294 shares of Covetrus common stock during the Class Period (27,744 without Hollywood Police), whereas Sheer purchased 27,231 shares. See Singer Decl., Ex. C; Lieberman Decl., Ex. A. Additionally, the Pension Funds bought 32,294 net shares during the Class Period, while Sheer bought 15,731 net shares. See id. Lastly, the total net funds expended by the Pension Funds total $975,408 ($841,827 without Hollywood Police), while Sheer expended a net total of $616,887 ($995,565, the amount Sheer expended to purchase shares during the Class Period, less $378,678, the amount generated from Sheer's sale of some of his shares during that same period).

plain language of the PSLRA states that "the court shall adopt a presumption that the most adequate plaintiff . . . *is the person or group of persons* that[,] . . . in the determination of the court, has the largest financial interest in the relief sought by the class . . . ."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added).  Accordingly, the statutory text contemplates this Court's appointment of the Pension Funds as the "group of persons" designated to manage the litigation. Courts in this Circuit have also permitted the aggregation of claims for the purposes of being appointed lead plaintiff.  See, e.g., Labul v. XPO Logistics, Inc., No. 3:18-CV-2062 (VLB), 2019 WL 1450271, at *4 (D. Conn. Apr. 2, 2019) (citing cases).

To be sure, some courts have expressed skepticism where groups of movants collectively seek to be appointed lead plaintiff without a "pre-existing relationship or where the incurred losses of the separate institutional investors [do not] individually exceed the losses of any other." *In re* Gentiva Secs. Litig., 281 F.R.D. 108, 119 (E.D.N.Y. 2012).  The "predominant feature of such cases is that the aggregation of class members [was] done solely to create an artificially large financial interest." *In re* Sequans Commc'ns, 289 F.Supp.3d at 425 (collecting cases). Here, such skepticism is not warranted.  The Pension Funds aver that they maintain a longstanding professional relationship predating this litigation, see Pension Funds' Mem. at 9; see also Pension Funds' Joint Decl. ¶ 9 (describing the relationship between the Pension Funds, including that the Pension Funds used the same custodian related to their investments in Covetrus common stock).  Furthermore, Pembroke Pines, standing alone, claims to have suffered more losses ($508,124) than movant Sheer ($427,677), such that even if this Court were to uncouple the Pension Funds, one of its members would nonetheless have the largest financial interest within the meaning of the PSLRA.[7]

---

[7] "There are . . . outer limits to the number of [putative class members] allowed to proceed as lead plaintiff, in that there exists a point at which the Act's express purpose of placing the control of securities

9

The Court therefore finds that the Pension Funds have, by far, the largest financial interest in the relief sought by the class.[8]

## C. Satisfying Rule 23

After the Court has identified the plaintiff with the largest financial interest in the litigation, it must "focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements [of the PSLRA]." Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 411 (S.D.N.Y. 2004) (citation and quotation omitted). Under the PSLRA, the movant with the largest financial interest must also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure in order to serve as lead plaintiff. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) specifies four requirements for certification: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Nevertheless, when making a determination as to whether the movant satisfies Rule 23 for the purpose of being appointed lead plaintiff in a Securities Exchange Act matter, courts need only consider whether the prospective lead plaintiff's claims are typical and adequate. See *In re Olsen Corp.*, 3 F.Supp.2d at 296 ("[T]he party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23."). Moreover, when moving to be appointed as a lead plaintiff, the movant need only make a preliminary, prima facie showing that his or her claims satisfy the

---

class actions with a small and finite number of plaintiffs (as opposed to plaintiffs' counsel) becomes wholly undermined by the sheer size of the proposed plaintiff group." Weltz v. Lee, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (citing cases in which courts rejected requests to appoint between 137 and 250 class members as lead plaintiff). By contrast, the collective naming of Hollywood Police and Pembroke Pines – both pension funds – as lead plaintiff does not frustrate the PSLRA's objectives.

[8] This Court declines to appoint both Sheer and the Pension Funds as joint lead plaintiffs. Neither movant has requested joint lead plaintiff status, and "[t]here is nothing to indicate that the overall quality of the action will be improved by" appointing them as joint lead plaintiffs. Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 254 (S.D.N.Y. 2003).

requirements of Rule 23.  See *In re* Fuwei Films Secs. Litig., 247 F.R.D. 432, 439 (S.D.N.Y. 2008) (citation omitted).  At this initial stage of the litigation, "a wide ranging analysis under Rule 23 is not appropriate . . . and should be left for consideration of a motion for class certification."  Weinberg, 216 F.R.D. at 252-53 (citation and quotations omitted).

The Pension Funds have made the requisite prima facie showing with respect to Rule 23(a)'s typicality requirement.  Cases in the Second Circuit have held that the typicality requirement is met where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  Brady v. Top Ships Inc., 324 F.Supp.3d 335, 350 (E.D.N.Y. 2018) (quoting *In re* Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992)).  The Pension Funds' claims arise out of the events alleged in the Complaint, including that defendants violated multiple securities laws by "making a series of false and misleading statements and omissions concerning [Covetrus'] infrastructure and capabilities, as well as the true costs of becoming independent from [defendant Schein]."  Compl. ¶ 4; see also Pension Funds' Mem. at 8 (noting that "like all other Class members, the Pension Funds: (1) purchased Covetrus common stock during the Class Period; (2) at prices allegedly artificially inflated by [d]efendants' materially false and misleading statements and/or omissions; and (3) were damaged thereby.").  As no opposition to the Pension Funds' motion has been filed with this Court, there appears to be no dispute between the movants that the Pension Funds' claims arise out of the same course of events as do those of the putative class.  Thus, the Pension Funds, as the movant with the largest financial interest in the litigation, have preliminarily demonstrated typicality under Rule 23(a).

The Pension Funds have also preliminarily satisfied the adequacy requirement of Rule 23(a).  The adequacy requirement is satisfied where, as here: "(1) class counsel is qualified,

experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." Kaplan v. Gelfond, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) (citation omitted).[9]  Based on the Pension Funds' submissions, the Court is satisfied that the Pension Funds' retained counsel, Saxena White, is experienced, competent, and well-qualified to conduct the class action securities litigation at hand. See infra, Part II.

The Pension Funds also maintain a sufficient financial interest in the outcome of the case to vigorously advocate on behalf of the class and, in their papers, assert there are no conflicts of interest between the Pension Funds and absent class members. See Pension Funds' Mem. at 7 ("The Pension Funds' interests are perfectly aligned with those of the other Class members . . . [,] there are no facts to suggest any actual or potential conflict of interest or other antagonism between the Pension Funds and the other Class members[,]" and, "as institutional investors with substantial financial interest in the litigation, the Pension Funds have the resources, experience, and incentive to vigorously represent the Class and prosecute this action against Defendants."). Nothing in the record suggests otherwise.  In view of the aforementioned showings, and in the absence of any opposition papers demonstrating the Pension Funds' lack of typicality or

---

[9] The Pension Funds' papers note that they have "executed sworn certifications detailing their Class Period transactions" and "pledged to 'provid[e] testimony at deposition and trial, if necessary,'" and have "participated in a conference call to discuss, among other things, the need for the action to be driven by sophisticated institutional investors intent on maximizing recovery for the Class; protocols for ensuring that the claims of the Class will be efficiently and zealously prosecuted; and the status of counsel's ongoing investigation." Pension Funds' Mem. at 10.  Moreover, since 2017, the Pension Funds have served as court-appointed Lead Plaintiffs in securities class litigation, In re HD Supply Holdings, Inc. Secs. Litig., No. 1:17-CV-02587 (N.D. Ga). See Pension Funds' Mem. at 9; Pension Funds' Supp. at 7.

adequacy, the Pension Funds have sufficiently satisfied Rule 23(a)'s typicality and adequacy requirements to serve as lead plaintiff.[10]

### D.  Rebutting the Statutory Presumption

With respect to the second stage of the judicial inquiry, neither Sheer nor any other member of the class has raised any opposition to the Pension Funds' motion for appointment as lead plaintiff.  Additionally, nothing in the record sufficiently rebuts the presumption that the Pension Funds would fairly and adequately protect the interests of the class, nor is there any reason to believe that the Pension Funds are subject to any unique defenses that would otherwise render them incapable of adequately representing the class.  See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Accordingly, the PSLRA's statutory presumption has not been rebutted.[11]

### II.    Approval of Lead Counsel

The PSLRA also specifies the procedure for approving lead counsel in putative class actions brought under federal securities laws.  Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15

---

[10] "[A]ny finding that Rule 23 requirements have been met at this stage [does] not preclude a later challenge in the context of a Rule 23 class certification motion."  Ford v. Voxx Int'l Corp., No. 14-CV-4183 (JS)(AYS), 2015 WL 4393798, at *3 (E.D.N.Y. July 16, 2015).

[11] Although the PSLRA does not explicitly state that a movant's status as an institutional investor should be considered when appointing a lead plaintiff, many courts address this factor in determining whom to appoint.  See Xianglin Shi v. Sina Corp., No. 05 Civ.2154(NRB), 2005 WL 1561438, at *5 (S.D.N.Y. July 1, 2005); In re Cable & Wireless, PLC, Secs. Litig., 217 F.R.D. 372, 376 (E.D. Va. 2003).  The PSLRA's legislative history demonstrates a preference for the appointment of an institutional investor as the lead plaintiff.  See H.R. Conf. Rep. 104-369, at 34 (1995).

The Pension Funds highlight their status as sophisticated institutional investors.  See Pension Funds' Mem. at 9 (noting that "the Pension Funds are sophisticated institutional investors that have combined assets under management of approximately $950 million").  Movant Sheer, by contrast, does not appear to be an institutional investor.  See generally Sheer Mem.  Accordingly, the Court concludes that the presumption that the Pension Funds will fairly and adequately represent the interests of the class has not been rebutted.  See generally In re Sequans Commc'ns, 289 F.Supp.3d at 422 (institutional investor status is determinative only where an institutional investor had slightly lower financial losses than that of another potential lead plaintiff).

U.S.C. § 78u-4(a)(3)(B)(v).  The statute clarifies that "the lead plaintiff's right to select and retain counsel is not absolute – the court retains the power and the duty to supervise counsel selection and counsel retention."  City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc., CV 08-1418 (LDW) (ETB), 2009 WL 10709107, at *5 (E.D.N.Y. Mar. 9, 2009) (quoting In re Luxottica Grp., S.p.A. Secs. Litig., No. 01-CV-3285, 2004 WL 2370650, at *3 (E.D.N.Y. Oct. 22, 2004)).  Nevertheless, "[t]he Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class."  Rauch, 378 F.Supp.3d at 211 (citation omitted); Brady, 324 F.Supp.3d at 352 ("Courts have correctly found that the PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention.") (citation and internal quotations omitted).  The PSLRA thus makes clear that courts should interfere with the lead plaintiff's selection and retention of counsel solely "to protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, the Pension Funds have selected Saxena White as lead counsel and seek this Court's approval of their selection.  When approving a plaintiff's selection and retention to represent a purported class, courts give significant weight to counsel's experience.  See Rauch, 378 F.Supp.3d at 211.  Saxena White has substantial experience litigating securities fraud class actions.  Submitted to this Court is the firm's 23-page resume, providing a detailed description of the educational backgrounds and legal experience of close to 30 attorneys at the firm, as well as information regarding additional firm employees with business and financial experience.  See Singer Decl., Ex. 4.  The firm's resume also lists multiple securities class action suits filed in courts within the Second Circuit, as well as numerous others brought in courts across the nation, in which Saxena White has served as either lead or co-lead counsel.  See id.; see also Pension

Funds' Mem. at 11-12.  Other courts have concluded that, based on Saxena White's experience, it is qualified to serve as lead or co-lead counsel in securities law cases, see, e.g., Lang v. Tower Grp. Int'l, Ltd., 13 Civ. 5852(AT), 2014 WL 12779212, at *4 (S.D.N.Y. June 17, 2014); In re Sadia, S.A. Secs. Litig., 269 F.R.D. 298, 310 (S.D.N.Y. 2010), and no purported class members have offered any reason why Saxena White would be ill-equipped to serve as lead counsel.

Accordingly, the Court approves the Pension Funds' selection of Saxena White to serve as lead counsel.

## CONCLUSION

For the reasons set forth above, the undersigned magistrate judge appoints the Pension Funds as lead plaintiff and approves Saxena White as lead counsel.  The other outstanding motion for appointment of lead plaintiff and approval of lead counsel is rendered moot.  Any objection to this Memorandum and Order must be filed with the Honorable Frederic Block by **January 6, 2020**, or will be deemed waived.  The filing of an objection, without more, will not stay this Court's Order.

**SO ORDERED.**

**Dated:    Brooklyn, New York**
**          December 23, 2019**

/s/    *Roanne L. Mann*

**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

15