S|W  SAXENA WHITE

12750 High Bluff Drive  |  Suite 475  |  San Diego, CA 92130

March 30, 2020

**VIA ECF**

Honorable Gary R. Brown
United States District Judge
United States District Court for the Eastern District of New York
100 Federal Plaza, Courtroom 840
Central Islip, NY 11722-9014

        Re:    *City of Hollywood Police Officers' Retirement Systems et al. v.*
               *Henry Schein, Inc. et al.*, No. 2:19-cv-5530 (GRB) (RLM) (E.D.N.Y.)

Dear Judge Brown:

We represent Lead Plaintiff City of Hollywood Police Officers' Retirement System in the above-referenced matter and, in accordance with the Court's March 20, 2020 Scheduling Order, submit this response to the Schein Defendants' March 19, 2020 letter brief (ECF No. 32). As set forth below, Defendants' request to dismiss the Complaint (ECF No. 23) should be denied.[1]

The Schein Defendants misread the Complaint in asserting that it seeks to hold them liable for statements made before the Class Period or statements made solely by the Covetrus Defendants. Here, as is customary in securities fraud class actions, Lead Plaintiff "not surprisingly" "devote[s] a separate section of the[] Complaint" to identifying the alleged false and misleading statements and omissions, as well as the maker of each statement. *In re St. Jude Med., Inc. Sec. Litig.*, 836 F. Supp. 2d 878, 887-88 (D. Minn. 2011) ("Defendants may not obtain dismissal by arguing that the fact that Plaintiffs congregate their allegations of misstatements renders those allegations undifferentiated and unspecific."). To alleviate any doubt, the Schein Defendants are liable for the statements specifically referenced in paragraphs 116 through 121, 131 and 134 of the Complaint.[2]

Next, the Schein Defendants incorrectly assert that their statements in the January 2019 Registration Statements are forward-looking and protected by the safe harbor for forward-looking statements or "bespeaks caution" doctrine. In truth, these statements misrepresented ***present*** facts. *See In re: Genworth Fin., Inc. Sec. Litig.*, 2015 WL 3797163, at *2 (S.D.N.Y. June 16, 2015) ("statements of current condition ... are … not protected by the safe-harbor"). For example, Defendants did not say that they "expected" Covetrus's "key strength[]" to be "supply chain services

---

[1] Lead Plaintiff's response to the Covetrus Defendants' letter brief (ECF No. 31), filed concurrently herewith, sets forth the Complaint's factual allegations in further detail.

[2] Defendants' contention that the Complaint does not "state which defendants made which statements" is not only incorrect (*see* ¶¶115-51), but also belied by their acknowledgement that they understand which statements they made. *See In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 309-10 (S.D.N.Y. 2013) ("Defendants' briefs in support of their motions to dismiss, which forcefully and directly attack Plaintiffs' allegations … are themselves proof that Defendants have notice of the claims against them."). Contrary to Defendants' assertions, the Complaint often uses the terms "Defendants" for a simple reason—false or misleading statements by a corporate executive incur liability for both the executive and the company. *See Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 234 (S.D.N.Y. 2008) (executives' "acts and accompanying scienter are attributable to" their employer).

March 30, 2020 – Page 2

and technology"; instead, Defendants, after a lengthy period of pre-merger "due diligence" and "significant [pre-merger] planning and preparation" (¶¶5, 30, 153-54), represented in the Registration Statements that Henry Schein Animal Health ("HSAH") and Vets First Choice ("VFC") already possessed this critical strength (¶¶116-18).

Moreover, Defendants knew their statements were materially false and misleading. The statements concealed that HSAH's supply chain was antiquated, fragmented, in need of substantial investments, presented a "huge risk" for Covetrus, and would take up to three years to fix. ¶¶43-54. Indeed, as Defendants were well aware but concealed from investors, HSAH was notorious for supply chain issues that caused sales declines, led to customer frustration, and were "always talked about but never got fixed." *E.g.*, ¶¶80-81. "Far from having "integrated capabilities," the HSAH supply chain and Covetrus as a whole were unintegrated and highly fragmented. ¶¶43-88, 116, 122. Paladino, for example, clearly knew about the deficient integration and supply chain issues that plagued HSAH and Covetrus. Indeed, Paladino was heavily involved in HSAH's business and operations before, during, and after the formation of Covetrus. ¶¶16, 18; *see also* ¶153.

Even if Defendants' statements could be construed as "forward-looking," Defendants' boilerplate risk disclosures do not protect them from liability given the highly material facts that Defendants concealed from investors. *See In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 531 (S.D.N.Y. 2010) ("generic risk disclosures are inadequate to shield defendants from liability for failing to disclose known specific risks"). Furthermore, Defendants cannot escape liability by "warning" investors of risks that have already occurred, as such warnings are themselves fraudulent. *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013) ("a company's purported risk disclosures are misleading where the company warns only that a risk may impact its business when that risk has already materialized").

Defendants also contend that Paladino's March 13, 2019 statement promoting "$100 million" in synergies (¶131) "cannot be false" because it concerns the future and the Complaint purportedly "fail[s] to allege" that Paladino lacked a good faith basis for the statement. Not so. While the "vast majority" of Covetrus's purported synergy benefits were represented to derive from increased revenues spurred by the integration of HSAH and VFC (¶¶41, 126, 165), at the time of Paladino's March 13, 2019 statement and throughout the Class Period it was clear to Defendants that the synergy figures were unachievable due to an utterly deficient integration and decreased revenues. *E.g.*, ¶¶43-88. By the time of Paladino's March 2019 statements, the merger had already caused (and continued to cause) decreased revenues due to several factors, including the loss of HSAH's ability to sell whole categories of products. ¶¶70-88. The synergy figures were also baseless given the Company's lack of integration and lack of even a comprehensive integration plan, the prolonged length of time required to integrate, and the undisclosed infrastructure expenses that were necessary to remedy longstanding deficiencies. *Id.* Indeed, within months, Covetrus was forced to reveal shocking revenue and profit declines, leading analysts to conclude that the Company had, in fact, "*zero* revenue synergies." ¶106; *see* ¶¶96-114. These facts and many more detailed in the Complaint amply allege that Paladino lacked a good faith basis for his statements. *See also Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 303 (S.D.N.Y. 2018) (sustaining statements about positive synergies from an integration).

In sum, the Complaint's detailed allegations easily meet the pleading requirements. Lead Plaintiff respectfully submits that Defendants' letter brief should be construed as the motion itself, and the motion should be denied. *In re Best Payphones, Inc.*, 450 F. App'x 8, 15 (2d Cir. 2011).

March 30, 2020 – Page 3

Respectfully Submitted,

David R. Kaplan

cc: All Counsel of Record (via ECF)