# EXHIBIT A

2021 WL 1195740
Only the Westlaw citation is currently available.
United States District Court, D. Minnesota.

In re Resideo Technologies,
Inc., Securities Litigation

Case No. 19-cv-2863 (WMW/KMM)
|
Filed 03/30/2021

**ORDER**

Wilhelmina M. Wright United States District Judge

**\*1** This securities-litigation matter is before the Court on Defendants' motion to dismiss and Defendants' motion requesting judicial notice. (Dkts. 69, 74.) For the reasons addressed below, Defendants' motion requesting judicial notice is granted in part and denied in part and Defendants' motion to dismiss is denied.

**BACKGROUND**

Plaintiffs in this putative class-action lawsuit are investment management companies, investment funds and a pension plan that purchased Defendant Resideo Technologies, Inc.'s (Resideo) stock between October 29, 2018, and November 6, 2019 (class period). [1]

Defendant Resideo, a Delaware corporation with its principal place of business in Austin, Texas, was incorporated on April 24, 2018 and became an independently traded company on October 29, 2018. Resideo's common stock trades on the New York Stock Exchange. Defendants Michael G. Nefkens, Joseph D. Ragan III and Niccolo de Masi were Resideo executives during the class period.

This lawsuit arises from the October 2018 spin-off of Resideo from Honeywell International Inc. (Honeywell), which is not a party to this lawsuit. The amended complaint alleges that Honeywell spun off Resideo to offload billions of dollars of liabilities and failing business lines onto shareholders. Plaintiffs allege that, during the class period, Defendants materially misled investors in a series of public statements that concealed the shortcomings of Resideo's products and internal operations.

On October 10, 2017, Honeywell announced its intent to spin off portions of its Homes and Global Distribution business into an entity known as "Resideo." Resideo includes product lines from various Honeywell divisions. In an October 10, 2018 Form 8-K filed with the Securities and Exchange Commission (SEC), Resideo's 2019 revenue was projected to be $500 million in adjusted earnings before income tax, depreciation and amortization (EBITDA). Resideo later filed an SEC Form 10-K in March 2019, in which Resideo listed risk factors for its future business and noted that its performance as a subsidiary under Honeywell may not be representative of its performance after becoming an independent company.

**\*2** On October 29, 2018, the first day of the class period, Resideo became an independent company as a result of a corporate spin-off by Honeywell. On that day, Resideo commenced regular trading on the New York Stock Exchange at $28 per share. During the next several fiscal quarters, Resideo's stock declined. In March 2019, Resideo lowered its projected full-year 2019 EBITDA guidance from $500 million to a range of $410 million to $430 million. In October 2019, Resideo again lowered its projected 2019 EBITDA guidance from a range of $410 million to $430 million to a range of $330 million to $350 million.

On or about November 6, 2019, the last day of the class period, Resideo acknowledged a list of factors that contributed to its underperformance. Plaintiffs allege that these factors either were known to Defendants before the spin-off or directly contradict statements that Resideo executives made to the public during the class period. Resideo's stock closed at $10.02 per share on November 6, 2019. Plaintiffs allege that Defendants' corrective disclosures during the class period caused the Resideo stock price to drop by $12.16 per share, which cost investors more than $1.3 billion dollars. Honeywell's stock price during the class period grew by more than 32 percent.

Plaintiffs commenced several putative class-action lawsuits in late 2019 and early 2020. On January 27, 2020, the Court consolidated Plaintiffs' lawsuits and appointed "Lead Plaintiffs" in the instant consolidated action. On April 10, 2020, Plaintiffs filed the now-operative consolidated amended complaint in this action on behalf of a class of

individuals and organizations that owned or obtained Resideo stock during the class period.

Plaintiffs' amended complaint alleges two counts. Count I alleges that Defendants made false statements or omissions of material fact that deceived Plaintiffs, in violation of Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. Count II, a derivative claim against the individual defendants (Nefkens, Ragan and de Masi), alleges violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). Defendants move to dismiss with prejudice the amended complaint and seek judicial notice of several exhibits.

### ANALYSIS

A complaint must allege sufficient facts such that, when accepted as true, a facially plausible claim for relief is stated. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). When applying this pleading standard, a district court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiffs' favor. Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010). The factual allegations must be sufficient to "raise a right to relief above the speculative level," and they must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). Legal conclusions that are couched as factual allegations may be disregarded by the district court. See Iqbal, 556 U.S. at 678.

### I. Motion for Judicial Notice

As a threshold matter, Defendants seek judicial notice of certain documents attached as exhibits to the declaration of Charles D. Cording (Cording Declaration). When ruling on a motion to dismiss, a court ordinarily limits its consideration to the allegations in the complaint. See BJC Health Sys. v. Columbia Cas. Co., 348 F.3d 685, 687–88 (8th Cir. 2003). However, there are two exceptions to this rule: (1) the incorporation-by-reference doctrine and (2) judicial notice under Federal Rule of Evidence 201. [2]

**\*3** Incorporation by reference is a judicially created doctrine that treats certain documents "as though they are part of the complaint itself." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018). This doctrine seeks to prevent plaintiffs from selectively excerpting documents in a manner that supports their claims, while omitting those portions that weaken or defeat their claims. Id. When applying the incorporation-by-reference doctrine, a court is not limited to the four corners of the complaint and may consider "materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003). A mere mention of a document in a complaint is insufficient to warrant incorporation by reference. Khoja, 899 F.3d at 1002. Rather, the complaint must necessarily embrace the document such that it forms the basis of the plaintiff's claim. Id.

Federal Rule of Evidence 201 provides the second exception that permits courts to consider facts outside the complaint. Rule 201 permits a court to take judicial notice of a fact if it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). On a motion to dismiss, it is improper for a court to take judicial notice of disputed facts, as a "high degree of indisputability is the essential prerequisite" for taking judicial notice under Rule 201. Fed. R. Evid. 201 advisory committee's note (1972); accord Khoja, 899 F.3d at 1000.

Defendants seek the Court's judicial notice of exhibits attached to the Cording Declaration. Because many of the exhibits are neither public records nor embraced by the amended complaint, Plaintiffs argue that judicial notice is not appropriate. Plaintiffs concede, however, that some of the documents are incorporated by reference in the amended complaint and, therefore, are appropriate for judicial notice. [3] The Court takes judicial notice of Exhibits A, I, O, Q, R, W, Y, BB, EE, FF and HH, which are exhibits that Resideo filed with the SEC or other publicly available call transcripts, press releases and presentation materials, because these exhibits are beyond reasonable dispute and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. See Fed. R. Evid. 201.

The Court declines to take judicial notice of the remaining twenty-four exhibits attached to the Cording Declaration, because the parties dispute the relevance and accuracy of these exhibits, and these exhibits are not needed to address Defendants' motion to dismiss. Moreover, the Court declines

to take judicial notice of these twenty-four exhibits under the incorporation-by-reference doctrine because the amended complaint does not "necessarily embrace" these exhibits. *Mattes*, 323 F.3d at 697 n.4; *see also* *Khoja*, 899 F.3d at 1002.

In summary, the Court grants in part and denies in part Defendants' motion for judicial notice. The Court takes judicial notice of Exhibits A, I, O, Q, R, W, Y, BB, EE, FF and HH. Defendants' motion for judicial notice is denied as to the remaining exhibits attached to the Cording Declaration.

## II. Motion to Dismiss

The Private Securities Litigation Reform Act (PSLRA) applies heightened pleading standards to securities claims, including those arising under the Exchange Act. *See* 15 U.S.C. § 78u-4(b); *accord* *In re Hutchinson Tech., Inc. Sec. Litig.*, 536 F.3d 952, 958 (8th Cir. 2008). The PSLRA establishes higher pleading standards for two aspects of Exchange Act claims. The complaint must "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention 'to deceive, manipulate, or defraud.' " *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 & n.12 (1976)).

**\*4** The first heightened pleading element requires a complaint to identify each allegedly misleading statement and specify why the statement is misleading. 15 U.S.C. § 78u-4(b)(1). The second heightened pleading element, which pertains to scienter, requires a complaint to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2). The Court addresses, in turn, each count of Plaintiffs' amended complaint under the applicable heighted pleading standards.

### A. Violations of Exchange Act Section 10(b) and SEC Rule 10b-5 (Count I)

Count I of the amended complaint alleges that Defendants knowingly engaged in a plan or scheme to deceive Resideo's common stock purchasers, in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. According to Plaintiffs, Resideo was a part of a corporate scheme for Honeywell to offload billions of dollars of liabilities. The spin-off was intended to hide the widespread financial problems within Resideo's business lines, Plaintiffs allege, and Resideo's executives made materially false statements to investors in furtherance of the fraudulent scheme. Defendants move to dismiss Count I, arguing that Plaintiffs fail to meet the heightened pleading standard of the PSLRA.

To state a claim for securities fraud under Section 10(b) of the Exchange Act and SEC Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re Target Corp. Sec. Litig.*, 955 F.3d 738, 742 (8th Cir. 2020) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011)). To survive a motion to dismiss, a plaintiff also must satisfy the heightened pleading standards of the PSLRA, which require a plaintiff to plead the first two elements, material misrepresentation or omission and scienter, with heightened particularity. *Id.*

Defendants argue that Plaintiffs fail to plead with particularity the elements of material misrepresentation or omission and scienter as required by the PSLRA.

### 1. Material Misrepresentation or Omission

Under the PSLRA, allegations in the complaint must specify each materially false statement or misleading omission and explain why it is misleading. 15 U.S.C. § 78u-4(b)(1). A false or misleading statement or omission is material if there is a substantial likelihood that it would cause a reasonable investor to significantly alter his or her actions. *See* *In re St. Jude Med., Inc. Sec. Litig.*, 836 F. Supp. 2d 878, 886 (D. Minn. 2011). To meet the PSLRA's heightened pleading requirement for falsity, a plaintiff must plead the who, what, when, where, and how of the misleading statements or omissions. *Id. at 887*. A plaintiff also must allege why the misleading statements or omissions were false when they were made. *Id.*

Plaintiffs allege that Resideo executives made dozens of material misrepresentations or omissions during the class period. These include material misrepresentations regarding Resideo's history as a part of Honeywell, Resideo's supply chain issues, Resideo's new product launches (GRIP and Project Storm) and Resideo's earnings guidance.

Defendants contend that Plaintiffs fail to plead material misrepresentations or omissions because Resideo's forward-looking statements were accompanied by meaningful cautionary language and Plaintiffs merely allege the type of "fraud by hindsight" claims that the PSLRA seeks to eliminate.

#### a. Resideo's Forward-Looking Statements

**\*5** Defendants argue that, because Resideo included cautionary language in its projections of future performance, these forward-looking statements are protected under the PSLRA's safe harbor. Plaintiffs respond that the safe harbor does not apply to the cautionary language because Defendants *knew* that the circumstances Resideo falsely represented as potential risks had actually materialized.

The safe-harbor provision of the PSLRA protects forward-looking oral or written statements of an issuer of stock if they are "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1)(A). The safe harbor does not apply when a plaintiff proves that a forward-looking statement was "made with actual knowledge by that person that the statement was false or misleading." *Id.* § 78u-5(c)(1)(B); *accord In re Nash Finch Co.*, 502 F. Supp. 2d 861, 873 (D. Minn. 2007) (concluding that "cautionary language cannot be 'meaningful' when defendants know that the potential risks they have identified have in fact already occurred, and that the positive statements they are making are false").

Here, Plaintiffs allege that Defendants knew about the existing supply chain problems, lack of production facilities, and shortage of engineers when Defendants cautioned that these issues *might* pose a problem in the future. When accepted as true, Plaintiffs' allegations demonstrate that any cautionary language was not meaningful because it contradicted Defendants' actual knowledge. As Plaintiffs have plausibly alleged that Defendants knew that material issues *existed* when Defendants disclosed that those material issues *might* occur, the PSLRA safe harbor provision does not bar Plaintiffs' claims.

#### b. Fraud by Hindsight

Defendants next argue that Plaintiffs' allegations amount to "fraud by hindsight" because Plaintiffs depend on post-class-period statements to substantiate part of their claims. *See In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 742–43 (8th Cir. 2002). The PSLRA was enacted to limit frivolous securities litigation, including the pleading of "fraud by hindsight." *Id.* A complaint pleads "fraud by hindsight" when it alleges that a defendant made a false statement at a particular time, without alleging that the defendant knew or should have known that the statement was false when the statement was made. *Id.* "Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).

Knowledge is an essential element of a securities-fraud claim. *See In re Target*, 955 F.3d at 743. In *In re Target*, the Eighth Circuit concluded that the investors' complaint failed to state a securities-fraud claim because the investors failed to plead that Target's executives knew the statements were false when the statements were made. *Id.* at 743–45. Here, Plaintiffs allege that Resideo's executives knew or should have known that Resideo's statements were false. Plaintiffs support their allegations with confidential witnesses who attest to Defendants' knowledge that Resideo's statements were false or materially misleading when Defendants made them.

As Plaintiffs have met the heightened pleading standard for material misrepresentation or omission of facts, Defendants' argument to the contrary fails.

#### 2. Scienter

**\*6** Defendants also argue that Plaintiffs' allegations lack sufficient specificity to meet the PSLRA's heightened pleading standard for scienter. A plaintiff asserting a securities-fraud claim must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). To determine whether the alleged facts give rise to a strong inference of scienter, a district court performs a comparative analysis of "plausible opposing inferences." *Tellabs, Inc.*, 551 U.S. at 323. In doing so, "plausible,

nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff," are considered. 🚩 *Id.* at 324. A district court must determine "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." 🚩 *Id.* at 323. A claim will survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." 🚩 *Id.* at 324.

A plaintiff may plead scienter in one of three ways: facts that demonstrate a mental state embracing intent to deceive, manipulate, or defraud; allegations of severely reckless conduct; or allegations of motive and opportunity. 🚩 *In re Nash Finch Co.*, 502 F. Supp. 2d at 881. To meet the heightened pleading requirement, a plaintiff must adequately plead only one of these circumstances.[4] *Id.*

As a more plausible, nonculpable explanation for their conduct, Defendants contend that Resideo's drop in stock price resulted from unrealistic expectations set by Honeywell, supply chain issues and poor market trends. Defendants maintain that each potential risk was adequately disclosed before it happened, and newly discovered deficiencies were disclosed as soon as they occurred. Moreover, an overly optimistic forecast of company performance does not amount to fraud. *See* 🚩 *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1238 (10th Cir. 2016) (holding that corporate optimism, which ultimately proved false, was not enough to meet the pleading requirements for scienter in the PSLRA).

Plaintiffs counter that Defendants had an intent to deceive and engaged in severely reckless conduct. Defendants knew, or had access to information suggesting, that Resideo's public statements were false or materially misleading, Plaintiffs allege. Attached to the amended complaint are interview summaries for multiple confidential witnesses who attest to the Defendants' knowledge of the relevant information that the Defendants failed to disclose to the public.[5] Plaintiffs also allege that Defendants advised Resideo employees to discuss "adverse news" and "potentially damaging" information using the messaging application WhatsApp to avoid discovery, because email messages are less secure and "easily discoverable." Plaintiffs argue that these allegations, if true, are prima facie evidence of Defendants' intent to deceive

based on concealment. *Cf. Herbst v. Givaudan Flavors Corp.*, 341 F. Supp. 3d 1006, 1014 (N.D. Iowa 2018) (holding that concealment can be evidence of intent to deceive in the context of products-liability claims). Finally, Plaintiffs argue that the new chief financial officer's discovery of severe problems within Resideo immediately after the individual Defendants' departure, if true, is prima facie evidence that Defendants acted with severe recklessness. *See, e.g.,* 🚩 *In re New Century*, 588 F. Supp. 2d 1206, 1231 (C.D. Cal. 2008) (observing that "the fact that the new [chief executive officer] ... discovered the accounting violations within months of taking the position is a strong indication that these accounting violations were obvious enough that a new officer found them quickly"). The statements of the confidential witnesses, combined with the concealment allegations and the rapid discovery of undisclosed problems by the new chief financial officer, are cogent and compelling reasons to conclude that Plaintiffs have plausibly alleged scienter.

**\*7** The next step in the analysis is to determine whether the inferences of scienter arising from Plaintiffs' allegations are cogent and at least as compelling as the contrary inferences offered by Defendants. 🚩 *Tellabs, Inc.*, 551 U.S. at 323. Defendants contend that the drop in stock price was not the result of fraudulent activity. Rather, Resideo's stock price plunged as it encountered challenges in the "wake of its spin-off ... as many newly independent companies have done."

Plaintiffs' inference of scienter is more compelling than Defendants' contrary inference for at least three reasons. First, Resideo allegedly was assembled from a "hodgepodge of random" Honeywell business units, creating an inference that the common characteristic of these business units was not their business similarities but, rather, their liabilities. Yet Resideo reported optimistic EBIDTA projections that it subsequently failed to meet. Second, Defendants' inference fails to provide a plausible explanation for Plaintiffs' allegations suggesting concealment and severe recklessness. Third, the value of Honeywell's stock rose by 32 percent during the class period, while Resideo's fell by more than 60 percent. Before and during the class period, Defendants represented that the spin-off would benefit Resideo, which purportedly would excel as a new company because of its agility in new-product development. In short, Honeywell performed better without Resideo, and Resideo struggled without Honeywell. From these circumstances, it can be reasonably inferred that Honeywell's spin-off of Resideo was in Honeywell's best interest and not in Resideo's best interest,

which is contrary to Defendants optimistic statements before and during the class period.

In summary, Plaintiffs have met the PSLRA's heightened standard for pleading scienter because a reasonable person would consider Plaintiffs' allegations of scienter "cogent and at least as compelling" as the opposing inference proffered by Defendants. *Tellabs, Inc.*, 551 U.S. at 324.

As Plaintiffs have satisfied the heightened pleading standards of the PSLRA for both the material-misrepresentation and scienter elements of Plaintiff's claim, Defendants' motion to dismiss Count I is denied. [6]

**B. Violations of Exchange Act Section 20(a) (Count II)**
Count II alleges that the individual Defendants Nefkens, Ragan and de Masi were controlling persons of Resideo and that they are liable under Section 20(a) of the Exchange Act. Under Section 20(a) of the Exchange Act, every person who directly or indirectly controls a business that is liable under Section 10(b) of the Exchange Act and SEC Rule 10b-5 also is jointly and severally liable for the conduct of the controlled business. 15 U.S.C. § 78t(a).

To succeed at trial, a plaintiff asserting a Section 20(a) claim must prove "(1) that a primary violator violated the federal securities laws; (2) that the alleged control person actually exercised control over the general operations of the primary violator; and (3) that the alleged control person possessed—but did not necessarily exercise—the power to determine the specific acts or omissions upon which the underlying violation is predicated." *In re St. Jude*, 836 F. Supp. 2d at 911 (quoting *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010)). To survive a motion to dismiss, however, a plaintiff need only plausibly plead that "(1) an alleged control person actually exercised control over the general operations of the primary violator; and (2) the alleged control person possessed but did not necessarily exercise the power to determine the specific acts or omissions upon which the underlying violation is predicated." *Cummings v. Paramount Partners, LP*, 715 F. Supp. 2d 880, 907 (D.

Minn. 2010) (quoting *In re Retek Inc. Sec. Litig.*, 621 F. Supp. 2d 690, 709 (D. Minn. 2009)). Controlling-person claims are not subject to the heightened pleading standards in the PSLRA. *See Lustgraaf*, 619 F.3d at 875.

**\*8** Whether an individual is a controlling person is an "intensely factual question." *Cummings*, 715 F. Supp. 2d at 907. Notably, Defendants do not argue that Plaintiffs fail to plausibly allege that Nefkens, Ragan and de Masi controlled Resideo. Defendants argue that Count II "necessarily fails" because Plaintiffs did not sufficiently plead an underlying securities-fraud claim. As this Court has concluded that Count I alleging securities fraud survives Defendant's motion to dismiss, Count II, which is a derivative claim of Count I, also survives. *See Shoemaker v. Cardiovascular Sys., Inc.*, 300 F. Supp. 3d 1046, 1055 (D. Minn. 2018) ("A claim under Section 20(a) for control person liability is derivative of a primary claim ...."). Defendants' motion to dismiss Count II, therefore, is denied.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendants' motion for judicial notice, (Dkt. 74), is **GRANTED IN PART AND DENIED IN PART** as follows:

   a. The Court takes judicial notice of Exhibits A, I, O, Q, R, W, Y, BB, EE, FF and HH, attached to the declaration of Charles D. Cording.

   b. The Court declines to take judicial notice of any other exhibits attached to the declaration of Charles D. Cording.

2. Defendants' motion to dismiss, (Dkt. 69), is **DENIED**.

**All Citations**

Slip Copy, 2021 WL 1195740

## Footnotes

Case 2:19-cv-05530-ARL    Document 50-1    Filed 04/13/21    Page 8 of 8 PageID #: 2793

Lead Plaintiffs The Gabelli Asset Fund, The Gabelli Dividend & Income Trust, The Gabelli Focus Five Fund, The Gabelli Multimedia Trust Inc., The Gabelli Value 25 Fund Inc. and GAMCO International SICAV (the Gabelli Funds) are closed-end investment management companies headquartered in Rye, New York. Lead Plaintiff GAMCO Asset Management Inc. (GAMCO) also is an investment management company located in Rye, New York. Lead Plaintiffs Naya 1740 Fund. Ltd., Naya Coldwater Fund Ltd., Naya Master Fund LP and Nayawood LP (the Naya Funds) are pooled investment funds managed by Naya Capital Management UK Limited. Plaintiff Oklahoma Firefighters Pension and Retirement System (Oklahoma Fire) is a defined benefit pension plan founded in 1980 for the benefit of paid and volunteer firefighters in the state of Oklahoma. Although this case involves the consolidation of multiple lawsuits, some of which included additional plaintiffs, these additional plaintiffs are not included in the now-operative consolidated amended complaint and, therefore, no longer appear to be plaintiffs in this case.

Courts must be careful not to consider anything beyond these exceptions to avoid transforming a *Rule 12* motion to dismiss into a Rule 56 motion for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)

Plaintiffs also contend that the exhibits that are appropriate for judicial notice were originally excerpted in favor of Defendants. However, this dispute has been resolved because Defendants have filed the full versions of these exhibits on ECF in response to Plaintiffs' request.

The individual Defendants' alleged scienter is imputed to Resideo. *In re St. Jude*, 836 F. Supp. 2d at 896 (holding that, when corporate officers are named as defendants, their scienter is imputed to the corporate entity).

The amended complaint includes interviews from fifteen confidential witnesses, whom Defendants argue are unreliable. The testimony of a confidential witness may be used to satisfy the PSLRA's particularity requirements if the testimony is reliable and credible. *See, e.g.*, *In re St. Jude*, 836 F. Supp. 2d at 900–01; *In re Nash Finch Co.*, 502 F. Supp. 2d at 874. The testimony of confidential witnesses may be reliable if the witness statements corroborate one another and the complaint includes, for each confidential witness, the job title, period of employment, employment responsibilities, and personal knowledge of the information provided. *See, e.g.*, *In re St. Jude*, 836 F. Supp. 2d at 900–01; *In re Nash Finch Co.*, 502 F. Supp. 2d at 874. Because these indica of reliability are present for each confidential witness, Plaintiffs' use of confidential witnesses satisfies the PSLRA's particularity requirements.

The Court need not address the remaining elements of Count I, which Defendants do not challenge.

---

**End of Document**                              © 2021 Thomson Reuters. No claim to original U.S. Government Works.