UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

CITY OF HOLLYWOOD POLICE          .     Docket No.
OFFICERS RETIREMENT               .     19-cv-05530-GRB-RLM
SYSTEM, et al.                    .
                                  .
       Plaintiffs,                .     Central Islip, New York
                                  .     October 26, 2021
          v.                      .     12:00 p.m.
                                  .
HENRY SCHEIN, INC., et            .
at.,                              .
                                  .
       Defendants.                .
  . . . . . . . . . . . . . . .   .


              TRANSCRIPT OF INIITAL CONFERENCE HEARING
                 BEFORE THE HONORABLE ROANNE L. MANN
                   UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          Saxena White P.A.
                            KYLA J. GRANT
                            SARA M. DILEO
                            10 Bank Street
                            8th Floor, Suite 882
                            White Plains, New York  10606
                            914-437-8551

For the Defendant,          Latham & Watkins LLP
Covetrus and Ben Shaw:      KEVIN M. MCDONOUGH
                            JAMIE WINE
                            COREY A. CALABRESE
                            1271 Avenue of the Americas
                            New York, New York  10020
                            212-906-1200

Transcription Service:       Opti-Script, Inc.
                             P.O. Box 77
                             Winfield, PA 17889
                             800-494-7500

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

P R O C E E D I N G S

THE COURT:  This is Judge Mann on the line.  I'm conducting a telephonic initial conference in City of Hollywood Police Officers Retirement System, et al. versus Henry Schein, Inc., et al., 19-cv-5530.  We're proceeding remotely because of the pandemic.  I hope everyone is safe and healthy.

Let me begin by taking a roll call on the case.  How many attorneys or other individuals do we have on the line on behalf of the Plaintiff?

MS. GRANT:  Your Honor, this is Kyla Grant from Saxena White.  We have two attorneys on the line on behalf of Plaintiff, myself and my colleague Sara DiLeo.

THE COURT:  All right.  Welcome to both of you. And let me just say at the outset because of the number of individuals we have on the line, I would ask you during the course of the proceeding please identify yourself when you're addressing the Court.

All right.  And who is on the line on behalf of the remaining Defendants in the case, starting with Covetrus?

MR. MCDONOUGH:  Good afternoon, Your Honor.  This is Kevin McDonough from Latham & Watkins appearing on behalf of Covetrus and Ben Shaw, who is the other remaining Defendant.  And I'm joined today by my colleagues Jamie Wine and Corey Calabrese also of Latham.

THE COURT: All right. Welcome. Do I understand that those are the only remaining defendants in the case?

MR. MCDONOUGH: Yes. That is correct, Your Honor.

THE COURT: All right. So I've reviewed the parties' proposed schedule in the case. I've also discussed it with Judge Brown. Before I set a schedule in the case, does anyone want to be heard on any of the underlying facts or issues in the case?

Hearing nothing -- did I get everyone's appearance by the way? Was there anyone else who I missed who dialed in?

All right. Hearing nothing, I'll assume the answer to that is no.

Let me begin by stating that the schedule that the parties have jointly proposed has discovery extending to a year from now with summary judgment being briefed into March of 2023. Given Judge Brown's ruling in the case, many of the statements have been dismissed from the case, a number of the defendants. This is now a much narrower case than it was before. Is it really necessary? It strikes both this Court and Judge Brown as an excessive amount of time for discovery proposed by the parties. Does anyone want to be heard on that?

Hearing nothing, I will state that I assume one of the reasons for the rather lengthy proposed schedule is that

the parties have built into the schedule briefing of a proposed motion for class certification.  So we have a deadline at the end of January for filing a motion for class certification, a response to that motion two months later, and a class certification reply due the end of the following month.

So I assume the parties' proposed deadlines take into account the time that counsel will be devoting to briefing that motion.  Is there any reason why the motion for class certification should not await a decision on what it appears will be motions or possibly cross-motions for summary judgment?

MR. MCDONOUGH:  Your Honor, this is Kevin McDonough from Latham & Watkins on behalf of Defendants.  And I'd be happy to address that.  Our thinking on the defense side is that it would be useful for us to understand whether there will be a certified class as that may affect the issues in the case and the amount of discovery that's necessary.  It can also factor into resolution discussions to have an idea earlier on in the case as to whether we will have a certified class or not.  So those were some of the factors that animated our thinking on how the class certification timing fits into the overall schedule.

THE COURT:  Well, if you were to make -- to fully submit the class certification motion at the end of April and

you have proposed a fact discovery cutoff at the end of June, it may be wishful thinking on your part to assume that you're going to have a decision on the motion for class certification.  So I don't know that there would be any -- you suggested that the decision on the motions might impact the scope of discovery.  I suspect that if a class action is certified that whether that motion is made before or after a motion for summary judgment it's going to require that discovery be reopened to address class discovery that hasn't already been done.  So I don't find that particularly persuasive.

You did say that it might impact the resolution of the case.  The parties can certainly have discussions and I encourage the parties to have discussions about trying to resolve the case.  And one of the factors that they would address would be the likelihood or unlikelihood that a motion for class certification would be granted.  The fact that there is -- no one has any certainty on that issue might in fact facilitate the resolution of the case.

Does anyone else want to be heard?

MS. GRANT:  Your Honor, this is Kyla Grant.  I will just say for the reasons that Mr. McDonough said we usually do brief class certification prior to summary judgment in these cases.  It does sometimes facilitate settlement talks, if there are any.

But as Your Honor pointed out, of course, the parties could have discussions on that issue even without having a decision on class certification.  I will say we could move up the date for the motion to be filed.  I think from Plaintiff's perspective, that would probably be fine.  I don't know if that addresses Your Honor's concerns on that matter, but that's certainly something that we're willing to do.

THE COURT:  Well, let me tell you the deadlines that I have in mind.  And then you tell me whether it's realistic to maintain a briefing schedule for Rule 23 motions while the parties are conducting discovery, albeit a shortened one.

I take it that the parties have completed the initial disclosures since you had proposed September 28th as that deadline.  The Defendant's answer has been filed.  I'm now looking at docket entry 76, which is also page 9 of docket entry number 75, the proposed scheduling order.

Skipping over the class certification papers, document discovery substantially completed by -- and what's been proposed is February 28th of 2022, which is a month after the motion for class certification as proposed by the parties.

Why can't document discovery be completed in this calendar year?  Why can't it be completed in December?

MR. MCDONOUGH:  Your Honor, Kevin McDonough from Latham.  It's probably in my court to address that because the document discovery issues usually weigh more heavily on the defendants in these cases.

I think given the complexities of data collection and searching and coming to agreement with the Plaintiffs on how we're going to go about that with respect to electronically stored information.  It would be challenging for us to finish -- to substantially complete document discovery by the end of this calendar year.  We certainly intend to make very good progress before the end of this calendar year, but our experience is that with the complexities of ESI discovery and production that the amount of time that we've provided for in the schedule is likely necessary.

THE COURT:  Well, given the fact that I'm prepared to substantially cut back on the deadline for fact discovery, it doesn't make sense to maintain the deadline that you proposed, the February 28th deadline.

And I know that ESI can be challenging in some cases, but this is the kind of case with very sophisticated parties and counsel on both sides.  This is not your first rodeo.  And I'm sure that you've already retained the experts required to assist you in the data collection.

Have you started the process of collaborating to

come up with search terms and custodians whose records are going to be searched?

MR. MCDONOUGH:  Your Honor, Kevin McDonough from Latham.  We've done a fair amount of thinking on our own about that.  We have not yet had a conferral with the Plaintiffs on those particular subjects.

THE COURT:  Is there any reason why you haven't?

MS. GRANT:  Your Honor, this is Kyla Grant.

MR. MCDONOUGH:  We submitted --

MS. GRANT:  Oh, I'm sorry.

MR. MCDONOUGH:  Pardon me.  Go ahead.

MS. GRANT:  Oh, Your Honor, this is Kyla Grant from Saxena White.  The Plaintiffs served their first request for production on September 7th, and Defendants served their responses on -- correct me if I'm wrong, Mr. McDonough -- on October 7th.  So that wasn't that long ago.  And then we were waiting the scheduling conference to see what was going to happen.

But we have been negotiating also at the same time the protective order and the ESI stipulation, which will, you know, largely govern how this is done.  And so we're in the process -- we're about to finalize those.  I think we probably will by the end of the week.  But that's what's been going on.  I think we are on the verge of beginning that process.

I will say to Your Honor's point it is a short class period.  It is a very discrete issue.  It's just this integration of these two companies.  That's what all the false statements that remain in the case are about.

So I do think that it's possible to -- I can't speak for Defendants, but it is a more discrete and more narrow case, as Your Honor pointed out, than some of the other cases that we're involved in.

THE COURT:  Well, I want to go back because when I scheduled this initial conference, normally I provide counsel with a standard initial conference questionnaire.  And perhaps I didn't provide that to counsel in this case.  And I may not have.

Because one of the things I ask is the number of depositions that are contemplated.  So since I don't see my completed initial conference questionnaire, how many depositions are the parties contemplating in total in this case, apart from experts?

MS. GRANT:  Your Honor, this is Kyla Grant again from Saxena White.  I believe -- I wasn't myself present for the 26 status conference, but we do have a minor dispute over that.  And Defendants want to limit it to 10 depositions, nonexpert, and Plaintiffs would like 15.

The reason Plaintiffs are seeking five additional depositions over what the Federal Rules typically allow is

just because of the number of individuals involved here. This was a failed integration. There's a lot of management turnover from both companies. And in the complaint alone, our confidential witnesses identified over 15 current and former executives of the two companies that may have relevant information in addition to the individual defendants.

In Plaintiff's initial disclosures based on our own investigation, we identified over 50 former and current employees that might have relevant information in addition to over 10 third parties. So while 15 is over what the Federal Rules typically allow, we would say this is a case that involves a lot of individuals, large companies. And we are trying to be reasonable and conservative by choosing 15 depositions.

Plaintiffs also want 30 interrogatories instead of 25. Again, a bit of a minor difference, but it's just in recognition of how many individuals are involved and that we are trying to limit ourselves in terms of depositions. So we're trying to use different forms of discovery to be as efficient as possible.

THE COURT: And is the number of interrogatories, is that disputed or only the number of depositions?

MS. GRANT: It is disputed. Plaintiffs would like 30, and Defendants would like to limit Plaintiffs to the 25 allowed by the Federal Rules.

THE COURT:  All right.  Mr. McDonough, are you going to be responding?

MR. MCDONOUGH:  Yes, Your Honor.  Kevin McDonough --

THE COURT:  Or one of your -- okay.

MR. MCDONOUGH:  -- from Latham.  And our position, Your Honor, is that the default under the Federal Rules for both depositions and interrogatories is appropriate, certainly at this stage, whereas Your Honor has pointed out we do only have nine alleged misstatements.  The class period is relatively short for a case of this type.  It's approximately six months.  And the issues have been substantially narrowed by Judge Brown's opinion because not only do we have the limited number of alleged misstatements but they really all concern the same topic, which is the integration of software platforms following the merger of two animal health companies.

There's only really one speaker, one individual speaker who matters in the case.  That's Mr. Shaw, who made eight of the nine statements.  The ninth statement is one that was included in a company filing with the SEC.

And so our proposal, Your Honor, really was that we ought to move forward with the limitation set forth under the Federal Rules just to encourage each side to be as thoughtful as possible about who really needs to be deposed and what

needs to be sought through interrogatories.

But we have worked well with Ms. Grant and her firm in this case and in other cases. And I think if it turned out at some point down the road that additional depositions were needed or additional interrogatories were needed, we could meet and confer and I suspect successfully resolve any issues there. But we don't see a need to tack on beyond the rules at this point.

THE COURT: And how many depositions do Plaintiffs contemplate conducting?

MS. GRANT: Your Honor, what we put in the 26(f) report was 15 depositions. Again, as I said, in the complaint, we have confidential witnesses. We have 10 confidential witnesses who identified over 15 former -- current and former executives of the two companies that were directly involved in the integration. And I am speaking about the remaining issues in the case, which is the integration -- and the integration of the software platforms is one issue. There's another issue about the integration of sales forces, which involve entirely different departments.

Again, there was high management turnover, so we may find ourselves needing to depose multiple people that held the same role. And so that is why we were proposing 15 because we actually see -- in our initial disclosures, for example, based on our investigation, we see over 50 former

and current employees that may have relevant information.

So when we proposed 15, we actually are trying to be conservative.  That said --

THE COURT:  But my question was directed to Mr. McDonough.

MS. GRANT:  I apologize.

THE COURT:  How many depositions do the Defendants contemplate conducting?

MR. MCDONOUGH:  Thank you, Your Honor.  We certainly don't contemplate taking more than 10.  And our hope is to require less than 10.  I think that will be determined to some extent by what we see in the documents. We do intend to depose the lead Plaintiffs and their investment advisors.  We don't know quite yet how large a universe that is, but that's probably somewhere between two and four depositions.  And then we contemplate deposing some of the confidential witnesses to the extent that the Plaintiffs are not going to depose them.

But we think that 10 nonexpert depositions is sufficient for the defense side and, as I said, we think sufficient at this time for Plaintiffs as well with the caveat that we could always meet and confer later subject to what the parties learn in the documents and from other depositions.

THE COURT:  And you haven't specifically addressed

the request for five additional interrogatories.

MR. MCDONOUGH:  Thank you, Your Honor.  Our position there is the same, which is given the narrowed issues in the case we do think that the Federal Rules and the limitations within those rules make a lot of sense.

But we are open to the fact that if following the issuance of some interrogatories Defendants or Plaintiffs decide that additional interrogatories are needed, we would be more than happy to meet and confer with Plaintiffs on that.  But we don't see a concrete need for those additional interrogatories at this point.

And the only other item I'd like to flag, Your Honor, is I believe the Plaintiff's proposal is for 30 interrogatories, which would include subparts within interrogatories.  That sometimes can lead to many more than 25 or 30 interrogatories when we have a number of different subparts which sometimes cover different topics within the same interrogatory.

THE COURT:  By the way, I just realized although I'm now looking at docket entry number 75 and I see you do have -- you do address the number of interrogatories and depositions.  So let me just very quickly review that.

If the Court were to allow Plaintiffs 12 depositions, would the Defendants want an equal number or are you still satisfied with 10?

MR. MCDONOUGH:  We would like an equal number, Your Honor.

THE COURT:  All right.  I'm going to allow each side to take up to 12 depositions.  I hope that increasing the number is not going to invite depositions that otherwise would be unnecessary.  So use those numbers wisely because the Court will be a lot less open in the future to expanding that number further.

And with respect to interrogatories, I just want to understand the counting system, the 30 interrogatories including parts and subparts.  The term including means that parts and subparts are not separately counted or are separately counted?  That's addressed to Plaintiff's counsel.

MS. GRANT:  Your Honor, I believe that language means that they are not separately counted.  That said, I don't think that Plaintiff anticipates issuing 30 multipart interrogatories.  So if wanted to say that subparts count as separate interrogatories, that would probably be fine.

THE COURT:  All right.  Well, in that case, I will give each side 30 interrogatories with the parts and subparts to count as separate interrogatories.

Now let's go back to scheduling now that I have a better sense of the scope of discovery.  And by the way, if interrogatories -- I assume that the parties are not going to be misusing interrogatories to simply get a preview of what

they can expect the deposition testimony to show.  You know, reporting each and every conversation during a certain period of time.  You should use the interrogatories as a way to streamline and focus discovery in the case, including depositions.  Perhaps you'll be able to pare down the number of depositions if you use the interrogatories as a way of focusing the discovery in the case.

And I assume that there will also be a Rule 30(b)(6) deposition or depositions.  So where the Plaintiffs can get the information they need through a 30(b)(6) witness, again, don't feel like you have to take a scorched earth approach to discovery in this case by deposing each and every person who potentially might have relevant information.

The Court is inclined to give the parties until March 30th of 2022 to complete fact discovery.  I'm deferring for the moment the setting of the deadline for completion of document discovery.  Why shouldn't fact discovery be moved -- the deadline be moved to March 30th?

MS. GRANT:  Your Honor, this is Kyla Grant from Saxena White.  The only thing I would say is it would depend for Plaintiffs, I think, on the substantial completion deadline.  We just would want to make sure that we have all of the relevant documents before deposing the witnesses because we wouldn't want to have to call witnesses back if, say, Defendants produced a highly relevant document after a

deposition had occurred.

So we don't object to the March 30th date in general. It's just if the substantial completion date -- as long as the substantial completion date is before that date with sufficient time for us to have all the relevant documents we need before we take depositions.

THE COURT: Well, what would you consider -- and this is the reason why I moved on to that deadline. How much time would you need given the number of depositions we're now talking about? I've said I'm going to cut back on the February 28th deadline for fact discovery. I assume you'd want more than a month. So would two months be sufficient?

MS. GRANT: Your Honor, I think two months would be sufficient. Yes.

THE COURT: All right. So with that representation, the Court would be prepared to give the parties -- and it would primarily be Defendant, I guess -- until January 28th to complete fact discovery. Is that sufficient time for Defendants to substantially complete the ESI production?

MR. MCDONOUGH: Kevin McDonough, Your Honor, for Defendants. Yes. We will complete substantial -- we will achieve substantial completion of document production by the end of January.

THE COURT: All right. Very good. So January 28th

will be that deadline.  And by the way, the schedule that I'm giving you will be included in a minute entry that will be docketed into the ECF court file at the conclusion of this proceeding.

So the document production should be made on a rolling basis so that we don't have a document dump on or around January 28th.  And I encourage counsel to confer early and often to try and resolve any issues concerning the custodians whose ESI is to be searched and the search terms to be used.

With respect to expert discovery, we now have a fact discovery cutoff of March 30th.  Is there any reason why the first round of expert disclosures can't be made by April 22nd?

All right.  Hearing --

MR. MCDONOUGH:  Kevin McDonough for Defendants.  I think that date is fine with us.

MS. GRANT:  Your Honor, Kyla Grant for Plaintiffs.  That date is also okay for Plaintiffs.

THE COURT:  And I noticed that the parties did allow a longer period of time for the rebuttal expert reports.  I don't know if you think that's because the reports themselves require more time or if it's because under your schedule there was an intervening -- the intervening month was August and perhaps you felt that the counsel and

the experts might not be fully available during that time.

If I give the -- so does someone want to explain the reason for the two-month lapse in the proposed schedule?

MR. MCDONOUGH:  Kevin McDonough, Your Honor.  I do think that the August time period factored into the amount of time for rebuttal expert reports to some extent.  And then the other factor that I know Defendants had in mind is that it can be difficult for the rebuttal experts to start their work in earnest until they see what the content of the initial expert report is.  And so there's sometimes more work required there.

But if Your Honor is inclined to reduce the amount of time for rebuttal expert reports, the Defendants are comfortable with that.

THE COURT:  Well, what would you propose if the first round of expert disclosures is to be served by April 22nd?  What would you propose as the deadline for the rebuttal expert reports?

MR. MCDONOUGH:  In that instance, Your Honor, we would propose the first week of June for rebuttal expert reports.

THE COURT:  So June 3rd?

MR. MCDONOUGH:  Yes.

THE COURT:  Is that agreeable to Plaintiffs?

MS. GRANT:  Your Honor, Kyla Grant from Saxena

White.  Yes.  Plaintiffs are agreeable to that.

THE COURT:  All right.  And I would note that in your proposed schedule, you do indicate the -- for the first round, you say expert report for parties with burden of proof.  The deadline that I give you is for expert disclosures, including, but not limited to, the experts' reports.  So the prior testimony by the expert, the CV, et cetera.

Then with the June 3rd date for the rebuttal expert reports, you've proposed -- you've allowed just slightly over a month for the completion of expert discovery, which presumably by that you mean expert depositions.  If I give the parties until July 13th, is that sufficient time?

MS. GRANT:  Your Honor, Kyla Grant for Plaintiffs.  That's fine for us.

THE COURT:  And for Defendants as well?

MR. MCDONOUGH:  Kevin McDonough for Defendants.  Also fine with us, Your Honor.

THE COURT:  All right.  And Judge Brown requires that before moving for summary judgment the contemplated movant would have to write and request a pre-motion conference before him.  He's indicated to me that he is not waiving that requirement in this case.  So rather than giving you a schedule for summary judgment, I'm going to set a deadline for requesting a pre-motion conference before Judge

Brown.

His rules, if I recall correctly, he has a two-page limit, so we're really not talking about any substantial briefing of any of the issues.  I'll give the parties until July 19th to request a pre-motion conference before Judge Brown.

Are both sides contemplating motions for summary judgment?

MS. GRANT:  Your Honor, Kyla Grant for Plaintiff. I don't think we're certain of that at this point, but we may file one on certain issues.

THE COURT:  All right.  So I've now set a schedule for fact and expert discovery.  And it is, you know, based on everything that the parties have stated during this proceeding.  I would think that adding another layer with a motion for class certification is going to have you stretched thin.  Does anyone disagree with that?

MS. GRANT:  Your Honor, Kyla Grant for Plaintiffs. I would only say again that Plaintiffs are willing to file that motion sooner rather than late.  So if it would help to put it earlier in the schedule, depending on what Defendants would like to do, we would be willing to do that if that would alleviate some of the later dates in the schedule.

THE COURT:  Mr. McDonough?

MR. MCDONOUGH:  Yes, Your Honor.  We certainly

Opti-Script, Inc. | 800-494-7500
P.O. Box 77, Winfield, PA 17889
production@opti-script.com

would welcome an earlier motion filing as Ms. Grant suggested is possible.  We also contemplated some of our discovery having a dual purpose both for class certification and for development of the factual record.

And so I'm confident we could do both.  And it may be particularly useful if, for example, the Plaintiffs would propose a different class representative than the court-appointed lead plaintiffs, which would affect our fact discovery and class cert discovery.  So I think there may be benefits to doing both at the same time with an accelerated deadline for the filing of the class cert motion.

THE COURT:  Well, what I'm prepared to do -- I was just looking over Judge Brown's individual rules.  And it does appear that he requires a request for a pre-motion conference in connection with a Rule 23 motion since he doesn't carve out an exception for such motions.

And my recollection before was correct.  He asks for letters of no more than two pages briefly outlining the motion and requesting a pre-motion conference for those motions returnable before him other than certain carved out motions.

So since my last communication with him, he and I seem to be on the same page, that there was no reason to expedite a Rule 23 motion in this case.  I think the way we should leave it is to the extent that the Plaintiffs wish to

move for class certification before or at the same time as a motion for summary judgment, you should write to Judge Brown and request a pre-motion conference on such a motion.  And to the extent the Defendants want the Plaintiffs to be required to make their Rule 23 motion sooner rather than later, I guess you would then jointly file the request for a pre-motion conference.  So that will give him the opportunity to weigh in directly on this issue given the schedule that is going to be in place for discovery.

Are there any other dates or deadlines that any of you would like me to include in the court's minute entry?

All right.  Hearing nothing, let me go through some housekeeping matters with you.  As I said earlier, the minute entry of this proceeding will include the schedule that I've announced from the virtual bench.  If for any reason you need to modify any of these dates or deadlines, you do need leave of the Court for that.  My individual rules require that all such requests be made in writing in the form of a letter docketed as a motion event on ECF.

Anytime you're asking me to take any action on a submission, remember to use the motion event on ECF.  That activates an electronic tickler system, and it helps me and my chambers keep track of pending applications.  So when I use the term a letter motion, what I mean by that is it should be in letter form but use the motion event on ECF.

A letter motion requesting a scheduling modification should set forth what change or changes you need, the reason for the request, and whether it's on consent or not.  So speak with opposing counsel before you make your application for a scheduling modification.

Be sure to include in your application all deadlines or dates that are potentially impacted by the request for an extension.  For example, if you ask for additional time to complete substantial fact discovery but you don't address the fact discovery deadline, I don't want to have to guess as to whether or not you're asking for a corresponding adjournment.  If you're not, make that clear.  If you are, obviously you should make that clear.

Any discovery disputes that come up during the course of the case you should try to work out informally with opposing counsel before getting the court involved.  If you're unable to resolve a discovery dispute without the court's involvement and you want to get a ruling on a discovery dispute, make your application to me in the first instance rather than to Judge Brown.  My individual rules incorporate by reference Local Civil Rule 37.3(c).  Discovery disputes ordinarily should be addressed in letter motions and letter responses of up to three pages plus attachments.

Did someone just join us?  I guess that means that we lost someone.  But rather than go through the roll call

since we do have multiple counsel on both sides, I'm going to continue.  And whoever got cut off can catch up through his or her colleague.

I did want to talk with the parties about mediation because I believe you had indicated -- yes, on page 7 of docket entry number 75.  The parties are in agreement that any settlement discussion should be through private mediation.

Is that something that you're actively discussing now or that's just something -- a possibility in the future?

MS. GRANT:  Your Honor, this is Kyla Grant for Plaintiffs.  We are not actively discussing that now, but, yes, the possibility for the future.

MR. MCDONOUGH:  Kevin McDonough, Your Honor.  I agree with that completely.

THE COURT:  All right.  Well, if the parties do decide to go to private mediation, please alert the court because that might impact the schedule.  It might impact pending motions.  There's nothing more annoying for a judge than writing an opinion and having it almost ready to go and then the parties say, oh, we've been mediating this dispute and we're resolving the case.  So let me and Judge Brown know if you are going to private mediation by filing, you know, a status letter.

I do encourage the parties to have settlement

discussions early and often.  And if you do reach an agreement in principle to settle the case, please don't keep it a secret.  File a letter motion asking that the schedule be held in abeyance while you finalize the paperwork.

All right.  Is there anything else that any of you would like to discuss?

MS. GRANT:  No, Your Honor.

MR. MCDONOUGH:  No, Your Honor.

THE COURT:  All right.  In that case, I'm going to conclude this proceeding.  Everyone please take care and stay safe.  Goodbye.

(Proceedings adjourned at 12:45 pm)


TRANSCRIBER'S CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


October 27, 2021

*Carrie Clouse*

_____        _____

Carrie Clouse, CET-1207                                        DATE

Legal Transcriber

Opti-Script, Inc. | 800-494-7500
P.O. Box 77, Winfield, PA 17889
production@opti-script.com