**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF HOLLYWOOD POLICE OFFICERS' RETIREMENT SYSTEM and PEMBROKE PINES PENSION FUND FOR FIREFIGHTERS AND POLICE OFFICERS, Individually and On Behalf of All Others Similarly Situated, | No. 2:19-cv-5530 (GRB)(RLM) |
| Plaintiffs, | CLASS ACTION |
| v. | |
| HENRY SCHEIN, INC., COVETRUS, INC., STEVEN PALADINO, BENJAMIN SHAW, and CHRISTIME T. KOMOLA, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT; (II) CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS;
AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   HISTORY OF THE LITIGATION AND THE SETTLEMENT ...................................... 3

III.  TERMS OF THE SETTLEMENT ............................................................................ 5

IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL .............................. 5

      A.    Lead Plaintiffs and Lead Counsel Are Adequate Representatives ........................ 7

      B.    The Settlement is the Result of Good Faith, Arm's-Length Negotiations.............. 8

      C.    The Relief Obtained for the Settlement Class is Adequate................................... 9

            1.    Proceeding Through Trial and Appeal Would Carry Substantial
                  Costs and Risks and Would Significantly Delay Recovery........................ 9

            2.    Additional Factors Evidencing the Adequacy of the Settlement.............. 10

      D.    The Settlement is Within the Range of Reasonableness...................................... 12

V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED............................................. 14

      A.    The Requirements of Rule 23(a) Are Satisfied...................................................... 14

            1.    The Proposed Settlement Class Satisfies the Numerosity
                  Requirement............................................................................................ 14

            2.    The Proposed Settlement Class Shares Common Questions of Law
                  and Fact.................................................................................................. 15

            3.    Lead Plaintiffs' Claims are Typical of the Settlement Class ................... 15

            4.    Lead Plaintiffs Fairly and Adequately Represent the Interests of
                  the Settlement Class............................................................................... 16

            5.    The Proposed Settlement Class is Ascertainable ..................................... 17

      B.    The Requirements of Rule 23(b)(3) are Satisfied................................................. 18

VI.   NOTICE TO THE CLASS SHOULD BE APPROVED................................................. 19

VII.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................................. 20

VIII. CONCLUSION....................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................................... 14

*Balestra v. ATBCOIN LLC*,
  2022 WL 950953 (S.D.N.Y. Mar. 29, 2022) ............................................................. 12

*Burns v. FalconStor Software, Inc.*,
  2013 WL 12432583 (E.D.N.Y. Oct. 9, 2013) ...................................................... 16, 19

*City of Hollywood Police Officers' Ret. Sys. v. Henry Schein, Inc.*,
  552 F. Supp. 3d 406 (E.D.N.Y. 2021)...................................................................... 4, 9

*Dupler v. Costco Wholesale Corp.*,
  249 F.R.D. 29 (E.D.N.Y. 2008) ................................................................................ 15

*Guevora Fund Ltd. v. Sillerman*,
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019)........................................................... 13

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................................................... 13

*In re Barrick Gold Sec. Litig.*,
  314 F.R.D. 91 (S.D.N.Y. 2016)............................................................................ 15, 16

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011)........................................................... 13

*In re Facebook, Inc. IPO Sec. & Der. Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ............................................................ 11

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  312 F.R.D. 332 (S.D.N.Y. 2015)............................................................................... 18

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
  2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019)......................................................... 11

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015)............................................................................... 17

*In re NYSE Specialists Sec. Litig.*,
  260 F.R.D. 55 (S.D.N.Y. 2009)................................................................................. 19

ii

*In re PPDAI Grp. Inc. Sec. Litig.*,
  2022 WL 198491 (E.D.N.Y. Jan. 21, 2022)........................................................*passim*

*In re Sanofi-Aventis Sec. Litig.*,
  293 F.R.D. 449 (S.D.N.Y. 2013)................................................................ 15

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ............................................ 11

*In re Symbol Technologies Inc. Sec. Litig.*,
  2015 WL 3915477 (E.D.N.Y. June 25, 2015)............................................ 16

*In re Warner Chilcott Ltd. Sec. Litig.*,
  2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ........................................... 20

*In re Winstar Commc'ns Sec. Litig.*,
  290 F.R.D. 437 (S.D.N.Y. 2013)............................................................... 18

*Khoja v. Orexigen Therapeutics, Inc.*,
  2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ............................................. 8

*Kurtz v. Kimberly-Clark Corporation*,
  321 F.R.D. 482 (E.D.N.Y. 2017) ............................................................... 18

*Lea v. Tal Educ. Grp.*,
  2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ...................................... 10, 11

*Martinek v. AmTrust Fin. Servs., Inc.*,
  2022 WL 326320 (S.D.N.Y. Feb. 3, 2022) ................................................ 14

*McIntire v. China MediaExpress Holdings, Inc.*,
  38 F. Supp. 3d 415 (S.D.N.Y. 2014).......................................................... 15

*Mikhlin v. Oasmia Pharm. AB*,
  2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021)......................................... 6, 7, 8

*Plymouth County Retirement System v. Patterson Companies Inc.*,
  2020 WL 5757695 (D. Minn. Sept. 28, 2020) ........................................... 17

*Puglisi v. TD Bank, N.A.*,
  2015 WL 574280 (E.D.N.Y. Feb. 9, 2015).......................................... 3, 6, 8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)....................................................... 5, 7, 12, 20

**RULES**

Fed. R. Civ. P. 23 .............................................................................*passim*

iii

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995)........................................................................................... 17

Lead Plaintiffs[1] hereby move this Court, pursuant to Fed. R. Civ. P. 23, for an order: (i) preliminarily approving the proposed Settlement; (ii) certifying the proposed Settlement Class for settlement purposes; (iii) approving the form and manner of the settlement notices to members of the Settlement Class;[2] and (iv) scheduling a hearing (the "Settlement Hearing") on the final approval of the Settlement, the proposed Plan of Allocation, and Lead Plaintiffs' application for an award of attorneys' fees and reimbursement of Litigation Expenses.  The Parties' agreed-upon Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") is attached to the Stipulation filed herewith.

## I.    PRELIMINARY STATEMENT

Lead Plaintiffs and Defendants have negotiated, at arm's length and with the assistance of an experienced and neutral mediator, a proposed settlement of all claims in this Action for $35,000,000.00 in cash.  The Settlement represents an outstanding result that recovers for the Settlement Class 12% to 15% of their likely recoverable damages—up to 3 times the typical securities class action recovery, which between 2012 and 2021 was just 4.8% for settlements of Rule 10b-5 class actions with similar damages.  As discussed below, the Settlement easily satisfies each of the factors relevant on a motion for preliminary approval.

The Settlement is the result of nearly two-and-a-half years of intensive litigation that involved, among other things: (i) a thorough pre-filing investigation of the claims in this matter, which resulted in Lead Counsel initiating the Action on behalf of the Settlement Class; (ii)

---

[1] Lead Plaintiffs are City of Hollywood Police Officers' Retirement System ("Hollywood Police") and Pembroke Pines Pension Fund for Firefighters and Police Officers ("Pembroke F&P," and together with Hollywood Police, "Lead Plaintiffs" or "Plaintiffs").  Unless otherwise indicated, all capitalized terms have the meanings provided in the Stipulation and Agreement of Settlement ("Stipulation"), all citations to "¶" and "Ex." refer, respectively, to the Stipulation's paragraphs; all citations are omitted and all emphasis is added.

[2] As detailed more fully below, the "Settlement Class" consists of all persons and entities who or which purchased or otherwise acquired Covetrus common stock during the period from February 8, 2019 through August 12, 2019, inclusive, and who were allegedly damaged thereby.

1

interviewing at least 11 confidential witnesses who provided Plaintiffs with significant information concerning their claims; (iii) the filing of a detailed consolidated class action complaint; (iv) consultation with experts; (v) the filing of a detailed amended complaint upon discovery of critical new information; (vi) successfully opposing in part Defendants' motion to dismiss; (vii) engaging in extensive document discovery, including the review and analysis of nearly 400,000 pages of documents produced by Defendants and multiple third parties; (viii) submitting a detailed mediation statement setting forth Lead Plaintiffs' positions on highly disputed issues in the case; and (ix) preparing for and engaging in a formal day-long mediation involving rigorous and extensive negotiations before one of the most experienced securities class action mediators.

Plaintiffs have thus vigorously prosecuted this Action from its inception through resolution. Based upon their experience, evaluation of the facts and the applicable law, and their recognition of the substantial Settlement Amount, Plaintiffs respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

Moreover, the Settlement is particularly noteworthy when considering the substantial risks of either a reduced recovery or no recovery at all had the litigation continued, as Plaintiffs faced formidable defenses from Defendants regarding falsity, scienter and loss causation. Indeed, Defendants would have argued that Plaintiffs took Defendants' challenged statements out of context, that Defendants' statements were not in fact misleading, and that they, in fact, made explicit to the market that Covetrus' integration was not complete and carried ongoing risks. Defendants would have also argued that Plaintiffs failed to establish scienter, as Defendants had no knowledge of, or motive to commit, the alleged fraud. Defendants also would have argued that non-fraud-related factors, such as a sluggish animal health market and

2

reduced EBITDA guidance due to planned IT infrastructure spending, caused the decline in Covetrus' stock price, rather than disclosures relating to the allegedly false and misleading statements. Given these and other risks inherent in this complex securities class action, the Settlement represents an excellent result.

At this stage, the Court need only make a preliminary evaluation of the Settlement's fairness, such that the Settlement Class should be notified of the proposed Settlement. *See Puglisi v. TD Bank, N.A.*, 2015 WL 574280, at *2 (E.D.N.Y. Feb. 9, 2015) (Brown, J.) ("Preliminary approval, which is what Plaintiffs seek here, is the first step in the settlement process. It simply allows notice to issue to the class and for Class Members to object to or opt-out of the settlement."). Accordingly, Plaintiffs respectfully request that the Court enter the Parties' agreed upon Preliminary Approval Order, which will, among other things:

(i)    preliminarily approve the Settlement on the terms set forth in the Stipulation;

(ii)    certify the proposed Settlement Class;

(iii)    approve the form and content of the Notice and Summary Notice attached as Exhibits A-1 and A-3 to the proposed Preliminary Approval Order;

(iv)    find that the procedures for distribution of the Notice and publication of the Summary Notice constitute the best notice practicable under the circumstances, and comply with due process, Fed. R. Civ. P. 23, and the PSLRA; and

(v)    set a schedule and procedures for: (1) disseminating the Notice and publication of the Summary Notice; (2) requesting exclusion from the Settlement Class; (3) objecting to the Settlement, the Plan of Allocation, or the application for attorneys' fees and reimbursement of Litigation Expenses; (4) submitting papers in support of final approval of the Settlement; and (5) the Settlement Hearing.

## II.    HISTORY OF THE LITIGATION AND THE SETTLEMENT

On September 30, 2019, Hollywood Police initiated the Action. ECF No. 1. On December 23, 2019, the Court appointed Hollywood Police and Pembroke F&P as Lead Plaintiffs and approved Saxena White P.A. as Lead Counsel. ECF No. 22. Lead Plaintiffs filed

their Consolidated Complaint on February 21, 2020. ECF No. 23. Plaintiffs subsequently filed their Amended Complaint on May 21, 2020 (ECF No. 41), to incorporate allegations of additional facts and developments that occurred after Plaintiffs filed the Consolidated Complaint—specifically, alleged admissions by Covetrus's new CEO, Benjamin Wolin, that Covetrus had not been meaningfully integrated during the Class Period.

On October 21, 2020, (i) Henry Schein and Paladino, and (ii) Covetrus, Shaw, and Komola filed separate motions to dismiss the Amended Complaint. ECF Nos. 44-1 and 45-1. Plaintiffs' opposition and Defendants' replies were filed simultaneously with the motions to dismiss. *Id*. Among other things, these motions to dismiss argued that Lead Plaintiffs failed to adequately plead: (i) the existence of any materially misleading statement or omission; (ii) a strong inference of scienter; and (iii) loss causation. Then, on July 23, 2021, Plaintiffs submitted a False Statement Chart (ECF No. 59-1), which summarized and numbered the statements alleged as false in the Amended Complaint, for use at the hearing on the motions to dismiss, which the Court conducted on July 27, 2021.

On August 3, 2021, the Court issued an Order granting the motion to dismiss filed by Henry Schein and Paladino, and granting in part and denying in part the motion to dismiss filed by Covetrus, Shaw, and Komola. *See City of Hollywood Police Officers' Ret. Sys. v. Henry Schein, Inc.*, 552 F. Supp. 3d 406 (E.D.N.Y. 2021). The Court held that Plaintiffs had stated actionable claims for eight statements made by Shaw and one statement made by Covetrus in its 2018 Form 10-K, as well as actionable claims against Shaw under Section 20(a) of the Exchange Act. *See id.* The Court dismissed all other claims and all Dismissed Defendants.

From September 2021 through April 2022, counsel for Lead Plaintiffs and Defendants engaged in extensive fact discovery. Among other things, Plaintiffs served document requests

4

on Defendants and subpoenaed various third parties. Defendants produced more than 41,000 documents to Plaintiffs, comprising a total of nearly 400,000 pages. Defendants served document requests and interrogatories on Plaintiffs and subpoenaed Plaintiffs' investment advisors. Lead Plaintiffs and their investment advisors produced 215 documents in response, totaling over 8,700 pages. Defendants noticed the depositions of Lead Plaintiffs, and Plaintiffs noticed and began preparations for the depositions of nine current or former Covetrus employees.

On April 6, 2022, in response to the Court's order directing the Parties to advise the Court as to the status of private mediation, the Parties participated in a full-day mediation in New York City with Jed D. Melnick, Esq. of JAMS serving as mediator. In advance of the mediation, the Parties submitted and exchanged detailed mediation statements and exhibits, which addressed, among other things, issues related to liability, scienter, loss causation, and damages. On April 7, 2022, Mr. Melnick issued a mediator's proposal to the Parties to settle the Action for a cash payment of $35 million, which the Parties accepted on April 8, 2022. The Parties thereafter negotiated the full settlement terms set forth in the Stipulation.

## III.    TERMS OF THE SETTLEMENT

The proposed Settlement, which would resolve the Action in its entirety, provides that Defendants will pay or cause to be paid $35,000,000 into an escrow account for the benefit of the Settlement Class. The full terms and conditions of the Settlement are set forth in the Stipulation.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

In the Second Circuit, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (noting that "[t]he compromise of complex litigation is encouraged by the courts and favored by public policy"). This policy has even more force in complex class

actions such as this one, as "[s]ecurities class actions are inherently complex," and substantial judicial resources can be conserved by avoiding further formal litigation. *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *9 (E.D.N.Y. Jan. 21, 2022).

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements. The approval process occurs in two stages. First, district courts perform a preliminary review to determine if notice of the proposed settlement should be sent to the settlement class; second, after notice is provided and a hearing held, the Court determines whether to approve the settlement as "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Effective December 1, 2018, Rule 23(e)(1) was amended to, among other things, specify that the crux of a court's preliminary review is whether notice should be provided given the likelihood that the court will be able to finally approve the settlement and certify a settlement class.[3] As courts in this District explain, "[t]o grant preliminary approval, the court need only find that there is probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness." *Puglisi,* 2015 WL 574280, at *1. As summarized below, and as will be detailed further in a motion for final approval of the Settlement, the Settlement here easily satisfies all relevant factors.

---

[3] At final approval, the Court will be asked to review the factors identified by Rule 23(e)(2), including whether: (a) Plaintiffs and Lead Counsel adequately represented the Settlement Class; (b) the Settlement was negotiated at arm's-length; (c) the relief provided to the Settlement Class is adequate; and (d) the proposal treats Settlement Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2). Further, courts in this Circuit have traditionally considered several factors known as the "*Grinnell* factors": (1) the expense, complexity, and likely duration of the litigation; (2) the class's reaction to the settlement; (3) the stage of the proceedings and amount of discovery completed; (4) the risks of establishing damages; (5) the risks of establishing liability; (6) the risks of maintaining the class throughout the litigation; (7) defendants' ability to withstand greater judgment; (8) the range of reasonableness of the settlement amount considering the best possible recovery; and (9) the range of reasonableness of the settlement amount given the risks of litigation. *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *2 (E.D.N.Y. Jan. 6, 2021) ("The court understands the new Rule 23(e) factors to add to, rather than displace, *Grinnell* factors ... [and] considers both sets of factors ... in its analysis.").

### A.   Lead Plaintiffs and Lead Counsel Are Adequate Representatives

To determine the adequacy of Lead Plaintiffs' and Lead Counsel's representation, the Court weighs whether: "(1) plaintiff's interests are antagonistic to the interest[s] of other members of the class, and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Mikhlin*, 2021 WL 1259559, at *4. Here, Lead Plaintiffs have adequately represented the Settlement Class. Having incurred substantial injury as a result of Defendants' alleged conduct, Lead Plaintiffs "ha[ve] an interest in vigorously pursuing the claims of the class." *Id.* Further, because Lead Plaintiffs' interests do not conflict with those of the Settlement Class, and Lead Plaintiffs seek to recover against Defendants on their own behalf and on behalf of the Settlement Class, the Court "has no reason to doubt the compatibility of the class representatives' and putative class members' interests." *Id.*

In addition, Lead Counsel possesses the requisite experience and qualifications to professionally and effectively conduct this Action. As the Court noted when appointing Lead Counsel, "Saxena White has substantial experience litigating securities fraud class actions." ECF No. 22 at 14. The Court has also noted that several other courts have concluded that Lead Counsel is qualified to litigate securities law cases in a leadership role. *Id*. at 14-15. The results of Lead Counsel's efforts in this Action, including overcoming Defendants' motions to dismiss, obtaining extensive discovery from Defendants and third parties, and vigorously negotiating the proposed Settlement, provide further confirmation of Lead Counsel's adequacy, thereby satisfying Rule 23(e)(2)(A). Accordingly, Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class.

7

**B.      The Settlement is the Result of Good Faith, Arm's-Length Negotiations**

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel. *Wal-Mart*, 396 F.3d at 116 (stating that a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery").

As described above, the Settlement here was reached only after protracted, arm's-length negotiations before Jed D. Melnick, Esq., of JAMS, "an experienced, neutral mediator." *Khoja v. Orexigen Therapeutics, Inc.,* 2021 WL 5632673, at *4 (S.D. Cal. Nov. 30, 2021); *see also Puglisi*, 2015 WL 574280, at *2 (participation of experienced mediator "reinforces the non-collusive nature of the settlement."). As part of those negotiations, Lead Counsel and Defendants' counsel prepared and presented detailed submissions concerning, among other things, their respective views regarding the merits of the litigation, Defendants' defenses, and significant issues pertaining to falsity, scienter, loss causation, and damages. After intensive back-and-forth negotiations, and in response to a mediator's proposal issued by Mr. Melnick, the Parties reached an agreement in principle to settle the Action. Lead Plaintiffs and Lead Counsel had an adequate basis for assessing the strength of the Settlement Class's claims and Defendants' defenses thereto when they agreed to the Settlement. Under these circumstances, the Settlement is entitled to a presumption of fairness. *See Mikhlin*, 2021 WL 1259559, at *5 ("A class action reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation is entitled to a presumption of fairness.").

C.      **The Relief Obtained for the Settlement Class is Adequate**

1.      **Proceeding Through Trial and Appeal Would Carry Substantial Costs and Risks and Would Significantly Delay Recovery**

"As a general rule, securities class actions are notably difficult and notoriously uncertain to litigate." *PPDAI*, 2022 WL 198491, at *9. This Action is no exception. If the Parties did not agree to settle, Lead Plaintiffs and members of the Settlement Class would incur substantial expenses while facing significant risks inherent in class action litigation. To obtain relief for the Settlement Class absent a negotiated settlement, Plaintiffs would have to prevail at class certification, successfully oppose any *Daubert* challenges to exclude experts' testimony and opinions, successfully oppose summary judgment, prevail at trial, and successfully litigate any appeals. The Settlement Class would also incur additional expenses related to experts retained by Lead Counsel necessary to properly prosecute this case—i.e. expert reports and rebuttals, as well as preparation for and appearances at expert depositions and trial testimony. An unfavorable outcome at *any of those stages* could significantly diminish damages or preclude Settlement Class Members from recovering at all if this Action were to continue.

Although Plaintiffs believe the case against Defendants is strong, Defendants nonetheless made credible arguments concerning falsity, scienter, loss causation, and damages. Indeed, the Court found Plaintiffs had only "narrowly" survived Defendants' motion to dismiss. *City of Hollywood Police Officers' Ret. Sys.*, 552 F. Supp. 3d at 417. Moreover, Defendant Shaw would have argued that he lacked any motive to deceive the investing public, as he did not sell shares of Covetrus stock during the Settlement Class Period. With respect to loss causation and damages, Defendants would have argued that Plaintiffs' losses could not be attributed to the alleged fraud. *See PPDAI*, 2022 WL 198491, at *11 ("Establishing loss causation in securities cases is a complicated concept, both factually and legally, and typically involve[s] conflicting expert

9

opinion about the difference between the purchase price and the stock's true value absent the alleged fraud."). While Lead Plaintiffs believe they had credible responses to defeat those arguments, there is no question these issues would persist throughout the Action, representing real risks that Lead Plaintiffs could ultimately recover materially less than the Settlement Amount – or nothing at all. *See id.* ("If there is anything in the world that is uncertain when a [securities] case like this one is taken to trial, it is what the jury will come up with as a number for damages"). Thus, the "risk of maintaining a class throughout this long and protracted litigation weighs in favor of settlement approval." *See id.*

### 2. Additional Factors Evidencing the Adequacy of the Settlement

Rule 23(e)(2) also instructs federal district courts to consider whether "the relief provided for the class is adequate, taking into account," among other things, "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorneys' fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors also supports preliminary approval here.

First, the proposed Settlement is adequate because it provides a proposed Plan of Allocation containing a fair and reasonable method for distributing the proceeds of the Net Settlement Fund to Authorized Claimants on a pro rata basis based upon their recognized claim compared to the total recognized claims of all Authorized Claimants. *See* Ex. A-1 at 14. The Plan of Allocation was developed in consultation with Plaintiffs' damages expert and treats all Settlement Class Members equitably. "This methodology is appropriate and consistent with many other securities class action settlements' plans of allocation, and treats class members equitably relative to each other." *PPDAI*, 2022 WL 198491, at *13.

10

In addition, the proposed Settlement provides for well-established procedures for processing claims of the Settlement Class and seeks to appoint A.B. Data, a well-respected and experienced claims administrator, as Claims Administrator for the Settlement. *See e.g. Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *11 (S.D.N.Y. Nov. 30, 2021) (A.B. Data appointed as Claims Administrator); *PPDAI*, 2022 WL 198491, at *13 (same). As set forth in the Stipulation, A.B. Data will process the claims of the Settlement Class under Lead Counsel's guidance, allow claimants the opportunity to cure any deficiencies in their claims or seek Court review, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation) after Court approval. This method is standard in securities class settlements and has long been found to be effective. *See, e.g., In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020) (finding similar proposals to be "well-established, effective methods that have been widely used in securities class-action litigation").

Second, as disclosed in the Notice, Lead Counsel will be applying for a percentage of the common fund in an amount not to exceed 33⅓% to compensate them for the services they rendered on behalf of the Settlement Class. Here, a proposed attorneys' fee of 33⅓% is adequate and reasonable in light of the extensive litigation efforts of Plaintiffs' Counsel and the notable results obtained for the proposed Settlement Class. Importantly, this fee percentage is well within the range of percentage-based fees that are regularly awarded by courts in this District and Circuit in connection with settlements of federal class actions, and particularly complex federal securities class actions such as this Action. *See, e.g., Lea,* 2021 WL 5578665, at *12 ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *In re J.P. Morgan Stable Value Fund ERISA Litig.,* 2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) (one-third fee awarded for a $75 million settlement); *In re Facebook,*

11

*Inc. IPO Sec. & Der. Litig.,* 2015 WL 6971424, at *11 (S.D.N.Y. Nov. 9, 2015) (one-third fee awarded for $26.5 million settlement was "well within the range of reasonableness" in light of "similar awards in this Circuit" for action that settled during appeal of motion to dismiss order).

Third, the Parties have no side agreements other than a standard, confidential Supplemental Agreement, which provides that if the number of shares held by Settlement Class Members who opt out of the Settlement equals or exceeds a certain amount, Defendants will have the option to terminate the Settlement. *See* ¶39; *PPDAI,* 2022 WL 198491, at *13 ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.  Accordingly, the Court finds that the supplemental agreement does not pose an impediment to approval of the settlement agreement.").[4]  Therefore, consideration of these adequacy factors also shows that preliminary approval should be granted.

### D.    The Settlement is Within the Range of Reasonableness

Two of the three *Grinnell* factors that are not already addressed by the Rule 23(e)(2) factors—(i) the range of reasonableness in light of the best possible recovery and (ii) the range of reasonableness to a possible recovery in light of all the attendant risks of litigation—are frequently combined when courts engage in this analysis.  *See PPDAI,* 2022 WL 198491, at *12.[5]  When determining whether a settlement amount falls within a range of reasonableness, the Court must find the range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Wal-Mart*, 396 F.3d at 119; *see also Balestra v. ATBCOIN LLC*, 2022 WL 950953,

---

[4] *See also id.* (noting that such agreements are kept confidential "to avoid creating incentives for a small group of investors to opt out solely to leverage the threshold to exact an individual settlement.").

[5] The other *Grinnell* factor—Defendants' ability to withstand a greater judgment—is of limited relevance here, as Defendants' ability to pay a larger settlement amount does not, on its own, indicate that the settlement is unfair.  *See PPDAI,* 2022 WL 198491, at *12 ("Although the Court finds that this factor weighs against a grant of final approval, it does not necessarily preclude a finding that the settlement is fair.").

at *3 (S.D.N.Y. Mar. 29, 2022) ("In reviewing a proposed class action settlement, I must "balance[ ] the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation, and I do so here with the understanding that [s]ecurities class actions present hurdles to proving liability that are particularly difficult for plaintiffs to meet.").

As noted above, Defendants argued that additional information was disclosed on August 12, 2019, which caused at least part of the stock price decline included in Lead Plaintiffs' damages estimates. As such, Plaintiffs recognize that there was a risk that the Court at summary judgment or the jury at trial could have agreed with Defendants, thereby dramatically reducing or eliminating damages altogether. Thus, even if successful at trial, Plaintiffs believe that the likely maximum recoverable damages that could be established ranged from $241 million to $298 million. Accordingly, the recovery here—12% to 15% of the estimated maximum damages—is an outstanding result and far exceeds the typical recovery of 4.8% damages in comparable securities class actions.[6] *See also In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting an average recovery rate of 3% to 7% of maximum damages in securities class actions).

Given the complexities of the Action and the continued risks if the Parties were to proceed to trial, the Settlement represents a more than reasonable resolution of this Action and eliminates the risk that the Settlement Class might not otherwise recover from Defendants. The proposed Settlement will allow for a substantial "payment to the [Settlement] Class now, rather than a speculative payment potentially many years down the road." *See Guevora Fund Ltd. v.*

---

[6] *See* Cornerstone Research, Securities Class Actions and Settlements (2021 Review and Analysis) at 7, *available at* https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf (median recovery of 4.8% of "simplified tiered damages" for Rule 10b-5 Class Actions).

*Sillerman*, 2019 WL 6889901, at *10 (S.D.N.Y. Dec. 18, 2019); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (immediate, substantial, and concrete benefit of settlement outweighs the possibility of higher recovery at trial).

## V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Lead Plaintiffs respectfully request that the Court also certify the Settlement Class under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class, to which the Parties have stipulated, consists of all persons and entities who or which purchased or otherwise acquired Covetrus common stock during the period from February 8, 2019 through August 12, 2019, inclusive, and who were allegedly damaged thereby.[7]

### A.    The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) requires parties seeking class certification to demonstrate that the proposed class meets the following prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a); *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997). Here, the proposed Class readily satisfies each Rule 23(a) prerequisite.

#### 1.    The Proposed Settlement Class Satisfies the Numerosity Requirement

"Courts in this Circuit presume numerosity at 40 putative class members." *Martinek v. AmTrust Fin. Servs., Inc.*, 2022 WL 326320, at *5 (S.D.N.Y. Feb. 3, 2022). In securities class actions, numerosity is satisfied where a large number of publicly owned, exchange-listed shares were outstanding and traded during the class period. *PPDAI,* 2022 WL 198491, at *6. Shares of

---

[7] Excluded from the Settlement Class are (1) Defendants and Dismissed Defendants; (2) the Officers or directors of Covetrus or Henry Schein at all relevant times; (3) members of the Immediate Family of each person noted above; (4) the legal representatives, heirs, agents, affiliates, successors or assigns of any such excluded party; (5) Defendants' and Dismissed Defendants' liability insurance carriers and any affiliates or subsidiaries thereof; (6) any entity in which Defendants and Dismissed Defendants or their Immediate Families have or had a controlling interest; and (7) the legal representatives, agents, affiliates, heirs, beneficiaries, successors-in-interest, or assigns of any excluded person or entity, in their respective capacity as such, or members of the Immediate Family of any excluded person. Also excluded from the Settlement Class are any persons or entities who or which exclude themselves by validly and timely submitting a request for exclusion that is accepted by the Court. ¶1(ss).

Covetrus common stock are listed on the Nasdaq exchange and, during the Settlement Class Period, averaged daily trading volumes of more than 1.5 million shares.  Accordingly, the Settlement Class satisfies the numerosity requirement of Rule 23(a)(1).

### 2. The Proposed Settlement Class Shares Common Questions of Law and Fact

Establishing commonality under Rule 23(a)(2) is a "low hurdle."  *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 424 (S.D.N.Y. 2014).  Even a "single common issue of law" is sufficient to satisfy the requirements of Rule 23(a)(2).  *See Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008).  Commonality is easily established in securities fraud class actions like this one where "Lead Plaintiffs claim that the same [] misleading statements caused injury to all holders of [Covetrus common stock] by artificially inflating [its] price."  *In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449, 454 (S.D.N.Y. 2013) (noting that "[s]uch a common course of conduct is routinely used to satisfy the commonality requirement.").

Accordingly, Plaintiffs have satisfied the commonality requirement of Rule 23(a)(2).

### 3. Lead Plaintiffs' Claims are Typical of the Settlement Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims and defenses of the class."  Fed. R. Civ. P. 23(a)(3).

As with commonality, "typicality is established because all class members' claims arise from the same course of events and involve similar arguments on liability."  *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 103 (S.D.N.Y. 2016).  Specifically, Lead Plaintiffs' claims are typical of the claims of the Settlement Class because they all arise from Defendants' false and misleading statements and omissions regarding the integration of HSAH and VFC into Covetrus. Lead Plaintiffs, "like other members of the proposed [Settlement] Class, claim[] to have

purchased shares of [Covetrus] common stock during the Class Period based on the false and misleading statements of the defendants," and claim to have been damaged when the truth emerged. *Burns v. FalconStor Software, Inc.*, 2013 WL 12432583, at \*3 (E.D.N.Y. Oct. 9, 2013). Further, there are no unique defenses that threaten to become the focus of the litigation. Rule 23(a)(3)'s typicality requirement is therefore satisfied.

### 4.    Lead Plaintiffs Fairly and Adequately Represent the Interests of the Settlement Class

The purpose of the adequacy inquiry under Rule 23(a)(4) is to determine whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Symbol Technologies Inc. Sec. Litig.*, 2015 WL 3915477, at \*5 (E.D.N.Y. June 25, 2015).

As discussed above, here, there is no evidence of any conflict—let alone a disqualifying one—between Lead Plaintiffs and the Settlement Class. Rather, "Lead [P]laintiffs are institutional shareholders whose interests are aligned with those of the [Settlement] Class." *Barrick Gold Sec. Litig.*, 314 F.R.D. at 104. Indeed, as public pension funds with substantial assets under management and significant financial interests in the litigation, Lead Plaintiffs are precisely the type of institutional investors that Congress sought to ensure are given a leadership role in securities class actions when enacting the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733; *see also In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 237 (S.D.N.Y. 2015) (lead plaintiffs were "institutional investor[s] of the type unequivocally preferred as lead plaintiff by the [PSLRA]."). Further, Lead Plaintiffs have robustly demonstrated their adequacy by, among other things, actively seeking appointment as Lead Plaintiffs, conducting an extensive investigation of their claims, filing the highly detailed Amended Complaint, defeating Defendants' motion to dismiss, vigorously pursuing fact

discovery and responding to Defendants' discovery requests.  In short, Lead Plaintiffs have and will continue to vigorously prosecute the claims of other Settlement Class Members.

Moreover, Lead Plaintiffs are also adequate because they have selected counsel with considerable experience in securities class actions and complex litigation to represent the Settlement Class.  Indeed, as demonstrated by its extensive experience in prosecuting and resolving complex securities class actions throughout the country, Saxena White is well-qualified to prosecute this action on behalf of Plaintiffs and the Settlement Class.  *See Plymouth County Retirement System v. Patterson Companies Inc*., 2020 WL 5757695, at *8 (D. Minn. Sept. 28, 2020) (finding Saxena White "highly qualified" and "experienced in leading large securities class actions … hav[ing] obtained substantial recoveries for plaintiffs").  As Court-appointed Lead Counsel, Saxena White also has demonstrated its willingness to commit substantial time and resources to representing the Settlement Class, including by preparing the detailed Complaint that was sufficient to withstand Defendants' motion to dismiss; pursuing extensive discovery from Defendants and third parties; retaining an expert in market efficiency, damages, and loss causation; and assembling a qualified team of attorneys and staff to prosecute the claims in this Action on behalf of Plaintiffs and the Settlement Class.  Accordingly, the adequacy of Lead Plaintiffs to represent the Settlement Class is established.

### 5.    The Proposed Settlement Class is Ascertainable

"For a class to be ascertainable in the Second Circuit, the class definition must, first, be based on objective criteria and, second, be administratively feasible such that class members can be identified without conducting a mini-hearing on the merits of each case." *Kurtz v. Kimberly-Clark Corporation*, 321 F.R.D. 482, 538 (E.D.N.Y. 2017); *see also, In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 353 (S.D.N.Y. 2015) ("The standard for

17

ascertainability is not demanding.  It is designed only to prevent the certification of a class whose membership is truly indeterminable.").

Here, the requirement is easily met, as the proposed Settlement Class—all persons or entities who purchased or otherwise acquired the common stock of Covetrus from February 8, 2019 through August 12, 2019, and were allegedly damaged thereby—is readily identifiable. *See In re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 443 n.6 (S.D.N.Y. 2013) (finding ascertainability was "easily met in the context of securities litigation where the list of shareholders is readily obtainable"). Accordingly, the proposed Settlement Class is ascertainable.

### B.       The Requirements of Rule 23(b)(3) are Satisfied

This Action also satisfies the requirements of Rule 23(b)(3), namely, that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

As elaborated above, here there are numerous common questions of law and fact, including whether Defendants' statements were false or misleading, whether Defendants acted with the requisite scienter, and whether, and to what extent, Settlement Class Members suffered damages arising from the alleged fraud. Thus, the predominance requirement is easily satisfied here. *See, e.g. Burns*, 2013 WL 12432583, at *5 ("in securities fraud class actions, the predominance of class issues is readily met").

Further, "[c]ourts have long recognized that [c]lass actions are a particularly appropriate and desirable means to resolve claims based on the securities laws." *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 80 (S.D.N.Y. 2009) (finding superiority requirement met, among other reasons, because class members would be cost prohibited from maintaining individual actions,

18

and lack of reason to expect difficulties managing the class).  As a result, certifying this Action as a class action is superior to other available methods for litigating and resolving the Settlement Class Members' claims.  Accordingly, for these reasons, among others, Plaintiffs' request to certify the Settlement Class for settlement purposes also should be granted in all respects.

## VI.   NOTICE TO THE CLASS SHOULD BE APPROVED

Lead Plaintiffs will notify members of the Settlement Class by mailing the Notice and Claim Form to all members of the Settlement Class who can be identified with reasonable effort, including through the cooperation of Covetrus.  The Notice will advise the members of the Settlement Class of (i) the terms of the Settlement; and (ii) information regarding Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses.  The Notice also will provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for requesting exclusion from the Settlement, or objecting to the Settlement, the proposed Plan of Allocation, or the application for attorneys' fees and expenses.

In addition to mailing the Notice and Claim Form, Lead Plaintiffs will cause publication of the Summary Notice once in *Investor's Business Daily* and to be transmitted once over the *PR Newswire*.  Also, as set forth in the Settlement Class Action Fairness Act of 2005 ("CAFA"), Defendants will timely serve CAFA notices to appropriate federal and state officials within ten (10) days of the filing of the Stipulation.

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA.  In short, the Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114. The manner of providing notice, which includes individual notice by mail to all members of the

Settlement Class who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies all applicable requirements. *See In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

## VII.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Pursuant to the schedule agreed-upon by the Parties set forth in the Stipulation and the Preliminary Approval Order, Lead Plaintiffs respectfully propose the following schedule:

| Event | Proposed Due Date |
|---|---|
| Deadline for mailing the Notice and Claim Form to the Settlement Class (which date shall be the "Notice Date") (Preliminary Approval Order ¶7(b)) | 21 calendar days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶7(d)) | 7 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶26) | 35 calendar days prior to Settlement Hearing |
| Deadline for receipt of objections (Preliminary Approval Order ¶16) | 21 calendar days prior to Settlement Hearing |
| Settlement Hearing (Preliminary Approval Order ¶5) | Not earlier than 100 calendar days after the filing of this Motion |
| Deadline for filing reply papers (Preliminary Approval Order ¶26) | 7 calendar days prior to Settlement Hearing |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶10) | 120 calendar days after the Notice Date |

## VIII.   CONCLUSION

Lead Plaintiffs respectfully request that the Court (1) preliminarily approve the proposed Settlement; (ii) certify the Settlement Class for settlement purposes; (iii) approve the proposed form and manner of notice given to the Settlement Class; and (iv) schedule a hearing on Lead Plaintiffs' motion for final approval of the Settlement and Lead Counsel's application for an award of attorneys' fees and Litigation Expenses. The Parties' agreed-upon form of proposed Preliminary Approval Order, and exhibits thereto, is attached as Exhibit A to the Stipulation.

Dated: May 9, 2022

Respectfully submitted,

By: */s/ Lester R. Hooker*

**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White, III
Lester R. Hooker
7777 Glades Rd., Suite 300
Boca Raton, FL 33434
Tel: (561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

**SAXENA WHITE P.A.**
Steven B. Singer
Kyla Grant
Joshua H. Saltzman
10 Bank Street, Suite 882
White Plains, NY 10606
Tel: (914) 437-8551
Fax: (888) 216-2220
ssinger@saxenawhite.com
kgrant@saxenawhite.com
jsaltzman@saxenawhite.com

*Lead Counsel for Lead Plaintiffs and the Settlement Class*

**KLAUSNER KAUFMAN JENSEN & LEVINSON**
Robert D. Klausner
7080 Northwest 4th Street
Plantation, Florida 33317
Tel: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com

*Additional Counsel for Lead Plaintiffs*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on May 9, 2022, on all counsel or parties of record. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

*/s/ Lester R. Hooker*
Lester R. Hooker
