**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CITY OF HOLLYWOOD POLICE OFFICERS' RETIREMENT SYSTEM and PEMBROKE PINES PENSION FUND FOR FIREFIGHTERS AND POLICE OFFICERS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>HENRY SCHEIN, INC., COVETRUS, INC., STEVEN PALADINO, BENJAMIN SHAW, and CHRISTINE T. KOMOLA,<br><br>Defendants. | No. 2:19-cv-5530 (GRB)(RLM)<br><br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF**
**LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 4

III.  THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL .......................... 4

      A.    The Standards for Final Approval of Class Action Settlements ............................. 4

      B.    The Proposed Settlement Is Procedurally Fair ........................................................ 5

            1.    The Settlement Class is Adequately Represented, and in the
                  Judgment of All Parties, the Settlement is Fair, Reasonable and
                  Adequate ...................................................................................................... 5

            2.    The Settlement is the Result of Good Faith, Arm's-Length
                  Negotiations with the Assistance of an Experienced Mediator .................. 8

      C.    The Relief Obtained for the Settlement Class is Adequate Taking into
            Account the Costs, Risks, and Delay of Trial and Appeal ...................................... 9

            1.    The Complexity, Expense, and Likely Duration of the Litigation,
                  and the Stage of the Litigation, Supports Final Approval of the
                  Settlement ................................................................................................... 9

            2.    The Positive Reaction of the Class to Date Favors Final Approval ......... 10

            3.    The Risks of Establishing Liability and Damages Support
                  Approval of the Settlement ...................................................................... 11

            4.    The Risk of Maintaining the Class Action Through Trial Supports
                  Final Approval .......................................................................................... 13

            5.    Defendants' Ability to Withstand a Greater Judgment ............................ 14

            6.    The Range of Reasonableness of the Settlement Fund in Light of
                  the Best Possible Recovery and All the Attendant Risks of
                  Litigation Support Final Approval ........................................................... 14

      D.    All Other Factors Set Forth in Rule 23(e)(2)(c) Support Final Approval ............. 15

      E.    The Settlement Treats Class Members Equitably Relative to Each Other ........... 17

IV.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE ........... 17

V.    THE NOTICE OF PROPOSED SETTLEMENT SATISFIES RULE 23 AND DUE
      PROCESS REQUIREMENTS AND IS REASONABLE ............................................ 18

i

VI.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................................ 20

VII.    CONCLUSION .................................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Bloom v. Anderson*,
2020 WL 6710429 (S.D. Ohio Nov. 16, 2020) ................................................................. 7

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d. Cir. 1974) ......................................................................................... 5

*City of Hollywood Police Officers' Ret. Sys. v. Henry Schein, Inc.*,
2019 WL 13167890 (E.D.N.Y. Dec. 23, 2019) ............................................................. 7

*City of Hollywood Police Officers' Ret. Sys. v. Henry Schein, Inc.*,
552 F. Supp. 3d 406 (E.D.N.Y. 2021) ................................................................. 2, 11, 12

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................................................................. 13

*Fosbre v. Las Vegas Sands Corp.*,
2017 WL 55878 (D. Nev. Jan. 3, 2017) ....................................................................... 12

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .................................................. 8, 10, 14

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, &*
*Prods. Liability Litig.*,
2019 WL 2554232 (N.D. Cal. May 3, 2019) ................................................................. 5

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) ........................................................................... 12

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................. 13, 14

*In re HD Supply Holdings, Inc. Sec. Litig.*,
2020 WL 8572953 (N.D. Ga. July 21, 2020) ............................................................ 6, 7

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ............................................................... 9

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) ............................................................. 16

*In re Perrigo Co. PLC Sec. Litig.*,
2022 WL 500913 (S.D.N.Y. Feb. 18, 2022) ........................................................... 7, 17

*In re Retek Inc. Sec. Litig.*,
  621 F. Supp. 2d 690 (D. Minn. 2009) .................................................................... 12

*In re Signet Jewelers Ltd. Sec. Litig.,*
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ................................................... *passim*

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ........................................................... 6

*In re Wilmington Tr. Sec. Litig.*,
  2018 WL 6046452 (D. Del. Nov. 19, 2018) ............................................................. 7

*Khoja v. Orexigen Therapeutics, Inc.*,
  2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ......................................................... 8

*Kochilas v. Nat'l Merch. Servs., Inc.*,
  2015 WL 5821631 (E.D.N.Y. Oct. 2, 2015) ............................................................ 4

*Lea v. Tal Education Group*,
  2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ................................................... *passim*

*Mikhlin v. Oasmia Pharm. AB*,
  2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ..................................................... *passim*

*Nichols v. Noom, Inc.*,
  2022 WL 2705354 (S.D.N.Y. July 12, 2022) .................................... 5, 11, 14, 16

*Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*,
  2021 WL 2981970 (D. Colo. July 15, 2021) ........................................................... 7

*Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*,
  2021 WL 1659848 (E.D. Va. Apr. 23, 2021) .......................................................... 7

*Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.,*
  2022 WL 2111237 (D. Minn. June 10, 2022) ......................................................... 7

*Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*,
  2022 WL 2093054 (D. Minn. June 10, 2022) ......................................................... 7

*Schwartz v. Urb. Outfitters, Inc.*,
  2016 WL 7626720 (E.D. Pa. Oct. 31, 2016) ........................................................... 9

*Toure v. Amerigroup Corp.*,
  2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) .................................................... *passim*

*Vaccaro v. New Source Energy Partners L.P.,*
  2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ................................................. 15, 18

**RULES**

Fed. R. Civ. P. 23(e) ................................................................................................... *passim*

Lead Plaintiffs hereby respectfully move this Court pursuant to Rule 23 of the Federal Rules of Civil Procedure for entry of orders granting final approval of the Settlement and the Plan of Allocation as fair, reasonable, and adequate.[1]

## I.     **PRELIMINARY STATEMENT**

The proposed Settlement provides for a cash payment of $35 million to resolve the Action—an excellent result for the Settlement Class in a highly complex, uncertain, and risky case. Final approval of the Settlement as fair, reasonable, and adequate is particularly appropriate given the following notable factors:

The Outstanding Result: The Settlement ties for the *second largest* securities fraud class action recovery in the Eastern District of New York in the last decade and is among the *top ten largest* such recoveries *ever* in this District. Significantly, the Settlement also recovers approximately 15% of the Settlement Class's likely maximum recoverable damages—a highly meaningful recovery that is roughly *three times greater* than the median settlement in similarly sized cases nationally.

The Unique Risks and Difficulties of this Action: The Settlement is particularly impressive given the fact that Plaintiffs faced a very substantial risk of no recovery at all. Indeed, Lead Plaintiffs and Lead Counsel achieved this outstanding result despite there being no governmental investigation or short-seller report upon which to "piggyback" their claims, and at the lead plaintiff stage, no other institutional investor sought leadership appointment—a fact that

---

[1] Unless otherwise indicated, all capitalized terms used herein shall have the meanings provided in the Amended Stipulation and Agreement of Settlement ("Settlement Agreement" or "Stipulation"), dated June 17, 2022 (ECF No. 91-1) or in the accompanying Declaration of Lester R. Hooker in Support of (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Hooker Declaration" or "Hooker Decl.") filed concurrently herewith. All citations to "¶" or to "Ex." refer to paragraphs in or exhibits to the Hooker Declaration; all citations are omitted; and all emphasis is added.

further demonstrates the inherent risks of this litigation.  Further, at the pleading stage, the Court sustained claims only against the Company and its former CEO; dismissed 17 of the 26 statements that Plaintiffs alleged were materially false and misleading; stated that Plaintiffs had "narrowly" cleared the pleading hurdle for the sustained statements; and noted that it might "well reconsider this determination at a later juncture," signifying a serious risk of dismissal at summary judgment.  *City of Hollywood Police Officers' Ret. Sys. v. Henry Schein, Inc.*, 552 F. Supp. 3d 406, 417 (E.D.N.Y. 2021) (Brown, J.).

Moreover, as this Action proceeded, Defendants undoubtedly would have continued to advance credible arguments on the key issues of falsity, scienter, loss causation, and damages. For example, Defendants argued that the market clearly understood from Defendants' statements that integration at Covetrus was an ongoing effort, and that the record was devoid of any evidence showing that Defendant Shaw (the sole remaining Individual Defendant) or other senior personnel had knowledge or information contradicting the challenged statements.  Regarding loss causation and damages, Defendants would have argued that the alleged corrective disclosure at the end of the Class Period had nothing to do with the status of Covetrus' integration, but instead was due to disappointing financial results and reduced guidance announced that day.  In other words, Defendants claimed that the release was not "corrective" of any information in the challenged statements.  Adverse determinations on any one of these issues could have severely limited, or eliminated altogether, the Settlement Class's recovery.  The Settlement avoids these risks while securing an extremely substantial $35 million recovery for the Settlement Class.

Extensive Litigation Efforts Over Two-and-a-Half Years: In the face of the considerable challenges described above and as detailed in the Hooker Declaration (*see* ¶¶21-50), Lead Plaintiffs vigorously prosecuted this Action from the outset, and this Settlement would not have

2

been possible without their efforts.   Indeed, Plaintiffs' litigation efforts were extensive, including: (i) conducting an extensive and comprehensive investigation into Plaintiffs' claims, which included identifying and contacting numerous high-ranking former employees who provided Plaintiffs with meaningful information concerning their claims; (ii) the filing of a detailed consolidated complaint; (iii) consultation with experts; (iv) the filing of an amended complaint incorporating critical new information; (v) successfully opposing in part Defendants' motion to dismiss; (vi) engaging in extensive document discovery, including the review and analysis of nearly 400,000 pages of documents produced by Defendants and third parties; (vii) preparing for fact and expert depositions; and (viii) preparing class certification-related briefing. Through these efforts, Plaintiffs developed a deep understanding of the strengths and weaknesses of their claims.

Arm's-Length Settlement Negotiations: The Settlement is the product of the Parties' extensive arm's-length negotiations, which included submitting detailed mediation statements and preparing for and attending a formal day-long mediation session involving rigorous and extensive negotiations before Jed D. Melnick, Esq., a renowned mediator who has successfully resolved numerous complex class actions with an aggregate value in the billions of dollars.

The Endorsement of the Settlement Class: The Settlement has the full support of the court-appointed Lead Plaintiffs—highly sophisticated institutional investors of the exact type that Congress envisioned leading securities class actions, and who were involved throughout the litigation and settlement negotiations.  Further, while the deadline for exclusions and objections has not yet passed, not a single exclusion request or objection has been received.

In light of the considerations discussed herein, Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, satisfies the standards of Rule 23 and the Second

3

Circuit, and provides a significant recovery for the Settlement Class.  Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement and deem the Plan of Allocation, set forth in the Court-approved Notice, to be a fair and reasonable method for distributing the Net Settlement Fund to eligible Settlement Class Members.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Plaintiffs respectfully refer the Court to the accompanying Hooker Declaration for a detailed discussion of the factual background and procedural history of the Action, the extensive efforts undertaken by Plaintiffs and their counsel, and the factors bearing on the approval of the Settlement and Plan of Allocation.  *See generally*, Hooker Decl.

## III.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A.   The Standards for Final Approval of Class Action Settlements

"In the Second Circuit, [t]here is a strong judicial policy in favor of settlements, particularly in the class action context." *Lea v. Tal Education Group*, 2021 WL 5578665, at *4 (S.D.N.Y. Nov. 30, 2021) (Parker, J.); *see also Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *3 (E.D.N.Y. Oct. 2, 2015) (Bloom, J.) (same). Federal courts "have long recognized that [because securities class actions are] notably difficult and notoriously uncertain," they "readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Signet Jewelers Ltd. Sec. Litig.,* 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) (McMahon, C.J.).  Pursuant to Rule 23(e)(2), a class action settlement should be approved if the Court finds it "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

4

agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

In the Second Circuit, courts have also traditionally considered the following "*Grinnell* factors,*" which overlap with the Rule 23(e)(2) factors, in evaluating a class action settlement:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Toure v. Amerigroup Corp.*, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (Mann, J.) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d. Cir. 1974)). "[N]ot every factor must weigh in favor of [the] settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *Lea*, 2021 WL 5578665, at *8.[2]

As discussed herein, and as supported by the declarations submitted herewith, an analysis of the relevant factors unequivocally supports final approval of the Settlement.[3]

## B. The Proposed Settlement Is Procedurally Fair

### 1. The Settlement Class is Adequately Represented, and in the Judgment of All Parties, the Settlement is Fair, Reasonable and Adequate

In determining whether class representatives and class counsel have adequately represented the class" under Rule 23(e)(2), courts consider "whether (1) plaintiff's interests are antagonistic to the interest[s] of other members of the class and (2) plaintiff's attorneys are

---

[2] As the Advisory Committee Notes to the 2018 amendments to Rule 23 indicate, the goal was "'not to displace' any of the *Grinnell* factors." *Nichols v. Noom, Inc.*, 2022 WL 2705354, at *7 (S.D.N.Y. July 12, 2022) (Parker, J.); *see also Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *3 (E.D.N.Y. Jan. 6, 2021) (Garaufis, J.) ("The court understands the new Rule 23(e) factors to add to, rather than displace, *Grinnell* factors ... [and] considers both sets of factors").

[3] Little has changed since preliminary approval, favoring final approval. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liability Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now").

5

qualified, experienced and able to conduct the litigation." *Oasmia*, 2021 WL 1259559, at *4.

Here, "Lead Plaintiff[s] and Lead Counsel have adequately represented the [Settlement] Class in their prosecution of the Action for over two and a half years and in the negotiation and achievement of the Settlement." *Signet*, 2020 WL 4196468, at *2.[4]  Plaintiffs and the Class have no antagonistic interests; rather, Plaintiffs' interest in obtaining the largest possible recovery in this Action was firmly aligned with all Settlement Class Members.  *See* ECF No. 88 at 16-17; *Signet*, 2020 WL 4196468, at *2 ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict").  Lead Plaintiffs are institutional investors of the type favored by Congress when passing the PSLRA and have adequately represented the Settlement Class by closely monitoring and participating in this litigation from the outset.

Indeed, Hollywood Police initiated this Action by filing the initial complaint; Lead Plaintiffs actively supervised Lead Counsel throughout the litigation; Lead Plaintiffs took an active role in pursuing discovery and discussions about the claims and strategies of this Action; and Lead Plaintiffs also played an important role in settlement negotiations, including by closely evaluating the proposed Settlement and recommending that it be approved.[5]  Thus, Lead Plaintiffs' endorsement of the Settlement weighs heavily in favor of final approval.  *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) (McMahon, J.) ("[A] settlement reached [] under the supervision and with the endorsement of a sophisticated institutional investor [] is entitled to an even greater presumption of reasonableness").[6]

---

[4] On July 15, 2022, the Court so-ordered the proposed Preliminary Approval Order, certifying the Settlement Class and providing that "Lead Plaintiffs and Lead Counsel have and will fairly and adequately represent and protect the interests of the Settlement Class" and "Lead Plaintiffs are adequate class representatives."  *See* ECF No. 91-3 at 3-4.

[5] *See* Declarations of David Williams and Rachel Maldonado attached to the Hooker Decl. as Exhibits A and B, at ¶¶ 3-11, respectively.

[6] Lead Plaintiffs have significant experience in obtaining large settlements on behalf of classes of investors.  *See In re HD Supply Holdings, Inc. Sec. Litig.*, 2020 WL 8572953, at **1-2 (N.D. Ga. July 21, 2020) ($50 million

In addition, "Lead Counsel's conclusion that the Settlement is in the best interests of the [Settlement] Class also supports approval." *Signet*, 2020 WL 4196468, at *4. As set forth in its firm resume (*see* Ex. 3 to Ex. E), Court-appointed Lead Counsel Saxena White is highly experienced in securities litigation and has a long and successful track record of representing investors in such cases.[7] As this Court recognized when previously determining Lead Counsel's adequacy: "Saxena White [] is experienced, competent, and well-qualified to conduct the class action securities litigation at hand." *City of Hollywood Police Officers Ret. Sys. v. Henry Schein, Inc.*, 2019 WL 13167890, at *6 (E.D.N.Y. Dec. 23, 2019) (Mann, J.). Moreover, Saxena White has been recognized not only for its major litigation successes in shareholder representative litigation, but also because it is a "federally-certified, minority- and women-owned firm"—the only such firm representing institutional investors in the securities class action litigation industry. *Bloom v. Anderson*, 2020 WL 6710429, at *9 (S.D. Ohio Nov. 16, 2020) (finding Saxena White, with attorneys consisting of "women and lawyers of color at above-average ratios," as "best suited" to represent "a large and heterogeneous group of investors").

Furthermore, Lead Counsel vigorously prosecuted the Class's claims for nearly three years, expending significant resources and devoting over 10,800 hours, and over $5.7 million in

---

settlement where Hollywood Police and Pembroke Pines F&P, "sophisticated institutional investors that actively supervised the Action," served as Lead Plaintiffs); *Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.,* 2022 WL 2111237, at *2 (D. Minn. June 10, 2022) ($63 million settlement where Pembroke Pines F&P served as Co-Lead Plaintiff and Court found "Lead Plaintiffs and Lead Plaintiffs' Counsel have adequately represented the Class").

[7] *See e.g., In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *8 (D. Del. Nov. 19, 2018) (approving $210 million settlement, noting Saxena White is "highly experienced" and that "the significant amount of recovery in the settlement agreements attests to their efficiency"); *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, 2021 WL 2981970, at **2-4 (D. Colo. July 15, 2021) ($135 million recovery where court recognized the "efforts expended by [Saxena White]"); *Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*, 2022 WL 2093054, at *2 (D. Minn. June 10, 2022) (approving $63 million settlement and noting that Saxena White "conducted the Litigation and achieved the Settlement with skill, perseverance, and diligent advocacy"); *HD Supply*, 2020 WL 8572953, at *2 (same, $50 million recovery); *In re Perrigo Co. PLC Sec. Litig.*, 2022 WL 500913, at **1-2 (S.D.N.Y. Feb. 18, 2022) (same, $31.9 million recovery); *Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*, 2021 WL 1659848, at *5 (E.D. Va. Apr. 23, 2021) (same, $25 million recovery).

7

staff time, to the prosecution of the Action on a contingency fee basis, resulting in the second largest all-cash securities class action settlement in this District in the past decade. ¶¶4, 57. The results of Lead Counsel's efforts in this Action further "support the conclusion that the settlement process was procedurally fair." *Lea*, 2021 WL 5578665, at *8.

> **2.     The Settlement is the Result of Good Faith, Arm's-Length Negotiations with the Assistance of an Experienced Mediator**

Rule 23(e)(2)(B) requires procedural fairness, which is evidenced by arm's length negotiations. Indeed, in the Second Circuit, courts have recognized a "presumption of fairness" when a settlement is the result of arm's-length negotiations between "experienced, capable counsel knowledgeable in complex class litigation." *Oasmia*, 2021 WL 1259559, at *5; *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) (McMahon, C.J.) (same).

Here, the Settlement was reached only after vigorous, arm's-length negotiations between experienced, fully-informed counsel. ¶51. The Settlement negotiations included an intensive mediation process, including the Parties' detailed written submissions and presentations addressing hotly contested issues concerning liability and damages. Significantly, these negotiations were overseen by Jed D. Melnick, Esq., of JAMS, an "experienced, neutral mediator" who has mediated over one thousand disputes with an aggregate value in the billions of dollars. *See Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *4 (S.D. Cal. Nov. 30, 2021); *see also* Mr. Melnick's biography, available at https://www.jamsadr.com/melnick/.

In support of the Settlement, Mr. Melnick has provided a declaration attesting that "the Settlement is the product of true arm's-length negotiation by counsel on both sides seeking to represent their respective clients' best interests"; "the Settlement is the direct result of all counsel's experience, reputation, and ability in these types of complex class actions"; that "it is

my opinion that the Settlement is fair and reasonable"; and "I [] strongly support approval of the Settlement in all respects."  *See* Ex. C, at ¶¶7, 8, 10, 11; *see also Schwartz v. Urb. Outfitters, Inc*., 2016 WL 7626720, at *3 (E.D. Pa. Oct. 31, 2016) (approving settlement reached "as a result of intensive, arms-length negotiations, including mediation managed by Jed Melnick, Esq.").  The Settlement negotiations before Mr. Melnick thus further support approval.

### C.    The Relief Obtained for the Settlement Class is Adequate Taking into Account the Costs, Risks, and Delay of Trial and Appeal

#### 1.    The Complexity, Expense, and Likely Duration of the Litigation, and the Stage of the Litigation, Supports Final Approval of the Settlement

"The first and third *Grinnell* factors – which evaluate the complexity, expense, and likely duration of the litigation, and the stage of the proceedings and the amount of discovery completed – favor approval of [this] [S]ettlement." *Lea*, 2021 WL 5578665, at *9.  "Class action suits have a well-deserved reputation as being most complex, and securities class actions are notably difficult and notoriously uncertain to litigate." *Id.*  Those complexities and uncertainties were particularly pronounced in this case, as exemplified by the fact that Lead Plaintiffs and "Lead Counsel did not have the benefit of a 'road map' established by a government investigation off which they could 'piggy back', but instead independently developed factual allegations and legal theories to survive the PSLRA's heightened pleading standards." *See In Re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) (McMahon, J.).

Certainly, the cost and duration of continued litigation would be considerable.  This case has already been pending for almost three years.  Lead Plaintiffs and Lead Counsel had already "conducted an extensive factual investigation of Lead Plaintiff[s'] claims, had extensive consultations with their economics, financial and damages consultants and experts, conducted discovery, and had discussions between the parties regarding their respective positions, theories,

9

claims, defenses and responses to those claims and defenses throughout the litigation, including during the mediation[].” *Guevoura*, 2019 WL 6889901, at *6.  Moreover, absent the proposed Settlement, Plaintiffs would have to prevail at class certification, succeed at summary judgment, engage in pre-trial motion practice, succeed at trial, and successfully litigate the inevitable appeals, all before any class members *might* recover an award.  Indeed, “[s]imply completing the pre-trial proceedings would have involved considerable additional discovery; taking dozens of depositions; defense of the depositions; preparation of complex expert reports and discovery of the expert witnesses; the negotiation and completion of a complex and voluminous pre-trial order; and extensive briefing on motions for summary judgment, motions to strike experts and other motions *in limine* ….” *Id.* at *7.  An unfavorable outcome at ***any of those stages*** could diminish or eliminate altogether any potential recovery for Settlement Class Members.  By contrast, the Settlement provides an immediate recovery of $35 million for the Settlement Class.

In other words, the Settlement brings to a close litigation that could have lasted several more years and incurred additional costs—including the expenses of vendors and experts, Defendants’ Counsel’s fees, and the value of Lead Counsel’s billed time—which could very easily have exceeded several millions of dollars.  *See Amerigroup*, 2012 WL 3240461, at *3 (approval warranted where “[l]itigation through trial would be complex, expensive, and long”).

### 2. The Positive Reaction of the Class to Date Favors Final Approval

“The fact that the vast majority of class members neither objected nor opted out is a strong indication” of fairness.  *Amerigroup*, 2012 WL 3240461, at *3.  Therefore, here, the second *Grinnell* factor weighs in favor of final approval.

Pursuant to the Preliminary Approval Order, any Settlement Class Member who wishes to be excluded from the Settlement or to object to any aspect of the Settlement, the Plan of Allocation, or to the attorneys’ fees and expense request, is required to submit such exclusion

10

request or objection no later than October 4, 2022.[8]  ECF No. 91-3 at ¶¶13-19.  While this deadline has not passed, to date, no Settlement Class Member has objected to any aspect of the Settlement, and out of the 54,467 Notice Packets (consisting of the Notice and Claim Form) that have been mailed to potential Settlement Class Members, A.B. Data received no valid requests for exclusion from the Settlement Class.  *See* Ex. D at ¶¶14-15.  This reaction is particularly significant given that approximately 88% of the Settlement Class consists of sophisticated institutional investors with the resources and motivation to object, if warranted.  *See* ¶19; *Signet*, 2020 WL 4196468, at *6 ("absence of objections by these sophisticated class members is further evidence of the fairness of the settlement").  Thus, the overwhelmingly positive reaction of the Settlement Class to the Settlement further favors approval by the Court.

### 3.  The Risks of Establishing Liability and Damages Support Approval of the Settlement

*Grinnell* factors four and five—the risks of establishing liability and damages—also favor approval of the Settlement.  "In considering these factors, the Court need not adjudicate the disputed issues or decide unsettled questions; rather, 'the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'"  *Noom*, 2022 WL 2705354, at *9.  As detailed in the Hooker Declaration (¶¶8-10), while Plaintiffs believe that their claims have merit, Defendants lodged multiple credible defenses, each of which presented grave risks and easily could have resulted in either a substantially lower recovery or no recovery at all.

Establishing liability here was particularly risky as Plaintiffs "narrowly overc[a]me [Defendants'] motion to dismiss." *Henry Schein*, 552 F. Supp. 3d at 412.  For example, in its

---

[8] As provided in the Preliminary Approval Order, Lead Plaintiffs will file reply papers no later than October 18, 2022, addressing any objections and requests for exclusion that may be received after this brief is filed.

order on Defendants' motion to dismiss, the Court: (i) sustained only nine out of the twenty-seven alleged misstatements; (ii) dismissed claims against all but two named defendants; (iii) did not explicitly refute Defendants' loss causation arguments; and (iv) implied that the remaining claims could be narrowed or dismissed "at a later juncture." *See id.* at 415-18. At class certification and summary judgment, Defendants would have continued to present credible arguments as to falsity, materiality, scienter, loss causation and damages. Plaintiffs would be required to prove all elements of their claims, while Defendants need only succeed on one defense to potentially defeat the entire Action.[9]

For example, regarding falsity, Defendants would have contended that the sustained statements concerning Covetrus' integration were not false, that they were purportedly supported by evidence produced in discovery, and that Defendants made clear that the integration was still a work in progress. *See* ECF No. 45-1 at 20-23; *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 841-42 (E.D. Va. 2016) ("plaintiffs would [] need to prove that the statements made were in fact false . . . Even with a strong case, the plaintiffs nonetheless face a large risk before a jury"). "Even more difficult, the plaintiffs would need to prove that these statements were made with scienter, and were not simple good faith mistakes or the result of negligence." *Id.* at 841; *see Lea*, 2021 WL 5578665, at *9 ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim"). Defendants would have argued that they specifically warned investors that Covetrus' integration was not complete, and that Defendant Shaw, the sole remaining Individual Defendant, did not have motive to mislead investors as he did not make any stock sales during the Class Period, thus directly undercutting any attempt to

---

[9] *See e.g., In re Retek Inc. Sec. Litig.*, 621 F. Supp. 2d 690, 708-09 (D. Minn. 2009) (granting summary judgment where plaintiffs failed to present evidence of loss causation); *Fosbre v. Las Vegas Sands Corp.*, 2017 WL 55878, at *28 (D. Nev. Jan. 3, 2017) (granting summary judgment due to, *inter alia,* lack of falsity and scienter).

prove scienter. *See* ECF No. 45-1 at 37; *Genworth*, 210 F. Supp. 3d at 844 ("For the reasons stated above concerning the complexity of securities fraud cases and the need to prove scienter on the part of the defendants, the risk of non-recovery at trial is very real").

Additionally, Defendants would have argued that Plaintiffs have no credible theory of loss causation because there was a mismatch between the statements Plaintiffs allege are false—which concerned Covetrus' ongoing integration—and the news that coincided with the end of the Class Period stock price decline—which pertained to disappointing financial results and guidance and made no mention of integration failures. *See* ECF No. 45-1 at 47-49. Furthermore, "[e]ven if [P]laintiffs had overcome these obstacles and established liability, proof of substantial damages was not a foregone conclusion." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (Engelmayer, J.). Indeed, Defendants would have claimed that the alleged corrective disclosure was caused by various market and other non-fraud related factors, and thus investors' damages, if any, could not be attributed to the alleged fraud. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *7 (S.D.N.Y. May 9, 2014) (McMahon, J.).

While Plaintiffs believe they had credible responses to Defendants' arguments, there is no question these issues would persist throughout the Action, representing real risks that Plaintiffs could ultimately recover materially less than the Settlement Amount—or nothing at all. *See Amerigroup*, 2012 WL 3240461, at *4 ("Here, the fact-intensive nature of Plaintiffs' claims and Defendants' affirmative defenses presents risk. The settlement eliminates this uncertainty.").

### 4. The Risk of Maintaining the Class Action Through Trial Supports Final Approval

Regarding the sixth *Grinnell* factor, "[c]ourts generally acknowledge that a contested motion to certify a class would pose at least some increased risk that class certification might be

13

denied." *See Oasmia*, 2021 WL 1259559, at *6.  While Defendants do not oppose conditional class certification for purposes of the Settlement, they likely would have opposed certification outside of the settlement context and may have mounted winning arguments against Plaintiffs. *See id.* ("this factor ... weighs in favor[] of settlement w[h]ere it is likely that defendants would oppose class certification if the case were to be litigated"). Thus, "[t]he risks attendant to certifying a class and defending any decertification motion, coupled with the potential of an interlocutory appeal, supports approval of the [S]ettlement." *Noom*, 2022 WL 2705354, at *9.

### 5.    Defendants' Ability to Withstand a Greater Judgment

The seventh *Grinnell* factor also favors approval.  Were this case to proceed through class certification, summary judgment and trial, there is no guarantee that there would be funds in Defendants' insurance policy to cover a settlement.  *See Guevoura Fund*, 2019 WL 6889901, at *9 ("Here, the D&O insurance coverage is a wasting asset as it pays legal fees of the [] Defendants, as well as providing coverage for the claims asserted in the Action"; "each day that the Action was not settled would take away money available for the Class for settlement"). Moreover, even if Defendants "could withstand a greater judgment, [their] ability to do so, standing alone, 'does not suggest that the settlement is unfair.'"  *Noom*, 2022 WL 2705354, at *10; *see also Giant,* 279 F.R.D. at 162 (holding that a "defendant is not required to 'empty its coffers' before a settlement can be found adequate").

### 6.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation Support Final Approval

In analyzing these *Grinnell* factors, the issue is not whether the settlement represents the best possible recovery, but whether "in light of the strengths and weaknesses of the case" it "falls within a range of reasonableness." *See Giant*, 279 F.R.D. at 162; *see also Amerigroup*, 2012 WL 3240461, at *4 (range of reasonableness "recognizes the uncertainties of law and fact in any

14

particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.").

Here, the "substantial amount of the [S]ettlement weights in favor of final approval." *Id.* The $35,000,000 Settlement Amount ties for the second largest securities fraud class action recovery in the Eastern District of New York in the last decade, and is among the top ten such recoveries in the history of this District.[10]  ¶¶4, 57.  The proposed Settlement Amount represents approximately 15% of Plaintiffs' likely maximum recoverable damages of $241 million, as calculated by Plaintiffs' expert.  Accordingly, the recovery here is an outstanding result and by far exceeds the typical recovery of 4.8% of damages in securities class action settlements.[11]  *See, e.g.*, *Vaccaro v. New Source Energy Partners L.P.,* 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (Wood, J.) (recovery "represent[ing] 6.5% of the maximum recoverable damages [] is reasonable and in line with other settlements in securities class actions"); *Lea,* 2021 WL 5578665, at *10 (approving settlement representing 5.3% of the maximum estimated damages).

In light of these significant risks, Plaintiffs have concluded that the Settlement provides an immediate and substantial benefit that outweighs the benefits of continued litigation.

### D.      All Other Factors Set Forth in Rule 23(e)(2)(c) Support Final Approval

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate considering "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  These factors also favor approval.

---

[10] *See* Cornerstone Research, Securities Class Actions and Settlements (2021 Review and Analysis) at 7, *available at* https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf  (median 10b-5 recovery from 2012 to 2021 was $7.9 million).

[11] *See id*. (median recovery of 4.8% of "simplified tiered damages" for Rule 10b-5 Class Actions).

15

*First*, the procedures for processing Settlement Class Members' claims and distributing the proceeds of the Settlement to eligible claimants in this case are well-established, effective methods that have been widely used in securities class action litigation. As set forth in the Notice approved by the Court at the preliminary approval stage, under the proposed Plan of Allocation described further below, the proceeds of the Settlement will be distributed on a *pro rata* basis to Settlement Class Members who submit eligible Claim Forms with required documentation to the Court-appointed Claims Administrator, A.B. Data, Ltd. ("A.B. Data"). *See* ECF No. 91-4 at 14; *Oasmia*, 2021 WL 1259559, at *6 ("This allocation plan appears to be rational and fair, as it treats class members equitably, considering the magnitude of injury").  A.B Data "will review and process the Claims under the supervision of Lead Counsel; provide Claimants with an opportunity to cure any deficiencies in their Claims or request review of the denial of their Claim by the Court; and then mail or wire claimants their *pro rata* share of the Net Settlement Fund upon approval of the Court." *Signet*, 2020 WL 4196468, at *13; *see e.g.,* Stipulation at ¶¶22, 28.

*Second,* the terms of the proposed award of attorneys' fees are discussed in the accompanying Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses and supporting documentation (the "Fee Motion").  Lead Plaintiffs have applied for a fee to Lead Counsel of one-third of the Settlement Fund to compensate them for the services they rendered on behalf of the Settlement Class.  As set forth in detail in the Fee Motion, such a fee is highly reasonable in light of the work performed and the results obtained and is comparable to other settlements in complex class actions approved in the Second Circuit and nationwide. *See, e.g.*, *Noom,* 2022 WL 2705354, at *10 (awarding fee of one-third of $56 million settlement fund, finding "[a] fee equal to one-third of a settlement fund is routinely approved in this Circuit"); *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2019 WL 4734396, at *6 (S.D.N.Y. Sept. 23,

16

2019) (Broderick, J.) (one-third fee awarded for a $75 million settlement); *Perrigo*, 2022 WL 500913, at \*1 (one-third fee awarded in $31.9 million PSLRA recovery).

*Third*, the Parties have no side agreements other than a standard, confidential Supplemental Agreement, which provides that if the number of shares held by Settlement Class Members who opt out of the Settlement equals or exceeds a certain amount, Defendants will have the option to terminate the Settlement. *See* ¶55; *Signet*, 2020 WL 4196468, at \*13 ("This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement"). To date, no shareholders have opted out of the Settlement.

### E.   The Settlement Treats Class Members Equitably Relative to Each Other

As discussed below, pursuant to the Plan of Allocation, eligible claimants approved for payment by the Court will receive their *pro rata* share of the recovery based on their purchases or acquisitions of Covetrus common stock during the Settlement Class Period. Plaintiffs will receive the same level of *pro rata* recovery as all other Settlement Class Members.[12]

Each of the above factors fully supports a finding that the Settlement is fair, reasonable, and adequate, and therefore deserves this Court's final approval.

### IV.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized — namely, it must be fair and adequate.... [a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Lea*, 2021 WL 5578665, at \*11. The Plan of Allocation, which is set forth in the Notice disseminated to the Settlement Class, also warrants the Court's approval.

---

[12] Plaintiffs have separately moved for modest representative reimbursements to compensate them for their time expended on this Action, pursuant to the PSLRA. The Settlement is in no way contingent upon whether any such awards are granted.

Here, Plaintiffs developed the proposed Plan of Allocation in consultation with their damages expert after careful consideration of their theories of liability and alleged damages under the Exchange Act. ¶¶67-70. In developing the Plan, Plaintiffs' expert calculated the estimated amount of artificial inflation in the price of Covetrus' common stock during the Settlement Class Period by considering how the stock price changed after the alleged corrective disclosure and adjusting for price changes that were attributable to market or industry forces. *See* ECF No. 91-4 at ¶51.

Under the Plan of Allocation, a Recognized Loss Amount will be calculated for each purchase or acquisition of Covetrus common stock by an eligible Settlement Class Member in order to derive the amount of each Authorized Claimant's Recognized Claim, and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *See e.g.,* Notice at ¶¶54-55, 62-67. Courts routinely approve substantially similar methods of distributing recoveries in securities class actions such as this one, and Plaintiffs respectfully submit that this Court should approve the Plan of Allocation submitted here. *See e.g., Vaccaro,* 2017 WL 6398636, at *6 (approving similar plan of allocation); *Signet*, 2020 WL 4196468, at *14 (same).

## V.  THE NOTICE OF PROPOSED SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS AND IS REASONABLE

The substance of the Notice and the method of its dissemination to potential members of the Settlement Class satisfy all applicable standards. Notice to the Settlement Class satisfies the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Additionally, the Notice also satisfies Rule 23(e)(1), which requires that notice of a settlement be "reasonable"—i.e., it must "fairly apprise

18

the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Signet*, 2020 WL 4196468, at \*14.

Indeed, here, the Court-approved Notice includes all the information required by Rule 23(c)(2)(B) and the PSLRA in plain language, including: (i) an explanation of the Action and the claims asserted; (ii) the definition of the Settlement Class; (iii) the Settlement Amount; (iv) a description of the Plan of Allocation; (v) an explanation of the reasons why the Parties are proposing the Settlement; (vi) a statement indicating the attorneys' fees and expenses that will be sought and the firms that will share in such an award; and (vii) a description of Settlement Class Members' legal rights and options, including how to submit a claim, object to the settlement, exclude oneself from the Action, and attend the Settlement Hearing, as well as the consequences of pursuing or declining to pursue each option. *See Oasmia*, 2021 WL 1259559, at \*12.

Pursuant to the Preliminary Approval Order, A.B. Data began mailing copies of the Notice Packet to potential Settlement Class Members and their nominees on August 5, 2022. *See* Ex. D at ¶¶4-5. As of September 19, 2022, a total of 54,467 Notice Packets had been mailed. *Id*. at ¶10. A.B. Data also caused the Summary Notice to be published in *Investor's Business Daily* and transmitted over the *PR Newswire* on or about August 8, 2022. *Id*. at ¶11. Copies of the Notice, Claim Form, Stipulation, Preliminary Approval Order, and Complaint were made available on the Settlement website maintained by A.B. Data. *Id*. at ¶12. This "combination of individual mail to all [Settlement] Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire, and set forth on internet websites, was 'the best notice ... practicable under the circumstances.'" *See Signet*, 2020 WL 4196468, at \*14.

## VI.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Preliminary Approval Order conditionally certified the Settlement Class for purposes of the Settlement.  *See* ECF No. 91-3 at ¶¶1-3 ("the Court finds that each element required for certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met").  Nothing has occurred since then to cast doubt on the propriety of class certification for settlement purposes, and no objections to certification have been received. For all the reasons stated in the Preliminary Approval Order and Plaintiffs' unopposed motion for preliminary approval of the Settlement (ECF Nos. 87, 88), Plaintiffs respectfully request that the Court grant final certification to the Settlement Class under Rules 23(a) and (b)(3).

## VII.   CONCLUSION

Based on all of the foregoing reasons, and the declarations submitted herewith, Lead Plaintiffs respectfully request that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate.

Dated: September 20, 2022                    Respectfully submitted,

                                             */s/ Lester R. Hooker*

                                             **SAXENA WHITE P.A.**
                                             Maya Saxena
                                             Joseph E. White, III
                                             Lester R. Hooker
                                             7777 Glades Road, Suite 300
                                             Boca Raton, FL 33434
                                             Tel: (561) 394-3399
                                             Fax: (561) 394-3382
                                             msaxena@saxenawhite.com
                                             jwhite@saxenawhite.com
                                             lhooker@saxenawhite.com

                                             **SAXENA WHITE P.A.**
                                             Steven B. Singer
                                             Kyla Grant
                                             Joshua H. Saltzman

10 Bank Street, Suite 882
White Plains, NY 10606
Tel: (914) 437-8551
Fax: (888) 216-2220
ssinger@saxenawhite.com
kgrant@saxenawhite.com
jsaltzman@saxenawhite.com

**SAXENA WHITE P.A.**
David R. Kaplan
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Tel.: (858) 997-0860
Fax: (858) 369-0096
dkaplan@saxenawhite.com

*Lead Counsel for Lead Plaintiffs and the Settlement Class*

**KLAUSNER KAUFMAN JENSEN & LEVINSON**
Robert D. Klausner
7800 Northwest 4th Street
Plantation, FL 33317
Tel: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com

*Additional Counsel for Lead Plaintiffs*

21

## CERTIFICATE OF SERVICE

I, Lester R. Hooker, hereby certify that on September 20, 2022, I caused a true and correct copy of the foregoing to be served on all parties of record by filing through CM/ECF.

/s/ Lester R. Hooker
Lester R. Hooker