**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF HOLLYWOOD POLICE OFFICERS' RETIREMENT SYSTEM and PEMBROKE PINES PENSION FUND FOR FIREFIGHTERS AND POLICE OFFICERS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>HENRY SCHEIN, INC., COVETRUS, INC., STEVEN PALADINO, BENJAMIN SHAW, and CHRISTINE T. KOMOLA,<br><br>Defendants. | No. 2:19-cv-5530 (GRB)(RLM)<br><br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND**
**REIMBURSEMENT OF LITIGATION EXPENSES**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   ARGUMENT ......................................................................................................... 5

       A.    The Second Circuit Has a Longstanding Preference for the Percentage of
             the Fund Method of Awarding Attorneys' Fees in Common Fund Cases.............. 5

       B.    The *Goldberger* Factors Support the Reasonableness of the Fee Request ............. 6

             1.    The Significant Time and Labor Expended Support the Fee
                   Request.............................................................................................. 6

             2.    The Magnitude and Complexity of the Case Support the Fee
                   Request.............................................................................................. 8

             3.    The Extreme Risk of the Litigation—the "Most Important"
                   Factor—Weighs Heavily in Favor of the Fee Request .............................. 9

             4.    The High Quality of Representation and the Outstanding Results
                   Achieved Weigh Heavily in Favor of the Fee Request........................... 13

             5.    The Requested Fee Fully Comports with the Second Circuit's
                   Standards and Awards in Similar Settlements ......................................... 14

             6.    Public Policy Considerations Support the Fee Request........................... 18

       C.    Lead Plaintiffs' Endorsement of, and the Class's Reaction to, the Fee
             Request Further Support Its Reasonableness ....................................................... 18

       D.    Lead Counsel's Litigation Expenses, and Lead Plaintiffs' Reimbursement
             Awards Are Reasonable and Should Be Granted ................................................. 19

III.  CONCLUSION.................................................................................................... 20

i

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ................................................................................ 12

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980).................................................................................................. 5

*City of Hollywood Police Officers' Ret. Sys., et al. v. Henry Schein, Inc., et al.*,
552 F. Supp. 3d 406 (E.D.N.Y. 2021) ................................................................. 8, 10

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......................................... 5, 11, 12, 16

*City Pension Fund for Firefighters & Police Officers in City of Miami Beach v. Aracruz Celulose, S.A.*,
2013 WL 12489095 (S.D. Fla. July 17, 2013)......................................................... 15

*Cosby v. KMPG, LLP*,
2022 WL 4129703 (E.D. Tenn. July 12, 2022) ....................................................... 15

*Fosbre v. Las Vegas Sands Corp.*,
2017 WL 55878 (D. Nev. Jan. 3, 2017).................................................................... 11

*Goldberger v. Integrated Res. Inc.*,
209 F.3d 43 (2d Cir. 2000)......................................................................................... 6

*Grae v. Corrections Corp. of America*,
2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021) ....................................................... 15

*Guevoura Fund Ltd. v. Sillerman, et al.*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ................................................. *passim*

*Haddock v. Nationwide Life Ins. Co.*,
2015 WL 13942222 (D. Conn. Apr. 9, 2015)........................................................... 15

*Hawaii Struct. Ironworkers Pen. Tr. Fund v. AMC Enter. Holds., Inc.*,
2022 WL 4136175 (S.D.N.Y. Feb. 14, 2022)........................................................... 16

*In re Akazoo S.A. Sec. Litig.*,
2021 WL 4316717 (E.D.N.Y. Sept. 9, 2019) .......................................................... 17

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .......................................................... 12

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
  2022 WL 3220783 (S.D.N.Y Aug. 5, 2022) ................................................................ 4, 5, 15

*In re Cnova N.V. Sec. Litig.*,
  2017 WL 11697887 (S.D.N.Y. Dec. 22, 2017) ...................................................................... 17

*In re Cnova N.V. Sec. Litig.*,
  2018 WL 11447878 (S.D.N.Y. Mar. 20, 2018) ................................................................. 14, 16

*In re Deutsche Bank AG Sec. Litig.*,
  2020 WL 3162980 (S.D.N.Y. June 11, 2020) ................................................................... 16, 17

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) .......................................................................... 16

*In re Gen. Instr. Sec. Litig.*,
  209 F. Supp. 2d 423 (E.D. Pa. 2001) ................................................................................... 15

*In re Genworth Fin. Sec. Litig*,
  210 F. Supp. 3d 837 (E.D. Va. 2016) ................................................................................... 11

*In re Giant Interactive Group, Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ....................................................................... 5, 8, 16, 19

*In re Henry Schein, Inc. Derivative Litig.*,
  2020 WL 13548663 (E.D.N.Y. Dec. 16, 2020) .................................................................... 17

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ..................................................................... 2, 9

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
  2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) ................................................................. 4, 15

*In re Medical X-Ray Film Antitrust Litig.*,
  1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) .......................................................................... 15

*In re Patriot National, Inc. Sec. Litig.*,
  828 F. App'x. 760 (2d Cir. 2020) ........................................................................................ 13

*In re Perrigo Company plc Sec. Litig.*,
  2022 WL 500913 (S.D.N.Y. Feb. 18, 2022) ......................................................................... 16

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
  2020 WL 6193857 (E.D.N.Y. Oct. 7, 2020) ................................................................ 4, 5, 15, 19

*In re Retek Inc. Sec. Litig.*,
  621 F. Supp. 2d 690 (D. Minn. 2009) ................................................................................... 11

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ................................................................. *passim*

*In re U.S. Foodservice, Inc. Pricing Litig.*,
  2014 WL 12862264 (D. Conn. Dec. 9, 2014) .......................................................................... 15

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
  2020 WL 13548408 (S.D.N.Y. Mar. 27, 2020) ................................................................. 16, 17

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) .................................................................... 10, 18

*In re Wilmington Trust Sec. Litig.*,
  2018 WL 6046452 (D. Del. Nov. 19, 2018) .......................................................................... 13

*Jenkins v. National Grid USA Service Co. Inc.*,
  2022 WL 2301668 (E.D.N.Y. June 24, 2022) ...................................................................... 16

*Kelwin Inkwel, LLC v. PNC Merch. Servs. Co., L.P.*,
  2022 WL 3127633 (E.D.N.Y. Apr. 12, 2022) ................................................................... 4, 16

*Landmen Partners Inc. v. Blackstone Grp. L.P.*,
  2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013) ................................................................ 14, 15

*Lea v. Tal Education Grp.*,
  2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ....................................................................... 17

*Machniewicz v. Uxin Ltd.*,
  2021 WL 9409860 (E.D.N.Y. Sep. 8, 2021) ........................................................................ 16

*Nguyen v. NewLink Genetics Corp.*,
  2021 WL 9409859 (S.D.N.Y. Sep. 22, 2021) ....................................................................... 16

*Nichols v. Noom, Inc.*,
  2022 WL 2705354 (S.D.N.Y. July 12, 2022) ..................................................................... 6, 14

*Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*,
  2021 WL 2981970 (D. Colo. July 15, 2021) ......................................................................... 10

*Plymouth County Ret. Sys. v. GTT Communications, Inc.*,
  2021 WL 1659848 (E.D. Va. April 23, 2021) .................................................................. 13, 15

*Plymouth County Retirement System v. Patterson Companies, Inc., et al.*,
  2022 WL 2093054 (D. Minn. June 10, 2022) ....................................................................... 15

*Plymouth County Retirement System v. Patterson Companies, Inc., et al.*,
  2022 WL 2111237 (D. Minn. June 10, 2022) ....................................................................... 13

iv

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997) ................................................................................ 12

*Spann v. AOL Time Warner, Inc.*,
2005 WL 1330937 (S.D.N.Y. June 7, 2005) .............................................................. 6

*Teamsters Local 456 Pension Fund v. Universal Health Services, Inc.*,
2021 WL 9409858 (E.D. Pa. July 16, 2021) .............................................................. 15

*Tellabs, Inc. v Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .................................................................................................. 18

*Toure v. Amerigroup Corp.*,
2012 WL 13239969 (E.D.N.Y. July 23, 2012) ........................................................... 17

*Toure v. Amerigroup Corp.,*
2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) ...................................................... *passim*

*Vaccaro v. New Source Energy Partners L.P.*,
2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ..................................................... 8, 13

**STATUTES**

15 U.S.C. § 78u-4(a) ................................................................................................ 6, 20

**RULES**

Fed. R. Civ. P. 23 ...................................................................................................... 1

Lead Plaintiffs respectfully move this Court, pursuant to Fed. R. Civ. P. 23, for: (i) an award of attorneys' fees in the amount of 33⅓% of the Settlement Fund; (ii) reimbursement of $159,480.05 in Litigation Expenses; and (iii) representative reimbursements of $10,200.00 and $3,284.25 to Lead Plaintiffs, as authorized by the PSLRA.[1]

## I.  **PRELIMINARY STATEMENT**

After two-and-a-half years of hard-fought litigation prosecuted entirely on a contingent basis, Lead Counsel obtained an excellent recovery of $35 million on behalf of the Settlement Class. If approved by the Court, this Settlement would rank among the ***top ten largest*** securities class action settlements ever in the Eastern District of New York and tie for the ***second largest*** securities class action settlement achieved in this District in over a decade. Moreover—and significantly—the Settlement represents approximately 15% of Plaintiffs' likely maximum recoverable damages at trial, an amount that is roughly ***three times greater*** than the median 4.8% recovery in securities class actions, and is particularly noteworthy in light of the substantial risks that Plaintiffs faced in establishing liability and damages. In fact, as set forth more fully below, absent Lead Counsel's efforts, there is a realistic chance that the Settlement Class would have achieved ***no recovery whatsoever***, or a significantly lesser recovery.

Lead Counsel achieved this outstanding result through extensive effort and expense, and in the face of considerable challenges from formidable opposition—all while bearing the substantial risk of receiving either very little or no compensation at all. Indeed, reflective of the

---

[1] Plaintiffs respectfully refer the Court to the accompanying Declaration of Lester R. Hooker in Support of (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Hooker Declaration" or "Hooker Decl."), for a more detailed description of the case and the Settlement. Unless otherwise noted, all capitalized terms herein shall have the same meanings as in the Amended Stipulation and Agreement of Settlement ("Settlement Agreement" or "Stipulation") (ECF No. 91-1) or the Hooker Decl.; all "¶" or "Ex." References are to paragraphs in or exhibits to the Hooker Decl.; all citations are omitted; and all emphasis is added.

difficulty of this case, no other institutional investor other than Lead Plaintiffs sought leadership in the Action—a fact that is particularly compelling given that approximately 88% of the Company's shares are owned by institutions—and Saxena White obtained this recovery without "the benefit of a 'road map' established by a government investigation off which they could 'piggy back', but instead independently developed factual allegations and legal theories sufficient to survive the PSLRA's heightened pleading standards." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) (McMahon, J.).

Lead Counsel's extensive litigation efforts included, among other things, an exhaustive investigation that identified numerous potential confidential witnesses, and culminated in the filing of two highly detailed amended complaints, including the 98-page Amended Complaint (which was filed to incorporate new allegations about statements made in March 2020 by Covetrus' new CEO); successfully opposing Defendants' motion to dismiss, which challenged every major element of Plaintiffs' claims; and intensive discovery, including reviewing nearly 400,000 pages of documents produced by Defendants and third parties. Lead Counsel also engaged in extensive settlement negotiations, including the submission of a detailed mediation statement and attendance at a full-day, in-person mediation before highly renowned mediator, Mr. Jed D. Melnick, Esq., which culminated in a mediators' proposal to resolve the Action on the terms and conditions memorialized in the Stipulation.

Further, while courts have uniformly recognized that securities class actions are notoriously complex and risky, this case was uniquely so, and the Settlement is exceptional when considering the significant risks presented by this Action—risks that would have persisted through class certification, summary judgment, trial, and inevitable appellate practice. Indeed, at the pleading stage, the Court: (i) sustained only 9 out of the 26 alleged false statements in the

2

case; (ii) dismissed every single claim with prejudice against all but two named Defendants; (iii) warned that Plaintiffs had only "narrowly" succeeded in keeping the few remaining claims alive; and (iv) noted that while the Court would sustain the Action at the pleading stage, it might "well reconsider this determination at a later juncture," portending a risk of partial or complete dismissal at class certification or summary judgment. Indeed, Defendants would have continued to make credible arguments on the key issues of falsity, scienter, loss causation, and damages.

For example, with regard to falsity, Defendants would have contended that the sustained statements concerning the progress of Covetrus' integration were not false; that such statements were supported by evidence produced in discovery; and that Defendants made clear that the integration was still a work in progress. Further, with regard to scienter, Defendants would have continued to argue that Defendant Shaw, the sole remaining individual Defendant, had no motive to commit fraud, which was demonstrated by Shaw's lack of insider sales or any other apparent motive to mislead investors. With respect to loss causation and damages, while Plaintiffs' expert concluded that the likely maximum recoverable damages in the Action were $241 million, that estimate assumed that every penny of the stock price decline at issue in the Action was attributable to Plaintiffs' claims. However, Defendants had credible arguments that all or a large portion of such decline was entirely unrelated to the alleged fraud, but instead was due to factors such as a general market-related decline in demand and the loss of a major customer. Plaintiffs thus faced years of protracted, costly, and risky litigation—with a real risk of obtaining no meaningful recovery (if any) for the Settlement Class. Accordingly, the Settlement avoids those significant risks while assuring for the Settlement Class a large monetary recovery now.

In light of the outstanding recovery, and the substantial efforts undertaken in achieving it, Plaintiffs respectfully request a fee award of one-third of the Settlement Fund—an award well in-

3

line with fee awards in the Second Circuit and around the country in securities and complex class actions. Indeed, as this Court has noted, a "request for one-third of the fund is reasonable and consistent with the norms of class litigation in this circuit." *Toure v. Amerigroup Corp.*, 2012 WL 3240461, at \*5 (E.D.N.Y. Aug. 6, 2012) (Mann, J.); *see In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2019 WL 4734396, at \*6 (S.D.N.Y. Sept. 23, 2019) (Broderick, J.) (one-third fee awarded on $75 million recovery); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 2020 WL 6193857, at \*\*5-6 (E.D.N.Y. Oct. 7, 2020) (Gershon, J.) (one-third fee on $51.25 million settlement); *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2022 WL 3220783, at \*1 (S.D.N.Y Aug. 5, 2022) (Schofield, J.) (one-third fee on $44 million PSLRA recovery). Moreover, a lodestar "cross-check" fully supports this award, as the requested fee equates to a "multiplier" of just 2.0, which is well within the range of typical lodestar multiples awarded. *See Kelwin Inkwel, LLC v. PNC Merch. Servs. Co., L.P.,* 2022 WL 3127633, at \*5 (E.D.N.Y. Apr. 12, 2022) (Block, J.) (one-third fee at 2.54 multiplier and noting that "'[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers[,]'").

In addition, Lead Plaintiffs are two sophisticated institutional investors who have actively supervised this Action from the outset, and they both have endorsed the fee request as consistent not only with their own separately-negotiated retainer agreements, but also as representative of Lead Counsel's efforts in the Action. Furthermore, the reaction of the Settlement Class also strongly supports the requested fee, as no objection to the fee request has been filed to date— which, again, is particularly significant given that the vast majority of the Settlement Class consists of institutional investors with the resources to object, if warranted. Thus, the overwhelming endorsement of the Settlement Class weighs heavily in support of the requested

4

fee award.  *See e.g. In re Restasis,* 2020 WL 6193857, at *5 (fact that "[n]o class member has objected" supported one-third fee award).

Finally, Plaintiffs request reimbursement of $159,480.05 in Litigation Expenses—a reasonable amount that is well in-line with what is typically expended in similar cases.  *See, e.g., In re Giant Interactive Group, Inc. Sec. Litig.,* 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (Engelmayer, J.) (awarding $263,945.54 in expenses in a $13 million securities class action settlement).  Similarly, Lead Plaintiffs' $10,200.00 and $3,284.25 representative reimbursement awards are fair and reasonable, as they are expressly contemplated by the PSLRA and routinely awarded in securities class actions.

## II.    **ARGUMENT**

### A.    **The Second Circuit Has a Longstanding Preference for the Percentage of the Fund Method of Awarding Attorneys' Fees in Common Fund Cases**

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Courts recognize that such fee awards "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and therefore "to discourage future misconduct of a similar nature."  *City of Providence v. Aeropostale, Inc.,* 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014) (McMahon, J.).  Fairly compensating plaintiffs' counsel for their risks is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class."  *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *15 (S.D.N.Y. July 21, 2020) (McMahon, C.J.).

"The trend in this circuit is toward the percentage method, which directly aligns the

interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Nichols v. Noom, Inc.*, 2022 WL 2705354, at \*10 (S.D.N.Y. July 12, 2022) (Parker, J.).[2]  In preferring this method, courts in the Second Circuit recognize that the "adoption of the percentage of recovery methodology is consistent with national precedent" and that there "is a strong consensus—both in this Circuit and across the country—in favor of awarding attorneys' fees that represent a 'reasonable percentage' of the damages recovered by the class." *Guevoura Fund*, 2019 WL 6889901, at \*15; *see also Amerigroup,* 2012 WL 3240461, at \*5 (the percentage method is "consistent with the trend in this Circuit").[3]  Accordingly, the percentage method applies here.

### B.    The *Goldberger* Factors Support the Reasonableness of the Fee Request

To determine a reasonable fee award, Courts in the Second Circuit consider the *Goldberger* factors, which include "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  Here, each factor readily supports approval of the requested fee.

#### 1.    The Significant Time and Labor Expended Support the Fee Request

The time and labor expended by Lead Counsel in prosecuting this Action firmly supports the requested fee.  As described further in the Hooker Declaration (¶¶21-27), Lead Counsel's

---

[2] The PSLRA supports this preference, stating: "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a *reasonable percentage* of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. § 78u–4(a)(6).  *See Guevoura Fund Ltd. v. Sillerman, et al.,* 2019 WL 6889901, at \*15 (S.D.N.Y. Dec. 18, 2019) (McMahon, C.J.) (noting the "PSLRA also contemplates using the percentage method").

[3] Moreover, the Second Circuit prefers the percentage of the fund method not only because it is simpler, but because it "decreases" incentives to "run up the number of billable hours" and "to delay settlement." *Spann v. AOL Time Warner, Inc.*, 2005 WL 1330937, at \*7 (S.D.N.Y. June 7, 2005) (Cote, J.).

efforts included an extensive and extremely comprehensive investigation, which included interviewing eleven confidential witnesses that proved critical in drafting the Consolidated Complaint's highly detailed allegations. After Covetrus' new CEO made statements made in March 2020, which Lead Counsel believed bolstered Plaintiffs' allegations enough to warrant amending their complaint, the Court granted Plaintiffs leave to amend to incorporate allegations concerning these statements. The resulting Amended Complaint set forth compelling allegations that were sufficient to survive Defendants' motion to dismiss.

Furthermore, Lead Counsel engaged in significant discovery, including consulting with an economic expert; reviewing over 392,000 pages of documents produced by Defendants; conducting meet-and-confers and negotiating discovery disputes with Defendants and third party Henry Schein, Inc. ("HSIC"); collecting and producing over 8,700 pages in response to Defendants' document requests; and preparing to take and/or defend depositions of current and former Covetrus employees, Plaintiffs' experts, and representatives of Plaintiffs and their investment managers. Additionally, the extensive settlement negotiations were time-consuming, including submitting a detailed mediation statement, preparing rebuttals to Defendants' mediation statement, and attending a full-day, in-person mediation session. In total, prosecuting this Action necessitated Plaintiffs' Counsel to expend approximately 10,900 hours, equivalent to $5,790,092.50 in attorney and staff time, over the course of nearly three years of vigorous litigation.

Moreover, Lead Counsel will continue to expend—but will not seek reimbursement for—additional time and out-of-pocket expenses in connection with the settlement administration process, the fairness hearing, and if the Settlement is approved, assisting with implementation of the Settlement. *See Amerigroup*, 2012 WL 3240461, at *6 ("fee award will not only compensate

[counsel] for time and effort already expended, but for time that they will be required to spend administering the settlement going forward"). The significant amount of time and effort devoted by Lead Counsel to this case confirms that the fee request is reasonable.

### 2.    The Magnitude and Complexity of the Case Support the Fee Request

Securities class actions are by their very nature complicated, and courts in this Circuit have long recognized that securities class actions are "notably difficult and notoriously uncertain" to litigate. *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *7 (S.D.N.Y. Dec. 14, 2017) (Wood, J.); *see also Giant Interactive*, 279 F.R.D. at 164 ("A securities case, by its very nature, is a complex animal").  This was especially true here, as Lead Counsel spent substantial hours reviewing the histories of Vets First Choice ("VFC") and HSIC, the complex transaction to merge the privately held VFC with HSIC's spun-off animal health business to form Covetrus, and the first several quarters of Covetrus' operations as a stand-alone entity.  As this Court summarized, the "[k]ey to the merger was the expectation that VFC's technological platform, which helped veterinarians increase prescription compliance by pet owners could be combined with' the spun-off HSIC businesses' 'broad product offerings to yield substantial profits, bolstered by cross-selling of products by a combined sales team.'"  *City of Hollywood Police Officers' Ret. Sys., et al. v. Henry Schein, Inc., et al.*, 552 F. Supp. 3d 406, 410 (E.D.N.Y. 2021) (Brown, J.).  Thus, Lead Counsel had to develop a deep understanding of the veterinary supply industry, various sales organizations within Covetrus, the computer systems used by VFC to sell prescriptions, and the various legacy HSIC veterinary practice management platforms.

Moreover, the complexity of litigating this case is supported by the fact that "Lead Counsel did not have the benefit of a 'road map' established by a government investigation off which they could 'piggy back', but instead independently developed factual allegations and legal

8

theories sufficient to survive the PSLRA's heightened pleading standards." *Hi-Crush Partners*, 2014 WL 7323417, at *15. Even before the commencement of discovery, Lead Counsel reviewed numerous SEC filings, investor call transcripts, analyst reports, and news articles about the Company, as well as identifying, contacting, and interviewing dozens of former Covetrus employees and other potential witnesses, ultimately obtaining valuable information corroborating Plaintiffs' allegations. Once discovery commenced, Lead Counsel had to review and analyze approximately 400,000 pages of documents in just three months to further build their case.

In sum, this was a hard-fought, expensive, multi-year litigation, against considerable opposition, with significant damages at stake, and it required considerable skill and resources to litigate. These factors all contributed to the complexities and challenges of this Action, thus further supporting the requested fee award.

### 3. The Extreme Risk of the Litigation—the "Most Important" Factor— Weighs Heavily in Favor of the Fee Request

The Second Circuit has historically labeled the risk of success as "'perhaps the foremost' factor to be considered in determining [a reasonable award of attorneys' fees]." *Guevoura Fund*, 2019 WL 6889901, at *19. The risks here were very high, and therefore weigh heavily in supporting the requested fee. In this Action, "Lead Counsel understood from the outset that they were embarking on a complex, and potentially expensive and lengthy litigation, which would require the investment of thousands of hours of attorney time, with no guarantee of ever being compensated for their investment of such time and money." *Id.*

As an initial matter, aside from the additional distinctive risks of this Action discussed below, PSLRA cases are inherently risky, with nearly half dismissed at the pleading stage.[4]

---

[4] Underscoring this dynamic, by the end of 2021, 48% of securities class actions filed in 2019 (like this one) had been dismissed, twice the number of cases that had settled. Cornerstone Research, Securities Class Action Filings

9

Furthermore, as noted above, from the outset, Lead Counsel faced significant unique risks in formulating their allegations here, as there were no governmental actions or investigative reports by short sellers or the news media upon which Plaintiffs could "piggy back" to develop their allegations. *See, e.g., In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at \*5 (S.D.N.Y. Nov. 7, 2007) (McMahon, J.). Underscoring the unique risk of prosecuting this Action, no other institutional investors submitted applications to serve in a leadership capacity in this Action, with the only other lead plaintiff submission being filed on behalf of an individual retail investor. In such scenarios, Courts have repeatedly "***recognize[d] that counsel should be rewarded for taking on a case from which other law firms shrunk***." *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.,* 2021 WL 2981970, at \*3 (D. Colo. July 15, 2021).

Litigating the Action was also fraught with risk. At the pleading stage, Defendants made credible arguments concerning falsity, materiality, scienter, and loss causation—many of which were credited by the Court. Indeed, the Court dismissed 17 of 26 alleged false statements, dismissed all claims against all but two named defendants (including HSIC), found that Plaintiffs had only "narrowly" survived the motions to dismiss, did not explicitly reject Defendants' loss causation arguments, and implied that all remaining claims could well be dismissed at summary judgment. *City of Hollywood Police Officers' Ret. Sys.*, 552 F. Supp. 3d at 417, 418. Defendants undoubtedly would have reasserted many of these same arguments at class certification, summary judgment, trial and the inevitable appeals, and Defendants would have only needed to succeed on one defense to potentially defeat the entire Action, thus raising the

---

(2021 Year in Review) at 18, available at https://www.cornerstone.com/wp-content/uploads/2022/02/Securities-Class-Action-Filings-2021-Year-in-Review.pdf.

10

real possibility of no recovery for the Settlement Class at all.[5]  *See, e.g., In re Genworth Fin. Sec. Litig*, 210 F. Supp. 3d 837, 844 (E.D. Va. 2016) ("[S]ecurities fraud cases require significant showings of fact in order to prevail before a jury, and elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish").

With respect to falsity, Defendants would have argued that their statements regarding the integrations were true, that such statements were purportedly supported by evidence demonstrating that Covetrus had achieved the claimed level of integration between the relevant software platforms, and that Defendants purportedly never represented to investors that Covetrus' integration was entirely complete.  Regarding scienter, Defendants would have argued that they fully warned investors that the integration was not complete, and that Defendant Shaw, the only remaining individual Defendant, lacked any motive to deceive the investing public, as he did not sell shares of Covetrus stock during the Settlement Class or benefit in any other way from the alleged fraud.  *See, e.g., Aeropostale*, 2014 WL 1883494, at *15 (risk of proving scienter supported fee award where there was no insider trading, and thus "a central theme to the defense was that no one benefited from the alleged fraud.").  As "proof of scienter is typically a difficult challenge in a securities fraud action," Defendants' defenses represented a high hurdle to surpass.  *Guevoura Fund*, 2019 WL 6889901, at *8.

Concerning loss causation and damages, Defendants would have argued that none of Plaintiffs' losses could be attributed to the alleged fraud.  Specifically, Defendants would have asserted that the poor earnings results announced as part of the alleged corrective disclosure was caused by various non-fraud related factors, including a general market-related decline in

---

[5] *See e.g., In re Retek Inc. Sec. Litig*., 621 F. Supp. 2d 690, 708-09 (D. Minn. 2009) (granting summary judgment in a securities action where plaintiffs failed to present evidence of loss causation); *Fosbre v. Las Vegas Sands Corp*., 2017 WL 55878, at *28 (D. Nev. Jan. 3, 2017) (same with respect to, inter alia, lack of falsity and scienter).

demand in North America, the loss of a key customer and because the stock drop was allegedly part of a wider decline in Covetrus' share price since its start of trading. *See, e.g., Aeropostale*, 2014 WL 1883494, at *15 (risk of proving loss causation supported fee award where "Defendants would have …argue[d] that the stock price drops following announcements of the Company's…results were attributable to market forces and other macroeconomic considerations, not the correction of an alleged misstatement or omission"). Defendants could also have raised similar challenges to defeat class certification, arguing that because the alleged corrective disclosure contained information relating to various other market factors affecting Covetrus, the resulting stock drop did not relate back to the alleged false statements, thereby defeating certification. Taken collectively, Defendants' arguments therefore threatened the viability of the entire Action. *See, e.g.*, *Signet*, 2020 WL 4196468, at *11 ("issues regarding damages and loss causation would have presented the prototypical 'battle of the experts' at trial" with "no way to predict with any certainty which expert's opinions the jury would have accepted"). Significantly, these risks would have persisted even after a successful jury verdict.[6]

"Thus, there existed a demonstrable risk that Plaintiffs' Counsel would invest substantial efforts and receive nothing, and this factor counsels strongly in favor of the fee request." *Guevoura Fund*, 2019 WL 6889901, at *20; *see also*, *Amerigroup*, 2012 WL 3240461, at *6 (awarding one-third fee because "Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation").

---

[6] *See, e.g. Anixter v. Home-Stake Prod. Co*., 77 F.3d 1215, 1233 (10th Cir. 1996) (securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 overturned on the basis of 1994 Supreme Court opinion); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at **20-22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd, Hubbard v. BankAtlantic Bancorp, Inc*., 688 F.3d 713, 730 (11th Cir. 2012).

12

### 4.    The High Quality of Representation and the Outstanding Results Achieved Weigh Heavily in Favor of the Fee Request

Despite the significant risks to recovery in this Action, Lead Counsel nonetheless successfully obtained the *second largest* securities class action settlement in the last decade and one of the *top ten largest* of such settlements *ever* in this District.  The $35 million recovery amounts to approximately 15% of the likely maximum recoverable damages, which is roughly *three times* greater than the typical recovery of 4.8% of damages in comparable securities class action settlements.[7]  *See, e.g.*, *In re Patriot National, Inc. Sec. Litig.*, 828 F. App'x. 760, 762 (2d Cir. 2020) (upholding 33% fee award as reasonable where recovery represented 6.1% of maximum recoverable damages); *New Source Energy Partners*, 2017 WL 6398636, at *6 (recovery "represent[ing] 6.5% of the maximum recoverable damages [] is reasonable and in line with other settlements in securities class actions").

Lead Counsel is also highly experienced and well-respected in the field of securities class action litigation and has an extensive track record in obtaining numerous large cash recoveries on behalf of investors.  *See*, *e.g.*, *In re Wilmington Trust Sec. Litig.*, 2018 WL 6046452, at *8 (D. Del. Nov. 19, 2018) (approving $210 million settlement, noting Saxena White was "highly experienced" and that "[t]he significant amount of recovery in the settlement agreements attests to their efficiency"); *Plymouth County Retirement System, v. Patterson Companies, Inc., et al.*, 2022 WL 2111237, at *4 (D. Minn. June 10, 2022) (approving $63 million settlement and one-third fee award); *Plymouth County Ret. Sys. v. GTT Communications, Inc.*, 2021 WL 1659848, at *5 (E.D. Va. April 23, 2021) (fact that Saxena White "conducted the litigation and

---

[7] *See* Cornerstone Research, Securities Class Actions and Settlements (2021 Review and Analysis) at 7, *available at* https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf (median recovery of 4.8% of "simplified tiered damages" for Rule 10b-5 Class Actions; median 10b-5 recovery from 2012 to 2021was $7.9 million).

achieved the [$25 million PSLRA] [s]ettlement with skill, perseverance and diligent advocacy, and with considerable challenges from formidable opposition" supported one-third fee award).

The quality of the opposition should also be taken into consideration in assessing the quality of Lead Counsel's performance.  Here, Plaintiffs had to contend with some of the top securities defense lawyers in the country.  Not only were Defendants represented by renowned defense firm, Latham & Watkins LLP—under the direction of the former Global Chair of its Litigation & Trial department—but Morgan Lewis & Bockius LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP, both preeminent defense firms, also opposed Plaintiffs in this Action. *See, e.g.*, *Signet*, 2020 WL 4196468, at *20 ("that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of lead counsels' work").

### 5.    The Requested Fee Fully Comports with the Second Circuit's Standards and Awards in Similar Settlements

Lead Counsel's one-third fee request is eminently reasonable when considering the customary awards in similar cases in the Second Circuit in securities fraud and other complex class actions. *See Amerigroup*, 2012 WL 3240461, at *5 ("Class Counsel's request for one-third of the fund is reasonable and consistent with the norms of class litigation in this circuit"); *Noom*, 2022 WL 2705354, at *10 (awarding fee of one-third of $56 million settlement, and noting one-third fees are "routinely approved in this Circuit"); *In re Cnova N.V. Sec. Litig.*, 2018 WL 11447878, at *3 (S.D.N.Y. Mar. 20, 2018) (Swain, J.) (one-third fee on $28.5 million recovery in action that settled prior to discovery was in line with "awards to successful plaintiffs' counsel in other, similar litigation"); *Landmen Partners Inc. v. Blackstone Grp. L.P.*, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) (Baer, Jr., J.) (awarding one-third fee on $85 million recovery and finding same); *Fulton Cty. Empl. Ret. Sys. v. Blankfein*, No. 19-CV-1562, ECF No. 93 at 8

14

(S.D.N.Y. Sept. 16, 2022) (Broderick, J.) (noting that "'[d]istrict courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater").[8]

A one-third award is particularly appropriate here because of the highly complex issues involved, the extraordinary investment of time and resources, the results achieved, the approval of Lead Plaintiffs and the Settlement Class, and the risks in litigation. *See, e.g.*, *Guevoura Fund*, 2019 WL 6889901, at *20 (the "demonstrable risk that [Lead] Counsel would invest substantial efforts and receive nothing [] counsels strongly in favor of the [one-third] fee request"). Indeed, as demonstrated below, numerous courts in the Second Circuit and nationwide have awarded one-third fees or higher in large complex class actions:

| Comparable Cases Within the Second Circuit | Recovery | Award |
|---|---|---|
| *Haddock v. Nationwide Life Ins. Co.*, 2015 WL 13942222, at *5 (D. Conn. Apr. 9, 2015) | $140,000,000 | 35% |
| *In re U.S. Foodservice, Inc. Pricing Litig.*, 2014 WL 12862264, at *3 (D. Conn. Dec. 9, 2014) | $297,000,000 | 33.3% |
| *Landmen Partners, Inc. v. Blackstone Grp.*, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) (Baer, Jr., J.) | $85,000,000 | 33.3% |
| *In re MTC Electronic Techs. Shareholder Litig.*, No. 1:93-cv-00876, ECF Nos. 950, 952, p.9 (E.D.N.Y. Oct. 20, 1998) (Gleeson, J.) | $72,128,210 | 33.3% |
| *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2019 WL 4734396, at *6 (S.D.N.Y. Sept. 23, 2019) (Broderick, J.) | $75,000,000 | 33.3% |
| *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 2020 WL 6193857, at *6 (E.D.N.Y Oct. 7, 2020) (Gershon, J.) | $51,250,000 | 33.3% of net |
| *In re Chicago Bridge & Iron Company N.V. Sec. Litig.*, 2022 WL 3220783, at *1 (S.D.N.Y. Aug. 5, 2022) (Schofield, J.) | $44,000,000 | 33.3% |
| *In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *8 (E.D.N.Y. Aug. 7, 1998) (Sifton, C.J.) | $39,360,000 | 33.3% |

---

[8] The requested fee award is also reasonable when compared to similar securities class action recoveries nationwide. *See, e.g.*, *Grae v. Corrections Corp. of America*, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021) (awarding one-third on $56 million recovery); *In re Gen. Instr. Sec. Litig.*, 209 F. Supp. 2d 423, 431-34 (E.D. Pa. 2001) (awarding one-third fee on $48 million recovery); *City Pension Fund for Firefighters & Police Officers in City of Miami Beach v. Aracruz Celulose, S.A.*, 2013 WL 12489095, at **3-4 (S.D. Fla. July 17, 2013) (awarding one-third fee on $37.5 million recovery); *Cosby v. KMPG, LLP*, 2022 WL 4129703, at **1-2 (E.D. Tenn. July 12, 2022) (awarding one-third fee on $35 million recovery); *Patterson*, 2022 WL 2093054, at *1 (awarding one-third fee on $63 million recovery); *GTT Commc'ns*, 2021 WL 1659848, at *5 (awarding one-third fee on $25 million recovery); *Teamsters Local 456 Pension Fund v. Universal Health Services, Inc.*, 2021 WL 9409858, at *1 (E.D. Pa. July 16, 2021) (awarding one-third fee on $17.5 million recovery).

15

| Comparable Cases Within the Second Circuit | Recovery | Award |
|---|---|---|
| *In re Perrigo Company plc Sec. Litig.*, 2022 WL 500913, at *1 (S.D.N.Y. Feb. 18, 2022) (Cote, J.) | $31,900,000 | 33.3% |
| *In re Cnova N.V. Sec. Litig.*, 2018 WL 11447878, at *3 (S.D.N.Y. Mar. 20, 2018) (Swain, J.) | $28,500,000 | 33.3% |
| *In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (Woods, J.) | $18,500,000 | 33.3% |
| *Hawaii Struct. Ironworkers Pen. Tr. Fund v. AMC Enter. Holds., Inc.*, 2022 WL 4136175, at *1 (S.D.N.Y. Feb. 14, 2022) (Nathan, J.) | $18,000,000 | 33.3% |
| *In re Ubiquiti Networks, Inc. Sec. Litig.*, 2020 WL 13548408, at *4 (S.D.N.Y. Mar. 27, 2020) (Marrero, J.) | $15,000,000 | 33.3% |
| *Nguyen v. NewLink Genetics Corp.*, 2021 WL 9409859, at **1-2 (S.D.N.Y. Sep. 22, 2021) (Nathan, J.) | $13,500,000 | 33.3% |
| *Machniewicz v. Uxin Ltd.*, 2021 WL 9409860, at *4 (E.D.N.Y. Sep. 8, 2021) (Brodie, J.) | $9,500,000 | 33.3% |
| *Jenkins v. National Grid USA Service Co. Inc.*, 2022 WL 2301668, at *5 (E.D.N.Y. June 24, 2022) (Seybert, J.) | $38,500,000 | 33% |
| *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *12 (S.D.N.Y. Nov. 9, 2015) (Sweet, J.) | $26,500,000 | 33% |
| *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (McMahon, J.) | $15,000,000 | 33% |
| *In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (Engelmayer, J.) | $13,000,000 | 33% |

A lodestar "cross-check" also wholly supports the fee request. Here Plaintiffs' Counsel's total lodestar is $5,790,092.50, and the requested one-third fee equates to a multiplier of 2.0, which is well within the typical range of multipliers routinely approved by Courts in this District and Circuit. [9]  *See, e.g., Kelwin Inkwel, ,* 2022 WL 3127633, at *5 (approving one-third fee at 2.54 lodestar multiplier and noting that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers[,]"); *Signet*, 2020 WL 4196468, at *16 (in "complex litigation, lodestar multipliers between 2 and 5 are commonly awarded, and fee awards resulting in multipliers as high as 6 have also been approved"); *Cnova*, 2018 WL 11447878, at *3 (one third fee awarded for $28.5 million settlement in action that

---

[9] Moreover, the number of hours spent in the prosecution of this case are lower than, or in line with, the time spent in comparable securities class actions settled at a similar stage of the litigation. *See e.g, Giant*, 279 F.R.D. at 164 (12,605 hours in securities class action that settled at similar stage of proceedings and that achieved significantly smaller settlement).

16

settled prior to discovery with 3.79 multiplier); *In re Ubiquiti Networks, Inc. Sec. Litig.*, No. 18-cv-01620, ECF No. 44 at 1 (S.D.N.Y. Feb. 14, 2020) and 2020 WL 13548408, at *4 (S.D.N.Y. Mar. 27, 2020) (awarding one third fee with 3.10 multiplier for action settled before discovery).

Furthermore, Lead Counsel's blended hourly rate is just $531, which is significantly lower than blended rates approved by courts in this Circuit and nationwide. *See, e.g.*, *Guevoura Fund*, 2019 WL 6889901, at *18 (approving one-third fee on blended rate of $769 per hour); *In re Akazoo S.A. Sec. Litig.*, 2021 WL 4316717, at *2 (E.D.N.Y. Sept. 9, 2019) (Cogan, J.) (approving one-third fee on blended rate of $690 per hour); *In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980, at *2 (S.D.N.Y. June 11, 2020) (Woods, J.) (approving one-third fee on blended rate of $618 per hour). Indeed, Lead Counsel's hourly rates—ranging from $400 to $985 for attorneys, directors and shareholders, and $250 to $325 for non-investigative support staff—are comparable to or lower than hourly rates approved by this Court and others within the Circuit (especially taking into account the recent rate of inflation). *See, e.g.*, *Amerigroup*, 2012 WL 13239969, at ¶ 14 (E.D.N.Y. July 23, 2012), 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (approving—a decade ago—rates up to $1,000 for partners, $475 for associates, and $215 for paralegals); *In re Henry Schein, Inc. Derivative Litig.*, No. 1:19-cv-06485-RLM, ECF No. 22-4 at 25 and 2020 WL 13548663, at *4 (E.D.N.Y. Dec. 16, 2020) (Mann, J.) (approving $925-$975 for partners, $400-$750 for associates, and $395 for project attorneys); *Lea v. Tal Education Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) (Parker, J.) ("rates [] from $600 to $995 for partners and $500 to $750 for associates" were "comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude"); *Cnova*, 2017 WL 11697887, at ¶230 (S.D.N.Y. Dec. 22, 2017) (directors, $775-995; associates, $600-645; paraprofessional, $450); *Signet*, 2020 WL 4196468, at *19 and, ECF No. 258-4 at 7 (approving

17

rates of partners, $825-$1,300; associates, $425-$600; staff attorneys, $350-$395; paralegals, $255-$375).

### 6. Public Policy Considerations Support the Fee Request

The Supreme Court "has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions." *Tellabs, Inc. v Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *see also Amerigroup*, 2012 WL 3240461, at *5 (where "relatively small claims can only be prosecuted through aggregate litigation, 'private attorneys general' play an important role," and counsel "who fill[ed] the private attorney general role must be adequately compensated for their efforts"). Moreover, "for most Class Members, this Action was the only hope of obtaining compensation for the losses they suffered as a result of the allegations here" and thus "public policy favors granting [the] request for fees." *Guevoura Fund*, 2019 WL 6889901, at *21.

Here, as discussed above, Lead Counsel undertook this engagement and prosecuted the Action without the benefit of any governmental investigation, and without those efforts, it is quite possible that the Class would have received nothing at all, much less the excellent recovery provided by the Settlement. Thus, this factor weighs strongly in favor of the fee request.

### C. Lead Plaintiffs' Endorsement of, and the Class's Reaction to, the Fee Request Further Support Its Reasonableness

Lead Plaintiffs—who have actively supervised Lead Counsel and participated in this Action from its inception—are precisely the type of sophisticated institutional investors Congress envisioned would participate in the litigation and exercise control over Lead Counsel, and their endorsement heavily supports the requested fee. Ex. A, ¶¶12-16; Ex. B, ¶¶12-16; *see also Veeco*, 2007 WL 4115808, at *8 ("a fee request which has been approved and endorsed by a properly-appointed lead plaintiff is presumptively reasonable, especially where the lead plaintiff

18

is a sophisticated institutional investor"). Moreover, the fact that the requested fee is based on retainer agreements that Lead Counsel entered into with Lead Plaintiffs at a minimum "supports approval of the fee" and is even viewed by a number of courts as "presumptively reasonable in light of Congress's intent to empower lead plaintiffs under the PSLRA to select and supervise attorneys on behalf of the class." *Signet*, 2020 WL 4196468, at *17.

Further, as of this filing, not a single member of the Settlement Class has objected to the requested fee. The lack of objections is particularly significant given that 88% of the Settlement Class consists of institutional investors with the resources to object, if warranted. Thus, the overwhelming endorsement of the Settlement Class weighs heavily in support of the requested fee award.[10] *In re Restasis,* 2020 WL 6193857, at *5 (fact that "[n]o class member has objected" supported one-third fee award).

###### D.    Lead Counsel's Litigation Expenses, and Lead Plaintiffs' Reimbursement Awards Are Reasonable and Should Be Granted

Plaintiffs' Counsel seeks reimbursement of $159,480.05 in Litigation Expenses reasonably incurred in litigating the Action, which expenses are routinely awarded in similar actions, including expert fees, mediation expenses, discovery-related costs, and investigation expenses. *See, e.g., Giant*, 279 F.R.D. 151, 165 (reimbursing $263,945.54 in expenses in securities class action that settled in the middle of discovery). Lead Counsel's fee and expense declaration filed herewith contains a full breakdown of Lead Counsel's Litigation Expenses. *See*

---

[10] Significantly, the Notice provided the Settlement Class with extensive information about Lead Plaintiffs' planned fee and expense request, including that "Lead Counsel Saxena White P.A. will apply to the Court for an award of attorneys' fees on behalf of all Plaintiffs' Counsel in an amount not to exceed one-third (33⅓%) of the Settlement Fund," that "Saxena White will compensate [Lead Plaintiffs' fiduciary counsel] Klausner Kaufman for Klausner Kaufman's work in the Action from the attorneys' fees that the Court approves in an amount commensurate with Klausner Kaufman's efforts and contributions in the litigation and not to exceed 10% of the attorneys' fees awarded in this matter," and that "Lead Counsel will apply for reimbursement of Litigation Expenses paid or incurred in connection with the institution, prosecution, and resolution of the claims against the Defendants, in an amount not to exceed $250,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Settlement Class." ECF No. 91-4 at 3.

Ex. E at Ex. 2. Notably, the requested expenses are significantly less than the $250,000 amount set forth in the Notice, and no objections have been lodged thereto—further supporting the expense reimbursement request. ¶¶83-85.

Lastly, Lead Plaintiffs also seek representative reimbursements of $10,200 to Hollywood Police and $3,284.25 to Pembroke Pines F&P, as an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class"—awards specifically envisioned in the PSLRA and routinely awarded by Courts nationwide. *See* 15 U.S.C. §78u-4(a)(4); *Amerigroup*, 2012 WL 3240461, at *6 (awards of $10,000 to each named plaintiff reasonable because such "awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation"); *Signet*, 2020 WL 4196468, at **22–24 (collecting cases and awarding $25,410 to lead plaintiff); Exs. A and B (detailing Lead Plaintiffs' time spent in the Action).

## III.   CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court award: (i) attorneys' fees in the amount of one-third of the Settlement Fund; (ii) reimbursement of $159,480.05 in Litigation Expenses; and (iii) PSLRA reimbursement awards of $10,200 to Hollywood Police and $3,284.25 to Pembroke Pines F&P.

Dated: September 20, 2022                    Respectfully submitted,

*/s/ Lester R. Hooker*
**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White, III
Lester R. Hooker
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel: (561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com

20

jwhite@saxenawhite.com
lhooker@saxenawhite.com

**SAXENA WHITE P.A.**
Steven B. Singer
Kyla Grant
Joshua H. Saltzman
10 Bank Street, Suite 882
White Plains, NY 10606
Tel: (914) 437-8551
Fax: (888) 216-2220
ssinger@saxenawhite.com
kgrant@saxenawhite.com
jsaltzman@saxenawhite.com

**SAXENA WHITE P.A.**
David R. Kaplan
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Tel.: (858) 997-0860
Fax: (858) 369-0096
dkaplan@saxenawhite.com

*Lead Counsel for Lead Plaintiffs and the Settlement Class*

**KLAUSNER KAUFMAN JENSEN & LEVINSON**
Robert D. Klausner
7800 Northwest 4th Street
Plantation, FL 33317
Tel: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com

*Additional Counsel for Lead Plaintiffs*

21

## CERTIFICATE OF SERVICE

I, Lester R. Hooker, hereby certify that on September 20, 2022, I caused a true and correct copy of the foregoing to be served on all parties of record by filing through CM/ECF.

*/s/ Lester R. Hooker*
Lester R. Hooker