**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CITY OF HOLLYWOOD POLICE OFFICERS' RETIREMENT SYSTEM and PEMBROKE PINES PENSION FUND FOR FIREFIGHTERS AND POLICE OFFICERS, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiffs,<br><br>    v.<br><br>HENRY SCHEIN, INC., COVETRUS, INC., STEVEN PALADINO, BENJAMIN SHAW, and CHRISTINE T. KOMOLA,<br><br>       Defendants. | No. 2:19-cv-5530-RLM<br><br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'**
**UNOPPOSED MOTION FOR APPROVAL OF**
**DISTRIBUTION OF NET SETTLEMENT FUND**

## **TABLE OF CONTENTS**

I.     BACKGROUND ......................................................................................................... 1

II.    CLAIMS ADMINISTRATION.................................................................................... 3

III.   CLAIMS ADMINISTRATOR'S FEES AND EXPENSES .............................................. 6

IV.    DISTRIBUTION OF NET SETTLEMENT FUND ......................................................... 6

V.     RELEASE OF CLAIMS.............................................................................................. 9

VI.    RETENTION OF CLAIM FORMS AND OTHER DOCUMENTS................................... 9

VII.   CONCLUSION.......................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Fernandez v. Knight Cap. Grp., Inc.*,
2016 WL 7468089 (D.N.J. June 16, 2016) ............................................................. 5

*Grottano v. City of New York*,
2021 WL 6427554 (S.D.N.Y. Dec. 17, 2021).......................................................... 4

*In re Citigroup Inc. Sec. Litig.*,
2014 WL 7399039 (S.D.N.Y. Dec. 29, 2014).......................................................... 5, 6

*In re Cnova N.V. Sec. Litig.*,
2021 WL 100548 (S.D.N.Y. Jan. 12, 2021)............................................................. 9

*In re Eletrobras Sec. Litig.*,
467 F. Supp. 3d 149 (S.D.N.Y. 2020)...................................................................... 6, 9

*In re Evoqua Water Techs. Corp. Sec. Litig.*,
No. 1:18-cv-10320-JPC, ECF No. 160 (S.D.N.Y. Nov. 23, 2022) .......................... 4

*In re Evoqua Water Techs. Corp. Sec. Litig.*,
2022 WL 17352327 (S.D.N.Y. Dec. 1, 2022).......................................................... 5, 9

*In re Gypsum Antitrust Cases*,
565 F.2d 1123 (9th Cir. 1977)................................................................................. 5

*In re Henry Schein, Inc. Sec. Litig.*,
No. 1:18-cv-01428-MKB-VMS, ECF No. 93 (E.D.N.Y. June 24, 2021).................. 4

*In re Patriot National, Inc. Sec. Litig.*,
2021 WL 1040462 (S.D.N.Y. Mar. 18, 2021) ......................................................... 8

*In re Perrigo Company PLC Sec. Litig.*,
No 1:19-cv-70-DLC, ECF No. 338 (S.D.N.Y. July 28, 2022).................................. 4

*In re Signet Jewelers Ltd. Sec. Litig.*,
2021 WL 5357468 (S.D.N.Y. Nov. 12, 2021) ........................................................ 5, 8

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
No. 18-cv-01620-VM, ECF No. 57 (S.D.N.Y. Nov. 24, 2020) ................................ 6

*In re Vale S.A. Sec. Litig.*,
No. 15-cv-09539-GHW, ECF No. 213 (S.D.N.Y. Apr. 27, 2021) ............................ 6

*Rihn v. Acadia Pharm. Inc.*,
  2018 WL 513448 (S.D. Cal. Jan. 22, 2018) ................................................................. 8

*Shah v. Zimmer Biomet Holdings, Inc.*,
  2020 WL 7392796 (N.D. Ind. Dec. 14, 2020) .......................................................... 8

Pursuant to the Parties' Amended Stipulation and Agreement of Settlement ("Settlement Agreement" or "Stipulation," ECF No. 91-1), the Court's Order and Final Judgment Approving Class Action Settlement ("Judgment," ECF No. 112), and the Order Approving Plan of Allocation ("Plan of Allocation Order," ECF No. 109), Lead Plaintiffs hereby respectfully move (the "Motion") this Court for entry of a Class Distribution Order: (i) approving the Court-appointed Claims Administrator A.B. Data, Ltd.'s ("A.B. Data") administrative determinations concerning the acceptance and rejection of Claims submitted in connection with the Settlement of the Action; (ii) directing distribution of the Net Settlement Fund to Authorized Claimants; (iii) approving payment of A.B. Data's fees and expenses estimated to conduct the distribution of the Settlement; (iv) authorizing the destruction of Claim Forms and supporting documents at an appropriate time; (v) releasing claims related to the administration process; and (vi) for such other and further relief as this Court deems appropriate.[1]  Significantly, there are no disputed Claims by any Settlement Class Member requiring Court review.  Moreover, Defendants conferred with Lead Plaintiffs, and Defendants do not oppose this Motion.  As such, this Motion is ripe for determination.

## I.    BACKGROUND

In this Action, a settlement was reached, and the Parties entered into the Settlement Agreement.  A.B. Data, a firm specializing in the administration of class action settlements, was retained to supervise and administer the notice procedure in connection with the Settlement, process the Claims submitted, and to effectuate the distribution of the Net Settlement Fund to

---

[1] The proposed distribution plan (the "Distribution Plan") is set forth in the accompanying Declaration of Eric Nordskog in Support of Lead Plaintiffs' Motion for Approval of Distribution of Net Settlement Fund ("Nordskog Dec." or "Nordskog Declaration"), submitted on behalf of A.B. Data. Unless otherwise indicated, all capitalized terms have the meanings set forth in the Settlement Agreement, the Plan of Allocation, or the Nordskog Declaration, all citations and internal quotations are omitted, and all emphasis is added. All references to "Ex. _" are to exhibits accompanying the Nordskog Dec.

Authorized Claimants. *See* ECF No. 91-3. The Court approved the selection of A.B. Data in the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), so ordered on July 15, 2022. *Id*. In accordance with the Preliminary Approval Order, A.B. Data has mailed the Notice and Claim Forms to potential Settlement Class Members, brokers, and other nominees. *See* ECF No. 101-4. The Summary Notice was also published in *Investor's Business Daily* and released via *PR Newswire* on August 8, 2022. *Id*. The Court held a Settlement Hearing on October 25, 2022, and on the same day entered the Judgment and the Plan of Allocation Order. *See* ECF Nos. 109, 112.

As set forth in the Nordskog Declaration, in addition to providing notice, A.B. Data has processed the Claim Forms and calculated recognized loss amounts consistent with the Court-approved Plan of Allocation. *See generally*, Nordskog Dec. A.B. Data has processed 51,194 Claims received through April 28, 2023. *Id*. at ¶6. Of these 51,194 Claims, A.B. Data has determined that 14,364 are timely eligible claims, 149 are late but otherwise eligible claims, and 36,681 should be wholly rejected for the following reasons: the Claim had no purchase of Covetrus common stock during the Settlement Class Period; the Claim did not result in a Recognized Claim; the Claims were duplicates; or the Claims were withdrawn. *See id*. at ¶¶33-37.

Accordingly, the cash in the Net Settlement Fund is now available for distribution to Authorized Claimants in accordance with the Plan of Allocation. Pursuant to the Court's previous orders and the Stipulation, Lead Plaintiffs respectfully request that the Court enter the Class Distribution Order authorizing and directing that the Net Settlement Fund be distributed to Authorized Claimants.

## II.   CLAIMS ADMINISTRATION

Under the terms of the Stipulation, a $35 million Settlement Fund was established for the benefit of the Settlement Class for the Settlement of this Action.  Pursuant to the Stipulation, the Notice, and the Preliminary Approval Order, all Settlement Class Members wishing to participate in the Settlement Fund were required to submit Claim Forms by mail, postmarked no later than December 3, 2022, or to submit a Claim Form online by that same date.  As set forth in the Nordskog Declaration, A.B. Data reviewed and processed 51,194 Claim Forms submitted by potential Settlement Class Members.  Nordskog Dec. at ¶6.  A.B. Data has now prepared detailed reports listing: (i) all valid Claims by Authorized Claimants; (ii) all Claims that were submitted after the claims submission deadline but on or before April 28, 2023 that are otherwise valid; and (iii) rejected Claims with the rejection reasons.  *See* Nordskog Dec. at ¶¶33-37; Exs. D through F.

All Claims received through April 28, 2023 have been fully processed in accordance with the Settlement Agreement and the Court-approved Plan of Allocation included in the Notice, and A.B. Data has worked with Claimants to help them perfect their Claims.  *See generally*, Nordskog Dec.  Specifically, A.B. Data evaluated all Claims and supporting documentation to determine, among other things, whether each Claimant had purchased or acquired Covetrus common stock during the Settlement Class Period, and whether transaction information entered on the Claim Form was supported by the documentation provided.  *See id*. at ¶¶9-18.

Much of A.B. Data's efforts in handling the administration involved Claimant communications, so that all claimants had sufficient opportunity to cure any deficiencies and file a complete Claim.  Pursuant to the Settlement Agreement and as demonstrated by the Nordskog Declaration, A.B. Data received all submitted Claims, and, to the extent that a Claim was deficient, A.B. Data notified the Claimant of the deficiency and advised the Claimant on how to cure the

3

deficiency.  *See id.* at ¶¶20-27.  A.B. Data made substantial efforts, by way of letters, Status Emails and Status Spreadsheets. *Id.*; Nordskog Dec. Exs. A (sample letter), B (sample Status Email), C (sample Status Spreadsheet).  The letters and Status Emails advised claimants that the submission of the appropriate information and/or trade documentation required to complete the Claim had to be sent within 20 days from the date of the letter, or the Claim would be recommended for either full or partial rejection.  *See* Nordskog Dec. at ¶¶20-28.  A.B. Data carefully reviewed the responses it received to any deficiency notices and worked with Claimants and filers to resolve deficiencies where possible; and as a result of these efforts, there are no requests for review by any Claimants. *See id.*

A.B. Data has completed the processing of the 51,194 Claims that were received through April 28, 2023 and has determined that 14,513 are acceptable and 36,681 should be wholly rejected because they are either ineligible, wholly deficient, have no Recognized Loss when calculated in accordance with the Plan of Allocation, or were withdrawn.[2]  *Id.* at ¶¶33-37.  A.B. Data received 292 Claims that were received or postmarked after the Court-approved claim filing deadline of December 3, 2022, of which 149 Claims were, apart from their late submission, otherwise eligible. *Id.* at ¶35.

"[A] district court overseeing settlement distribution has inherent power to accept late claims." *Grottano v. City of New York*, 2021 WL 6427554, at *1 (S.D.N.Y. Dec. 17, 2021).

---

[2] This claims acceptance rate is consistent with claims acceptance rates in other large securities class action settlements, including the most recent securities class action settlements for which A.B. Data was appointed the Claims Administrator. *See, e.g.*, *In re Henry Schein, Inc. Sec. Litig.*, No. 1:18-cv-01428-MKB-VMS, ECF No. 93 at ¶¶33, 36 (E.D.N.Y. June 24, 2021) (95,524 claims received, 67,924, or 71%, were rejected); *In re Evoqua Water Technologies Corp. Sec. Litig.*, No. 1:18-cv-10320-JPC, ECF No. 160 at ¶¶33, 36  (S.D.N.Y. Nov. 23, 2022) (9,955 claims received, 6,205, or 62%, were rejected); *In re Perrigo Company PLC Sec. Litig.*, No 1:19-cv-70-DLC, ECF No. 338 at ¶¶33, 36 (S.D.N.Y. July 28, 2022) (23,610 claims received, 18,090, or 77%, were rejected); Nordskog Dec. at ¶36.

Additionally, the Settlement Agreement contemplates that the Court may approve extending the deadline for Settlement Class Members to submit Claims to allow acceptance of additional Claims that are otherwise eligible to participate in the Settlement. *See* Settlement Agreement at ¶24. Extending the claims deadline is common in securities class actions. *See, e.g., In re Signet Jewelers Ltd. Sec. Litig.*, 2021 WL 5357468, at *1 (S.D.N.Y. Nov. 12, 2021) (approving determinations to accept late but otherwise eligible claims); *Evoqua Water Techs. Corp. Sec. Litig.*, 2022 WL 17352327, at *1 (S.D.N.Y. Dec. 1, 2022) (same); *Fernandez v. Knight Cap. Grp., Inc.*, 2016 WL 7468089, at *1 (D.N.J. June 16, 2016) (same). Lead Counsel believes that, when the equities are balanced, it would be unfair to prevent an otherwise valid claim from participating in the Net Settlement Fund solely because it was submitted after the deadline, but while all Claims were still being processed. In the interest of maximizing Settlement Class participation in the Settlement, A.B. Data has processed all late Claims received through April 28, 2023, has not rejected any Claim received through April 28, 2023 solely based on its late submission, and Lead Counsel and A.B. Data believe no delay has resulted from the provisional acceptance of these late but otherwise eligible Claims. Nordskog Dec. at ¶29.

However, there must be a final cut-off date after which no more claims may be accepted so that there may be a proportional distribution of the Net Settlement Fund and the distribution may be accomplished. As courts in this Circuit and elsewhere have recognized, "at some point in the distribution of a large class action settlement, such as this one, 'a cutoff date is essential and ... the matter must be terminated.'" *In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum Antitrust Cases,* 565 F.2d 1123, 1127 (9th Cir. 1977)). Accordingly, it is respectfully requested that the Court enter an order directing that no claim submitted after April 28, 2023 be eligible for payment for any reason whatsoever.

### III.    CLAIMS ADMINISTRATOR'S FEES AND EXPENSES

Pursuant to the terms of A.B. Data's agreement with Lead Counsel to act as the Claims Administrator for the Settlement, A.B. Data was responsible for, among other things, disseminating Notice of the Settlement to the Settlement Class, creating and maintaining a website and toll-free telephone helpline, processing Claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants.  *See generally*, Nordskog Dec.  As set forth in the Nordskog Declaration, A.B. Data estimates that its fees and expenses in connection with the Initial Distribution of the Net Settlement Fund will be $38,508.50.[3]  Nordskog Dec. at ¶38; Ex. G.  If the anticipated fees and expenses to conduct the Initial Distribution is greater than the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund.  Lead Plaintiffs respectfully request that the Court approve payment of this amount for A.B. Data to conduct the Initial Distribution.

### IV.    DISTRIBUTION OF NET SETTLEMENT FUND

Lead Plaintiffs request that the Court authorize the distribution of the balance of the Settlement Fund to the Settlement Class Members whose claims have been accepted.  Nordskog Dec. at ¶¶34-35; Exs. D-E.  Lead Plaintiffs now respectfully move the Court for an order approving A.B. Data's determinations concerning the acceptance and rejection of the Claims that are included in the Motion and approving the Distribution Plan as set forth in the Nordskog Declaration.

---

[3] Such fees and expenses are reasonable when compared to those incurred in similar securities class action settlements. *See*, *e.g.*, *In re Ubiquiti Networks, Inc. Sec. Litig.*, No. 18-cv-01620-VM (S.D.N.Y. Nov. 24, 2020), ECF No. 57 at ¶49 ($774,683.04 in total fees and expenses to claims administrator in $15 million settlement); *In re Vale S.A. Sec. Litig.*, No. 15-cv-09539-GHW, ECF No. 213 at ¶44 (S.D.N.Y. Apr. 27, 2021) ($909,709.03 in total fees and expenses to claims administrator in $25 million settlement); *In re Eletrobras Sec. Litig.,* 467 F. Supp. 3d 149, 150 (S.D.N.Y. 2020) (approving fees and expenses "in the amount of $454,305.94 that have been incurred or are expected to be incurred" to administer $14.75 million settlement).

Pursuant to the proposed Distribution Plan, A.B. Data will conduct an Initial Distribution of the available balance of the Net Settlement Fund, after deducting all payments approved by the Court, after payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees. Nordskog Dec. at ¶39(a). In the Initial Distribution, A.B. Data will calculate award amounts to all Authorized Claimants by calculating their *pro rata* share of the Net Settlement Fund in accordance with the Court-approved Plan of Allocation. *Id.* Pursuant to the terms of the Plan of Allocation, A.B. Data will eliminate any Authorized Claimant whose distribution payment calculates to less than $10.00. *Id.* at ¶39(a)(ii).

After eliminating Claimants who would have received less than $10.00, A.B. Data will recalculate the *pro rata* distribution payments for Authorized Claimants who would have received $10.00 or more. Nordskog Dec. at ¶39(a)(iii). A.B. Data will then prepare checks for the distribution. In order to encourage Authorized Claimants to promptly deposit their payments, all distribution checks will bear a notation: "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 120 DAYS OF DISTRIBUTION." *Id.* at ¶39(a)(v). Authorized Claimants who do not negotiate their distribution checks within the time allotted or on the conditions stated in the Nordskog Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to all such stale-dated checks will be available to be redistributed to other Authorized Claimants. *Id.* at ¶39(a)(vi).

Pursuant to the Distribution Plan, if any balance is remaining in the Net Settlement Fund after nine (9) months from the date of the Initial Distribution (whether by reason of tax refunds, uncashed checks, or otherwise), after deducting A.B. Data's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), and after deducting the payment of any estimated

7

taxes, the costs of preparing appropriate tax returns, and any escrow fees, and if cost-effective, the remaining funds will be distributed to Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution. *Id.* at ¶39(b).  Additional distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter in six-month intervals until Lead Counsel, in consultation with A.B. Data, determines that further distribution is not cost-effective. *Id.* at ¶39(c).

Finally, if any funds remain in the Net Settlement Fund after determining that further redistribution is no longer cost-effective, and following payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Fund and after payment of estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, the funds shall be contributed to the Investor Protection Trust ("IPT"), a non-sectarian, not-for-profit organization dedicated to investor education. *Id*. at ¶39(d).[4]

Courts routinely approve substantially similar methods of distributing recoveries in securities class actions such as this one. *See*, *e.g.*, *Signet*, 2021 WL 5357468, at **1-2 (approving similar distribution plan); *Patriot National*, 2021 WL 1040462, at **1-2 (same). The Court-approved Claims Administrator and Lead Counsel submit that the administration of the Settlement and the proposed Distribution Plan comply with the terms of the Settlement Agreement and the Plan of Allocation approved by the Court; and therefore, should be approved.

---

[4] *See e.g., In re Patriot National, Inc. Sec. Litig.*, 2021 WL 1040462, at *2 (S.D.N.Y. Mar. 18, 2021) (finding that when "no additional distributions are cost-effective, then the funds will be donated to Investor Protection Trust, a non-sectarian, not-for-profit organization"); *Shah v. Zimmer Biomet Holdings, Inc.,* 2020 WL 7392796, at *2 (N.D. Ind. Dec. 14, 2020) (approving IPT as *cy pres* recipient); *Rihn v. Acadia Pharm. Inc*., 2018 WL 513448, at *4 (S.D. Cal. Jan. 22, 2018) (same).

## V.      RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement. Courts in the Second Circuit and elsewhere have repeatedly approved similar releases in connection with the distribution of settlement proceeds. *See, e.g., Eletrobras*, 467 F. Supp. 3d at 151; *In re Cnova N.V. Sec. Litig.,* 2021 WL 100548, at *2 (S.D.N.Y. Jan. 12, 2021). Accordingly, Lead Plaintiffs respectfully request that the Court enter the Class Distribution Order, which will release and discharge all such claims.

## VI.     RETENTION OF CLAIM FORMS AND OTHER DOCUMENTS

Lead Plaintiffs also request that the Court permit A.B. Data to destroy any paper and electronic Claim Forms one (1) year after the Distribution of the Net Settlement Fund is complete. *Id*. at ¶39(f); *Evoqua*, 2022 WL 17352327, at *2.

## VII.    CONCLUSION

Based on the foregoing reasons, and the Nordskog Declaration submitted herewith, Lead Plaintiffs respectfully request that the Motion be granted. For the Court's convenience, a proposed Class Distribution Order is accompanying the Motion.

Dated: June 1, 2023                          Respectfully submitted,

                                             */s/ Lester R. Hooker*

                                             **SAXENA WHITE P.A.**
                                             Maya Saxena
                                             Joseph E. White, III

Lester R. Hooker
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel: (561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

**SAXENA WHITE P.A.**
Steven B. Singer
Kyla Grant
Joshua H. Saltzman
10 Bank Street, Suite 882
White Plains, New York 10606
Tel: (914) 437-8551
Fax: (888) 216-2220
ssinger@saxenawhite.com
kgrant@saxenawhite.com
jsaltzman@saxenawhite.com

**SAXENA WHITE P.A.**
David R. Kaplan
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096
dkaplan@saxenawhite.com

*Lead Counsel for Lead Plaintiffs and the
Settlement Class*

**KLAUSNER KAUFMAN JENSEN &
LEVINSON**
Robert D. Klausner
7800 Northwest 4th Street
Plantation, Florida 33317
Tel: (954) 916-1202
bob@robertdklausner.com

*Additional Counsel for Lead Plaintiffs*

10

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of June, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Lester R. Hooker*
Lester R. Hooker